D. Victoria Baranetsky (SBN 311892)
THE CENTER FOR INVESTIGATIVE REPORTING
1400 65th St., Suite 200
Emeryville, CA 94608
Telephone: (510) 809-3160
Fax: (510) 849-6141
vbaranetsky@revealnews.org

Attorney for Plaintiffs

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| THE CENTER FOR INVESTIGATIVE REPORTING and AARON GLANTZ, | Case No. _____ |
| Plaintiffs, | **COMPLAINT FOR INJUNCTIVE RELIEF** |
| v. | |
| UNITED STATES DEPARTMENT OF THE TREASURY, | |
| Defendant. | |

## INTRODUCTION

1.     This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for injunctive and other appropriate relief.  The Center for Investigative Reporting ("CIR") and its reporter, Aaron Glantz (collectively "Plaintiffs"), seek records requested from the Financial Crimes Enforcement Network ("FinCEN"), a bureau within the United States Department of Treasury ("Treasury").

2.     On July 17, 2019, Plaintiffs submitted a FOIA request to FinCEN seeking records that contain information about the actual owners, also known as "beneficial owners," of residential real estate purchased wholly with cash between 2016 and July 2019.

3.     On July 29, 2019, Defendant sent a letter in which it denied Plaintiffs' request in full,

1    providing a *Glomar* response[1] and invoking 5 U.S.C. § 552(b)(3) ("Exemption 3").

2        4.    On August 1, 2019, Plaintiffs sent a letter to Defendant appealing the denial.

3        5.    On October 17, 2019, the Deputy Director of FinCEN remanded the matter to

4    FinCEN's FOIA office for further processing.

5        6.    To date, Defendant has not issued any further response and has produced no records.

6    Defendant has failed to comply with FOIA's statutory deadlines, 5 U.S.C. § 552(a)(6)(A)(ii),

7    improperly issued a *Glomar* response, and failed to enumerate a foreseeable harm that would result

8    from disclosure.  5 U.S.C. § 552(a)(8)(A)(i).

9        7.    The requested records are of particular interest to Plaintiffs, who have reported

10   extensively on issues related to the lack of transparency in the identities of some residential real

11   estate      owners.          *Homewreckers*,      REVEAL,      Oct.      19,      2019,

12   https://www.revealnews.org/episodes/homewreckers/.

13       8.    In recent years, there has been an increase in purchases of residential properties by

14   shell companies, which obfuscate the identities of residential real estate owners, shielding important

15   ownership information from public view.  FinCEN, FIN 2017-A003, *Advisory to Financial*

16   *Institutions   and   Real   Estate   Firms   and   Professionals*,   Aug.   22,   2017,

17   https://www.fincen.gov/resources/advisories/fincen-advisory-fin-2017-a003.        This     lack     of

18   transparency is especially concerning where shell companies not only thwart public accountability

19   but often "obscure the illicit origin of their funds[.]" *Id.*

20       9.    Plaintiffs now ask the Court for an injunction requiring FinCEN to promptly disclose

21   all relevant portions of the withheld records.

22   //

23   //

24   _____

25   [1] The term "*Glomar* response" originates from the Central Intelligence Agency's ("CIA") refusal to
     confirm or deny the existence of records in response to a FOIA request relating to the *Hughes*

26   *Glomar Explorer*, a ship used in a classified [CIA] project used to 'to raise a sunken Soviet
     submarine from the floor of the Pacific Ocean to recover the missiles, codes, and communications

27   for United States military and intelligence experts. *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161,
     1171 (D.C. Cir. 2011) (internal citation omitted).  Usually, *Glomar* responses have been reserved

28   for withholding national security and classified records.

## JURISDICTION

10.     The Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(C)(i).  This Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1436, and 5 U.S.C. §§ 701–706.

## VENUE AND INTRADISTRICT ASSIGNMENT

11.     Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1391(e) and 1402.  Plaintiff CIR has its principal place of business in this district.  Plaintiff Aaron Glantz lives in San Francisco.

12.     Assignment to the Oakland Division is proper pursuant to Local Rule 3-2(c) and (d) because a substantial portion of the events giving rise to this action occurred in Alameda County, where CIR's principal place of business is located and most actions in this case occurred.

## PARTIES

13.     Plaintiff CIR publishes *Reveal*, an online news site at revealnews.org, and *Reveal*, a weekly public radio show and podcast with approximately 1 million listeners a week.  Founded in 1977 as the nation's first nonprofit investigative news organization, CIR has received multiple awards for its reporting.  CIR is a non-profit established under the laws of the State of California, with its primary office in Emeryville, California.

14.     Plaintiff Aaron Glantz is a staff reporter for *Reveal* and an employee of CIR.

15.     Defendant Treasury is a department of the executive branch of the U.S. government and an "agency" for the purposes of FOIA.  5 U.S.C. § 552(f)(1).  FinCEN is a component of the Treasury.  Both Treasury as a whole and FinCEN specifically have their headquarters in Washington, D.C.

## FACTUAL BACKGROUND

### Sharing Information with the Public is Central to FinCEN's Mission

16.     FinCEN was established in April 1990 as a component of the Office of the Assistant Secretary of the Treasury by Order 105-08.  Dep't of Treasury, 105-08, *Establishment of the Financial Crimes Enforcement Network*, Apr. 25, 1990, https://www.fincen.gov/sites/default/files/shared/EstablishingFinCEN.pdf.   Many   of   FinCEN's

responsibilities stem from the administration of the Bank Secrecy Act of 1970 ("BSA"), 31 U.S.C. §§ 5311 *et seq.*, the country's primary anti-money laundering law.  The BSA "requires financial institutions to keep records of cash purchases of negotiable instruments . . . and to report suspicious activity that might signify money laundering, tax evasion, or other criminal activities."  FinCEN, *FinCEN's Mandate from Congress*, https://www.fincen.gov/resources/fincens-mandate-congress; *see also California Bankers Ass'n v. Shultz*, 416 U.S. 21, 22 (1974).

17.     Today, FinCEN's mission includes the "*dissemination* of financial intelligence" in addition to its other responsibilities.  FinCEN, *Mission*, https://www.fincen.gov/about/mission (emphasis added); *see also* FinCEN, *About*, https://www.treasury.gov/about/history/Pages/fincen.aspx (stating the "original" mission of FinCEN was to "provide a governmentwide, multisource intelligence and analytical network in support of the detection, investigation, and prosecution of domestic and international money laundering and other financial crimes by . . . law enforcement agencies.")

18.     Providing government agencies *as well as the public* with information regarding money laundering and relevant investigations is central to FinCEN's mission.  FinCEN, *Advisories, Bulletins, & Fact Sheets*, https://www.fincen.gov/resources/advisoriesbulletinsfact-sheets ("As part of fulfilling its mission to safeguard the financial system and promote national security, FinCEN . . . issues *public* and non-public advisories to financial institutions concerning money laundering or terrorist financing threats and vulnerabilities for the purpose of enabling financial institutions to guard against such threats.") (emphasis added).

19.     While the BSA requires that certain information remain secret, when Congress passed the BSA in 1970, it did not enumerate an intention to keep the identities of residential real estate owners secret.  *California Bankers Ass'n v. Shultz*, 416 U.S. 21, 26 (1974) ("The express purpose of the [BSA] is to require the maintenance of records, and the making of certain reports, which 'have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings'") (citations omitted).

20.     In practice, the BSA would not have shielded this public information at the time of its passage because limited liability corporations ("LLCs"), the most popular corporate form used to

anonymously purchase residential real estate, were not authorized by statute in *any state* until 1977, seven years *after* the BSA was passed.  Louise Story & Stephanie Saul, *Stream of Foreign Wealth Flows to Elite New York Real Estate*, N.Y. TIMES, Feb. 7, 2015, https://www.nytimes.com/2015/02/08/nyregion/stream-of-foreign-wealth-flows-to-time-warner-condos.html.  In addition, "[n]othing in the genesis of [LLCs] suggested they would be used to purchase personal real estate," according to a researcher who worked on LLC policies at the IRS in the 1990s. *Id.*

21.    Courts have also found that while the Treasury may withhold information pursuant to the BSA and Exemption 3, the law does not bar access to *all* relevant information held by FinCEN. For instance, the BSA does not justify withholding general information and documents related to the BSA. *BizCapital Bus. & Indus. Dev. Corp. v. OCC*, 467 F.3d 871 (5th Cir. 2006).  Courts find that agencies are still required to disclose all segregable portions. *See Davis v. U.S. Dep't of Justice*, No. Civ. A. 00-2457(CKK), 2003 WL 25568468, at *5 (D.D.C. 2003); *see also Berger v. I.R.S.*, 487 F. Supp. 2d 482, 496 (D.N.J. 2007).  Multiple courts have specifically faulted the Treasury for withholding documents with blanket BSA assertions. *See, e.g.*, *Boyd v. Exec. Office for U.S. Att'ys*, 87 F.Supp.3d 58, 90 (D.D.C. 2015).

### The Identity of Residential Real Estate Owners Has Historically Been Public

22.    The identities of residential real estate owners have historically been publicly available through several means.  Emily Badger, *Anonymous Owner, L.L.C.: Why It Has Become So Easy to Hide in the Housing Market*, N.Y. TIMES, Apr. 30, 2018, https://www.nytimes.com/2018/04/30/upshot/anonymous-owner-llc-why-it-has-become-so-easy-to-hide-in-the-housing-market.html.

23.    For instance, the identities of residential real estate owners have been publicly available under the various states' "public recording systems," central to all states' property laws. Charles Szypszak, *Public Registries and Private Solutions: An Evolving American Real Estate Conveyance Regime*, 24 WHITTIER L. REV. 663, 666 (2003) (noting "the regime relies on a public recording system.").

24.    In recent decades, a trend has developed whereby certain corporate vehicles are used

to shield this crucial civic information from public visibility.  Shell companies, such as LLCs and other similar corporate bodies, are increasingly used to obfuscate the identities of residential real estate owners.  FinCEN, FIN 2017-A003, *Advisory to Financial Institutions and Real Estate Firms and Professionals*, Aug. 22, 2017, https://www.fincen.gov/resources/advisories/fincen-advisory-fin-2017-a003 (describing how the "use of shell companies decreases transparency").  This tactic is successful because in many states, LLCs and other corporate vehicles "are not required to disclose their owners to [state] regulators," and may be registered to offices of lawyers or wealth management companies.  *See, e.g.*, *Michael Cohen Case Sheds Light on Sean Hannity's Property Empire*, THE GUARDIAN, Apr. 23, 2018, https://www.theguardian.com/media/2018/apr/22/michael-cohen-sean-hannity-property-real-estate-ben-carson-hud.

25.     By 2015, only 74 percent of rental properties could have their owners easily identified, down from 92 percent in 1991.  *Compare* U.S. Bureau of the Census, *1991 Statistical Brief: Who Owns the Nation's Rental Properties?*, Mar. 1996, www.census.gov/prod/1/statbrief/sb96_01 .pdf *with* U.S. Bureau of the Census, *Rental Housing Finance Survey: 2015 National Property Configuration*, https://www.census.gov/data-tools/demo/rhfs/#/?s_byGroup1=6; *see also* Emily Badger, *Anonymous Owner, L.L.C.: Why It Has Become So Easy to Hide in the Housing Market*, N.Y. TIMES, Apr. 30, 2018, https://www.nytimes.com/2018/04/30/upshot/anonymous-owner-llc-why-it-has-become-so-easy-to-hide-in-the-housing-market.html.

26.     In 2017, FinCEN reported that all-cash purchases by such vehicles accounted for "one in four residential real estate purchases, totaling hundreds of billions of dollars nationwide."  FinCEN, FIN 2017-A003, *Advisory to Financial Institutions and Real Estate Firms and Professionals*, Aug. 22, 2017, https://www.fincen.gov/resources/advisories/fincen-advisory-fin-2017-a003.

27.     Today, this information is still sometimes traceable from public documents filed with a Secretary of State or other similar office.  *FFIEC BSA/AML Examination Manual*, May 5, 2018, https://www.ffiec.gov/press/pdf/Beneficial%20Ownership%20Requirements%20for%20Legal%20Entity%20CustomersOverview-FINAL.pdf ("For the purposes of the Beneficial Ownership Rule, 2

a legal entity customer is defined as a corporation, limited liability company, or other entity that is created by the filing of a public document with a Secretary of State or other similar office, a general partnership, and any similar entity formed under the laws of a foreign jurisdiction that opens an account.").

28.     Some jurisdictions have proactively required this information to be disclosed in order to combat this problem.  For instance, in 2019, the State of New York passed legislation requiring LLCs to disclose beneficial owners in a mandatory tax form.  *See* Elizabeth Kim, *New York State Law Seeks to Unmask Property Owners Behind LLCs*, GOTHAMIST, Oct. 9, 2019, https://gothamist.com/news/new-state-law-seeks-unmask-property-owners-behind-llcs.

29.     Similarly, outside of the United States, many countries around the globe affirmatively require this information be identified.  *See* Glob. Research Ctr., *Disclosure of Beneficial Ownership in Selected Countries*, July 2017, https://www.loc.gov/law/help/beneficial-ownership/disclosure-beneficial-ownership.pdf (a report by the Law Library of Congress surveying the laws related to registration of beneficial owners and disclosure of that information across the European Union and in twenty-nine countries and listing the many foreign laws requiring this information be public).

30.     Journalists are also sometimes able to locate this information in the United States through laborious investigative reporting techniques.  *See* Aaron Glantz, *Profiting off pain: Trump confidant cashed in on housing crisis*, June 8, 2017, https://www.revealnews.org/article/profiting-off-pain-trump-confidant-cashed-in-on-housing-crisis/ (identifying Thomas Barrack as the actual residential real estate owner of various properties owned by shell companies by cross-referencing various public filings); Nick Penzenstadler, Steve Reilly, & John Kelly, *Here's who is behind LLCs buying Trump real estate*, USA TODAY, June 13, 2017, https://www.usatoday.com/story/news/2017/06/13/heres-who-behind-llcs-buying-trump-real-estate/102382726/ (same).

**There is a Strong Public Interest in Disclosure of Residential Real Estate Owners**

31.     The public and the press have a clear and abiding interest in knowing who owns property in various communities and keeping public officials accountable in their handling of this matter.  *See* Ben Casselman & Connor Dougherty, *Want a House Like This? Prepare for a Bidding*

1   *War      with      Investors,*      N.Y.      TIMES,      June      20,

2   2019, https://www.nytimes.com/interactive/2019/06/20/business/economy/starter-homes-

3   investors.html (stating that the proliferation of residential real estate purchases by anonymous buyers

4   has a powerful ripple effect on local economies, housing availability, homelessness, and

5   neighborhood blight).

6         32.    The rise of all-cash purchases of residential real estate by shell companies in recent

7   years has caused public alarm and been a topic of intense public interest.  Emily Badger, *Anonymous*

8   *Owner, L.L.C.,* N.Y. TIMES.  Responding to these concerns and the growing problems from such

9   transactions, FinCEN has expanded its enforcement efforts.  Renae Reints, *Wealthy Home Buyers*

10  *Can No Longer Conceal Their Identities in These Cities*, FORTUNE, Nov. 16, 2018,

11  https://fortune.com/2018/11/16/fincen-real-estate-llc-all-cash-purchases-disclosure/.

12        33.    Many news outlets, including CIR, have spent years investigating and reporting on

13  the issue.  *See, e.g.*, Lou Fancher, *Why Home Ownership Has Kept Declining*, EAST BAY EXPRESS,

14  Nov. 12, 2019, https://www.eastbayexpress.com/oakland/why-home-ownership-has-kept-

15  declining/Content?oid=27944363 (tracing all-cash buys of residential property by shell companies

16  to the decline of home ownership and other economic problems facing millions of Americans in the

17  aftermath of the housing crisis); *Homewreckers*, REVEAL, Oct. 19, 2019,

18  https://www.revealnews.org/episodes/homewreckers/; Aaron Glantz, *Profiting off pain: Trump*

19  *confidant cashed in on housing crisis*, REVEAL, June 8, 2017,

20  https://www.revealnews.org/article/profiting-off-pain-trump-confidant-cashed-in-on-housing-

21  crisis/; Casey Michel, *The U.S. is a Good Place for Bad People to Stash Their Money*, THE ATLANTIC,

22  July 13, 2017, https://www.theatlantic.com/business/archive/2017/07/us-anonymous-shell-

23  companies/531996/ (describing "the ease with which one can set up a shell company" to purchase

24  residential real estate in many U.S. states);.  This is a topic of intense public interest which affects

25  the lives of millions of Americans.

26                        **PROCEDURAL BACKGROUND**

27        34.    On July 17, 2019, Mr. Glantz submitted a request, on behalf of CIR, to FinCEN for

28

any agency documents containing information about the "real human owners" of residential real estate purchased wholly with cash from 2016 to July 2019 ("the Request"), including those records created outside of its jurisdiction under the BSA. A true and correct copy of the Request is attached as Exhibit A.

35.     Specifically, Mr. Glantz requested:

- Addresses of all residential real estate purchased with cash of which FinCEN is aware;

- the amount of money transferred;

- the names of the true, human owners of each residential real estate property purchased with cash, including but not limited to those purchased by LLC, LLP, and LP shell companies;

- the names of the individuals responsible for representing the purchasers of such property;

- the addresses of the human owners and individuals responsible for representing the purchaser;

- any and all additional information FinCEN possesses about these purchases.

36.     Mr. Glantz sought a waiver of applicable fees on the grounds that he was a "representative of the news media" and that the records were not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii).

37.     On July 24, 2019, Treasury sent a letter acknowledging the Request and assigning it case numbers FinCEN 19-178-F and goFOIA 2019-07-130. A true and correct copy of this acknowledgment letter is attached as Exhibit B.

38.     On July 29, 2019, Treasury sent a second letter denying the request in full ("the Denial") in which it asserted a *Glomar* response, stating, "FinCEN can neither confirm nor deny the existence of the materials that you seek." A true and correct copy of the Denial is attached as Exhibit C. Specifically, the Denial states that "records filed under the Bank Secrecy Act and records of such reports are exempt from disclosure under FOIA." *Id.* (citing 31 U.S.C. § 5319; 5 U.S.C. § 552(b)(3)). It further states that "except to the extent necessary for the performance of official duties, FinCEN

-9-
COMPLAINT FOR INJUNCTIVE RELIEF

1    is prohibited from disclosing Bank Secrecy Act records and information that would reveal whether

2    the Bank Secrecy Act records do or do not exist." *Id.* (citing § 31 U.S.C. 5318(g); 31 C.F.R.  §

3    1020.320(e)(2)).

4         39.    On August 1, 2019, Plaintiffs sent an administrative appeal letter ("the Appeal") to

5    Treasury.  A true and correct copy of that letter without attachments is attached as Exhibit D.

6         40.    In the Appeal, Plaintiffs argued that Treasury incorrectly asserted a *Glomar* response

7    and misapplied Exemption 3 of FOIA, and that Treasury failed to meet the foreseeable harm standard

8    under the FOIA Improvement Act of 2016. *Id.*

9         41.    On August 7, 2019, Treasury sent a letter acknowledging the Appeal. A true and

10   correct copy of this acknowledgment letter is attached as Exhibit E.  In it, the Treasury stated that

11   "every effort will be made to provide . . . a timely response within 20 business days." *Id.*

12        42.    Two months later, on October 17, 2019, Treasury issued a letter remanded the matter

13   to FinCEN for further processing.  A true and correct copy of the response is attached as Exhibit F.

14   In relevant part, the letter read: "I [Treasury Deputy Director Jamal El-Hindi] have decided to remand

15   your request to FinCEN's FOIA Office for further processing. FinCEN's FOIA Office will contact

16   you directly." *Id.*

17        43.    Approximately five months have elapsed since CIR first requested the records in

18   controversy, and Plaintiffs have not received any further communication from FinCEN or Treasury.

19        44.    Having exhausted all administrative remedies, Plaintiffs now seek injunctive relief.

20   <u>**CAUSE OF ACTION**</u>

21   **Violation of Freedom of Information Act**

22        45.    Plaintiffs repeat and reallege paragraphs 1–44.

23        46.    FinCEN is subject to FOIA and must therefore release in response to a FOIA request

24   any disclosable records in its possession and provide a lawful reason for withholding any materials

25   as to which it is claiming an exemption.

26        47.    FinCEN has no lawful basis for declining to release the records requested by Plaintiffs

27   under FOIA.

28

48.     FinCEN has failed to respond to Plaintiffs' appeal within the 20 business days required by FOIA, and has therefore administratively denied Plaintiffs' appeal. *See* 5 U.S.C. § 552(a)(6)(A)(ii). Accordingly, Plaintiffs are deemed to have exhausted their administrative remedies under FOIA.

49.     Plaintiffs are entitled to declaratory and injunctive relief compelling the release and disclosure of the requested records.

## REQUESTED RELIEF

WHEREFORE, Plaintiffs pray that this Court:

1.     Declare that Defendant FinCEN violated FOIA by failing to provide requested records in response to Plaintiffs' FOIA request;

2.     Declare that the documents sought by their FOIA request, as described in the foregoing paragraphs, are public under 5 U.S.C. § 552 and must be disclosed;

3.     Order Defendant FinCEN to provide the requested documents to Plaintiffs within 20 business days of the Court's order;

4.     Award Plaintiffs the costs of this proceeding, including reasonable attorneys' fees, as expressly permitted by FOIA; and

5.     Grant Plaintiffs such other and further relief as this Court may deem just and proper.


DATED:  December 16, 2019

Respectfully submitted,


By: /s/
D. Victoria Baranetsky (SBN 311892)
THE CENTER FOR INVESTIGATIVE REPORTING
1400 65th St., Suite 200
Emeryville, CA 94608
Telephone: (510) 809-3160
Email: vbaranetsky@revealnews.org

Attorney for Plaintiffs