1  DAVID L. ANDERSON (CABN 149604)
   United States Attorney
2  SARA WINSLOW (DCBN 457643)
   Chief, Civil Division
3  J. WESLEY SAMPLES (CABN 321845)
   Assistant United States Attorney
4
        450 Golden Gate Avenue, Box 36055
5       San Francisco, California 94102-3495
        Telephone: (415) 436-7200
6       Fax: (415) 436-6748
        wes.samples@usdoj.gov
7
8  Attorneys for Defendant
9

10              UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12                SAN FRANCISCO DIVISION

13

14 THE CENTER FOR                          Case No.: 3:19-cv-08181-JCS
   INVESTIGATIVE REPORTING and
15 AARON GLANTZ,                           **DEFENDANT FINCEN'S OPENING**
                                           **MOTION FOR SUMMARY**
16             Plaintiffs,                 **JUDGMENT**

17        v.                               Date:        December 11, 2020
                                           Time:        9:30am
18 UNITED STATES DEPARTMENT OF THE         Location:    Courtroom F,
   TREASURY,                                            15th Floor, San Francisco
19             Defendant.
                                           The Hon. Joseph C. Spero
20

21

22

23

24

25

26

27

28

# CONTENTS

NOTICE OF MOTION..........................................................................................................1

STATEMENT OF RELIEF REQUESTED.......................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................1

I.      INTRODUCTION ................................................................................................1

II.     STATEMENT OF ISSUES TO BE DECIDED ................................................2

III.    STATEMENT OF FACTS ..................................................................................2

        A.      FinCEN's Crime Fighting And Anti-Money Laundering Functions................2

        B.      Procedural History .........................................................................................3

IV.     LEGAL STANDARDS ........................................................................................4

        A.      Summary Judgment Standard .....................................................................4

        B.      FOIA .............................................................................................................5

V.      FINCEN'S WITHHOLDINGS ARE PROPER................................................5

        A.      All BSA reports submitted to FinCEN and records of BSA reports are exempt from disclosure pursuant to the Bank Secrecy Act, 31 U.S.C. § 5319, under Exemption 3. ...............................................................5

        B.      FinCEN has met the threshold requirement of Exemption 7 ............................10

        C.      FinCEN properly withheld law enforcement techniques and procedures for law enforcement investigations under Exemption 7(E)......................................11

        D.      Personally identifying information in FinCEN's records compiled for law enforcement purposes is properly withheld under Exemption 7C....................13

        E.      The names of FinCEN and other government employees are properly withheld under Exemption 6. .......................................................................17

        F.      FinCEN's documents compiled for law enforcement purposes are properly withheld under Exemption 7A. ....................................................................18

        G.      FinCEN's Draft Documents Are Properly Withheld In Full Under Exemption 5................................................................................................19

        H.      FinCEN has produced all reasonably segregable portions of responsive records. .........................................................................................................20

VI.     CONCLUSION....................................................................................................20

# **TABLE OF AUTHORITIES**

## **FEDERAL CASES**

*ACLU of N. Cal. v. United States Dep't of Justice*, 880 F.3d 473 (9th Cir. 2018) ...................................................................................................... 12

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................... 4

*Aronson v. IRS*, 973 F.2d 962 (1st Cir. 1992) ............................................ 5

*Berger v. IRS*, 487 F. Supp. 2d 482 (D.N.J. 2007) .......................... 7, 8, 10

*BizCapital Bus. & Indus. Dev. Corp. v. Comptroller of Currency of U.S.*, 467 F.3d 871 (5th Cir. 2006) ................................................................ 9, 10

*Bloomer v. U.S. Dep't of Homeland Sec.*, 870 F. Supp. 2d 358 (D. Vt. 2012) ............................................................................................................ 8

*Boyd v. Criminal Div.*, 475 F.3d 381 (D.C. Cir. 2007) ............................ 14

*Boyd v. Exec. Office for United States Attorneys*, 87 F. Supp. 3d 58 (D.D.C. 2015) ........................................................................................... 10

*Brown v. U.S. Dep't of Justice*, 2015 WL 1237274 (E.D. Cal. Mar. 17, 2015) .......................................................................................................... 14

*Butler v. Dep't of Air Force*, 888 F. Supp. 174 (D.D.C. 1995) ............... 18

*California Bankers Ass'n v. Shultz*, 416 U.S. 21 (1974) ............................ 9

*Cameranesi v. Dep't of Def.*, 856 F.3d 626 (9th Cir. 2017) ..................... 18

*Carter v. U.S. Dep't of Commerce*, 307 F.3d 1084 (9th Cir. 2002) ......... 19

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .......................................... 4

*Cuban v. S.E.C.*, 795 F. Supp. 2d 43 (D.D.C. 2011) .................................. 8

*Davis v. U.S. Dep't of Justice*, 2003 WL 25568468 (D.D.C. Mar. 21, 2003) .......................................................................................................... 10

*Davis v. U.S. Dep't of Justice*, 968 F.2d 1276 (D.C. Cir. 1992) ............. 15

*Dep't of Def. v. Federal Labor Relations Auth.*, 510 U.S. 487 (1994) ...... 13

*Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1 (2001) ......................................................................................................... 19

*Dudman Comm'ns Corp. v. Dep't of the Air Force*, 815 F.2d 1565 (D.C. Cir. 1987) .................................................................................................. 19

*Forest Serv. Empls. for Envtl. Ethics v. U.S. Forest Serv.*, 524 F.3d 1021, 1024 (9th Cir. 2008) ............................................................................ 16, 17

*Goland v. CIA*, 607 F.2d 339 (D.C. Cir. 1978) .......................................... 7

*Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759 (9th Cir. 2015) .................... 5, 6, 7, 12

*Hunt v. C.I.A.*, 981 F.2d 1116, 1119 (9th Cir. 1992) ..................................... 5

*James Madison Project v. Dep't of Justice*, 2018 WL 1472492 (D.D.C.
    Mar. 26, 2018) ....................................................................................... 5

*Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771 (D.C. Cir. 2002) ......................... 20

*Jordan v. Dep't of Justice*, 591 F.2d 753 (D.C. Cir. 1978) ............................ 19

*Lahr v. NTSB*, 569 F.3d 964 (9th Cir. 2009) ................................................. 5

*Lane v. Dep't of the Interior*, 523 F.3d 1128 (9th Cir. 2008) ................ 5, 16, 17

*Lesar v. Dep't of Justice*, 636 F.2d 472 (D.C. Cir. 1980) ............................. 17

*Lewis v. U.S. Dep't of the Treasury*, 2020 WL 1667656 (D.D.C. Apr. 3,
    2020) ................................................................................................... 11

*Linn v. U.S. Dep't of Justice*, 1995 WL 631847 (D.D.C. Aug. 22, 1995) .................... 7, 10

*Lion Raisins, Inc. v. USDA*, 231 F. App'x 563 (9th Cir. 2007) .................... 18

*Los Angeles Times Commc'ns, LLC v. Dep't of Army*, 442 F. Supp. 2d 880
    (C.D. Cal. 2006) .................................................................................. 11

*Lynch v. Dep't of the Treasury*, 2000 WL 12323 (9th Cir. Jan. 28, 2000) .................. 18

*Maricopa Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1089 (9th Cir.
    1997) ................................................................................................... 19

*Martin v. Dep't of Justice*, 488 F.3d 446 (D.C. Cir. 2007) ........................... 14

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ........................... 4

*Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157 (2004) .................. 14, 16, 17

*Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114 (9th Cir. 1988) .................. 19, 20

*NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978) .......................... 18

*NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975) ................................... 19

*North v. U.S. Dep't of Justice*, 658 F. Supp. 2d 163 (D.D.C. 2009) ............. 15

*Ortiz v. United States Dep't of Justice*, 67 F. Supp. 3d 109 (D.D.C. 2014) ................. 8

*Prudential Locations LLC v. United States HUD*, 739 F.3d 424 (9th Cir.
    2013) ............................................................................................... 15, 16

*Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168 (1975) ..................... 19

*Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142 (9th Cir. 2005) ........................ 4

*Sciba v. Bd. of Govs. of Fed. Res. Sys.*, 2005 WL 3201206 (D.D.C. Nov. 4, 2005) ............................................................................................................. 7

*Stein v. U.S. SEC*, 266 F. Supp. 3d 326 (D.D.C. 2017) ................................................ 7

*Taylor v. U.S. Dep't of Justice*, 257 F. Supp. 2d 101 (D.D.C. 2003) .................. 13, 15

*Thomas v. Dep't of Justice*, 531 F. Supp. 2d 102 (D.D.C. 2008) ................. 14, 15, 17

*Turner v. United States Dep't of the Treasury*,  2017 WL 1106030 (E.D. Cal. Mar. 23, 2017) .................................................................................... 6, 8

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749 (1989) ................................................................................... 13, 14, 16

*Willamette Indus., Inc. v. United States*, 689 F.2d 865 (9th Cir. 1982) ................. 20

*Yonemoto v. Dep't of Veterans Affairs*, 686 F.3d 681 (9th Cir. 2012) .................. 17

*Yunes v. United States Dep't of Justice*, 2016 WL 4506971 (D.D.C. Aug. 26, 2016) ......................................................................................................... 13

## FEDERAL STATUTES

31 U.S.C. § 1081 ............................................................................................................ 9

31 U.S.C. § 310 .............................................................................................................. 3

31 U.S.C. § 5311 ............................................................................................................ 3

31 U.S.C. § 5318 ............................................................................................................ 6

31 U.S.C. § 5318(h) ....................................................................................................... 3

31 U.S.C. § 5319 ................................................................................................... passim

31 U.S.C. § 5326 ..................................................................................................... 6, 10

31 U.S.C. § 5326(a) ....................................................................................................... 3

31 U.S.C. § 5326(d) ....................................................................................................... 3

5 U.S.C. §  552(b)(7)(C) ............................................................................................. 13

5 U.S.C. § 552 ........................................................................................................... 1, 6

5 U.S.C. § 552(a)(4)(B) ................................................................................................. 5

5 U.S.C. § 552(b)(3) ...................................................................................................... 7

5 U.S.C. § 552(b)(3)(A)(i) ............................................................................................. 7

5 U.S.C. § 552(b)(6) .................................................................................................... 17

5 U.S.C. § 552(b)(7) .................................................................................................... 10

5 U.S.C. ¶ 552(b)(3)(A)(i) ................................................................................................ 7

## FEDERAL RULES

12 C.F.R. §§ 4.31–4.40 .................................................................................................. 10

Fed. R. Civ. P. 56(c) ....................................................................................................... 4

## OTHER AUTHORITIES

§ 8:4.Subpart (A)(i): statutes requiring withholding, Guidebook to the
    Freedom of Information and Privacy Acts (2020) .................................................... 7

P.L. 107-56 (2001) ..................................................................................................... 2, 9

P.L. 99–570 (HR 5484), October 27, 1986, 100 Stat 3207 .......................................... 18

1

**TABLE OF EXHIBITS**

2

| Ex. No. | Description |
| --- | --- |
| 1 | *Vaughn* index |
| 2 | 11 released pages |
| 3 | Plaintiffs' FOIA request |
| 4 | July 29, 2019 FinCEN letter to Plaintiff |
| 5 | August 1, 2019 Plaintiff letter to FinCEN |
| 6 | August 7, 2019 FinCEN letter to Plaintiff |
| 7 | October 17, 2019 FinCEN letter to Plaintiff |
| 8 | January 31, 2020 FinCEN letter to Plaintiff |
| 9 | February 7, 2020 FinCEN letter to Plaintiff |
| 10 | February 27, 2020 FinCEN letter to Plaintiff |
| 11 | June 26, 2020 FinCEN letter to Plaintiff |
| 12 | Real estate GTO advisory |
| 13 | Real estate GTO #1 |
| 14 | Real estate GTO #1 press release |
| 15 | Real estate GTO #2 |
| 16 | Real estate GTO #3 |
| 17 | Real estate GTO #3 press release |
| 18 | Real estate GTO #4 |
| 19 | Real estate GTO #5 |
| 20 | Real estate GTO #6 |
| 21 | Real estate GTO #7 |
| 22 | Real estate GTO #7 press release |
| 23 | FinCEN Enforcement Statement |
| 24 | Article from the Real Deal, South Florida Real Estate News, March 2, 2016 |
| 25 | Article from Broward Palm Beach New Times, January 26, 2016 |
| 26 | Article from the Wall Street Journal, February 23, 2016 |

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on December 11, 2020, at 9:30 a.m., or as soon thereafter as the matter may be heard in Courtroom F, located on the 15th Floor of the United States Court for the Northern District of California, San Francisco Division, 450 Golden Gate Avenue, San Francisco, California, before the Honorable Joseph C. Spero, Federal Defendant, the Financial Crimes Enforcement Network ("Defendant" or "FinCEN"), by and though its attorneys, will and hereby moves, pursuant to Federal Rule of Civil Procedure 56, for an order granting summary judgment in its favor in this action. This motion is made on the grounds that FinCEN has satisfied all of its obligations with respect to Plaintiffs' FOIA requests and that the information at issue was properly withheld pursuant to 5 U.S.C. §§ 552(b)(3), (5), (6), (7)(A), (7)(C), and (7)(E).  Defendant's motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the accompanying declaration of Michael G. Mosier and exhibits thereto, the Court's files and records in this matter and other matters of which the Court takes judicial notice, and any oral argument that may be presented to the Court.

**STATEMENT OF RELIEF REQUESTED**

FinCEN requests that the Court grant summary judgment in favor of FinCEN.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

This case is brought under the Freedom of Information Act, 5 U.S.C. § 552 (the "FOIA"), pursuant to a request by reporter Aaron Glantz and The Center for Investigative Reporting ("Plaintiffs"), submitted to FinCEN in July 2019 (the "FOIA Request").  Plaintiffs' FOIA Request generally seeks information regarding the identity of real human owners of real estate.  *See* Decl. ¶ 6; Dkt. No. 1-1 at 1-5.  This information, however, is statutory prohibited from disclosure pursuant to the Bank Secrecy Act, 31 U.S.C. § 5311 et seq. (the "BSA") in view of FOIA Exemption 3, among others.  As explained in the Declaration of Michael G. Mosier, "all information FinCEN has that is responsive to Plaintiffs' FOIA Request is contained in or derived or extracted from [Geographical Targeting Order Reports ("GTO Reports")]—the only source of information responsive to Plaintiffs' FOIA Request are GTO Reports." Decl. ¶ 55; *see* Decl. ¶¶ 26, 39, Ex. 1.  Accordingly, all information FinCEN has which is responsive to Plaintiffs' FOIA Request is contained in, derived from, or extracted from "report[s] and records of

reports" filed with FinCEN as defined and exempted from disclosure in the BSA.  31 U.S.C. § 5319; *see* Decl. ¶¶ 6, 26, 39, 48-55, Ex. 1.  Specifically, these "report[s]," which include GTO Reports along with other types of reports specified in the BSA, as well as "records of [these] reports," such as spreadsheets, memoranda, and email, are all expressly "exempt from disclosure under § 552 of title 5" pursuant to 31 U.S.C. § 5319 of the BSA in view of FOIA Exemption 3, which applies to federal statues like 31 U.S.C. § 5319 which contain nondisclosure provisions.  Plaintiffs agree at least that the GTO Reports themselves are exempt from disclosure such that "Plaintiffs shall not challenge Defendant's withholding in full of GTO Reports."  *See* Dkt. No. 23 at ¶4.  Moreover, the case law clearly establishes that information derived from or extracted from BSA Reports, including GTO Reports, such as is contained in the various spreadsheets, memoranda, and email also at issue in this case, are also properly withheld pursuant to the BSA under Exemption 3.  Therefore, pursuant to 31 U.S.C. § 5319, and because these BSA Reports are foundational to FinCEN's detection and prevention of money laundering and other financial crimes, including terrorist financing, FinCEN has properly withheld in part and in full documents as described further below and in FinCEN's *Vaughn* index.[1]  Decl. ¶¶ 18, 19, 20, 34, 35, Ex. 1.  Because all withheld information falls within the asserted FOIA exemptions, FinCEN respectfully asks the Court grant summary judgment in favor of Defendant.

## II.    STATEMENT OF ISSUES TO BE DECIDED

1. Did FinCEN properly withhold material under FOIA Exemptions 3, 5, 6, 7A, 7C, and 7E.

## III.   STATEMENT OF FACTS

### A.    FinCEN's Crime Fighting And Anti-Money Laundering Functions

FinCEN was created in 1990 and became a bureau of the United States Treasury in 2001 after the passage of the United and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 (the "USA PATRIOT Act").  P.L. 107-56 (2001); Decl. ¶ 17.  FinCEN's mission is to safeguard the financial system from illicit use (including criminal use),

---

[1] Pursuant to the parties' stipulation, Plaintiffs are not challenging the form and content of FinCEN's *Vaughn* index, or the sufficiency of FinCEN's search.  *See* Dkt. No. 28 at n.2, n.3.  Therefore, the only issues before the Court are whether the FOIA exemptions asserted by FinCEN apply here.  Lest there be any doubt, FinCEN made a good faith effort to conduct a search for responsive records, using methods which can be reasonably expected to produce the information requested, and generating results spanning approximately 42,900 pages.  Decl. ¶¶ 36-46, Ex. 1.  As for the *Vaughn* index, Plaintiffs were required to object on or before August 20, 2020.  *See* Dkt. No. 28 at n.2.  Plaintiffs did not and thus cannot now.

combat money laundering, and promote national security through the collection, analysis, and dissemination of financial intelligence and strategic use of financial authorities. 31 U.S.C. § 310; *see* Decl. ¶¶ 18-21. FinCEN carries out its mission by, among other things: [1] receiving and maintaining financial transactions data, including BSA Reports; [2] applying sophisticated techniques to extract as much value from the data as possible; and [3] disseminating that information for law enforcement purposes, including for both criminal and national security purposes. Decl. ¶ 18. The BSA authorizes the Secretary of the Treasury to issue regulations requiring banks and other financial institutions to take a number of precautions against financial crime, including the filing of BSA Reports. 31 U.S.C. §§ 5311, 5318(h); Decl. ¶ 19. The BSA's recordkeeping and reporting provisions require the filing of reports on specified transactions, including the reporting of suspicious activities that might signify money laundering, tax evasion, or other criminal activities. Decl. ¶ 20.

Of particular relevance here is the authority of FinCEN to issue orders that impose additional recordkeeping and reporting requirements on domestic financial institutions or nonfinancial trades or businesses in a geographic area. *See* 31 U.S.C. § 5326(a); Decl. ¶ 22. The Director may utilize this authority to issue Geographic Targeting Orders ("GTOs") when "reasonable grounds exist" for concluding that the additional recordkeeping and reporting is necessary "to carry out the purposes of this subtitle or prevent evasions thereof." 31 U.S.C. §§ 5326(a), (d); Decl. ¶ 22. Such recordkeeping can include requiring title insurance companies and others to report information to FinCEN about certain real estate transactions. *See* Decl. ¶¶ 22, 31, 32, 33. The ensuing GTO Reports are unique to FinCEN and are materially different from information that other governmental entities keep and publicly record for tax and other administrative purposes—the GTO Reports are not public. *See* Decl. ¶¶ 22, 34, 35. Moreover, these GTO Reports and records of these GTO Reports are exempt from disclosure pursuant to 31 U.S.C. § 5319 under Exemption 3 to the FOIA. Plaintiffs have even stipulated as much. *See* Dkt. Nos 23, 28 at n.2. Plaintiffs, however, persist, in seeking records of reports such as spreadsheets, which contain information derived or extracted from exempt BSA Reports, and which are equally exempt pursuant to 31 U.S.C. § 5319 under Exemption 3. Decl. Ex. 1 at Doc. #1, 12, 13.

**B.   Procedural History**

On July 17, 2019, Plaintiffs submitted a FOIA request to FinCEN that sought the information

1   detailed at Dkt. No. 1-1 at 1-5.  *See also* Decl. ¶ 6.  On July 29, 2019, FinCEN sent a letter to Plaintiffs

2   in which FinCEN neither confirmed nor denied that FinCEN had responsive records pursuant to

3   Exemption 3.  Dec. ¶ 8.  On August 7, 2019, FinCEN received an appeal from Plaintiffs' General

4   Counsel arguing that the application of FOIA Exemption 3 was improper because Plaintiffs had not

5   requested BSA records but rather information relating to certain real property owners.  Decl. ¶ 9.  On

6   August 7, 2019, FinCEN's FOIA office sent Plaintiffs a letter acknowledging the appeal.  Decl. ¶ 10.

7   On October 17, 2019, FinCEN notified Plaintiffs it had remanded the matter to FinCEN's FOIA office.

8   Decl. ¶ 11.  Plaintiffs filed the instant Complaint on December 26, 2019.  Decl. ¶ 12.  On January 31,

9   2020, FinCEN sent Plaintiffs a letter explaining that "[t]he processing of your request identified certain

10  materials that are being withheld in full pursuant to the Freedom of Information Act, 5 U.S.C. § 552."

11  Decl. ¶ 13.  On February 21, 2020, FinCEN answered.  *See* Dkt. No. 14.  On February 27, 2020,

12  FinCEN issued a final response indicating ~113,871 pages were being withheld in full.  Decl. ¶ 15.  On

13  June 26, 2020, as part of ongoing diligence, FinCEN issued a supplemental response, releasing 11 pages

14  in part, including six pages as a discretionary release.  Decl. ¶¶ 16, 44-46.

15  **IV.    LEGAL STANDARDS**

16          **A.      Summary Judgment Standard**

17          Summary judgment is appropriate if the record shows "that there is no genuine issue as to any

18  material fact and that the moving party is entitled to a judgment as a matter of law."  *Anderson v. Liberty*

19  *Lobby, Inc.*, 477 U.S. 242, 247 (1986); Fed. R. Civ. P. 56(c).  A court must enter summary judgment

20  "against a party who fails to make a showing sufficient to establish the existence of an element essential

21  to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v.*

22  *Catrett*, 477 U.S. 317, 322 (1986).  An issue is genuine only if there is a sufficient evidentiary basis on

23  which a reasonable fact finder could find for the nonmoving party.  *Anderson*, 477 U.S. at 248.  A fact is

24  material only if it could affect the outcome of the suit.  *See Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142,

25  1146 (9th Cir. 2005).  The mere existence of some alleged factual dispute between the parties will not

26  defeat an otherwise properly supported motion for summary judgment.  *See Anderson*, 477 U.S. at 248.

27  Summary judgment is appropriate if a trier of fact, viewing the record as a whole, could not find in favor

28  of the opposing party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**B.     FOIA**

Summary judgment is appropriate in FOIA cases if the agency can prove "that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." *James Madison Project v. Dep't of Justice*, 2018 WL 1472492, at *2 (D.D.C. Mar. 26, 2018) (internal quotation marks and citation omitted).  When an agency invokes an exemption in order to withhold requested records, it "bears the burden of demonstrating that the exemption properly applies to the documents." *Lahr v. NTSB*, 569 F.3d 964, 973 (9th Cir. 2009).  The agency meets this burden when it submits declarations that contain reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption. *Lane v. Dep't of the Interior*, 523 F.3d 1128, 1135-36 (9th Cir. 2008). Declarations submitted by an agency to demonstrate the adequacy of its FOIA response are entitled to a presumption of good faith. *See, e.g.*, *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 772 (9th Cir. 2015).  Where declarations give reasonably detailed justifications for withholding and appear to be in good faith, "the inquiry ends and the nondisclosure is upheld." *Id.* at 773 (citing *Hunt v. C.I.A.*, 981 F.2d 1116 (9th Cir. 1992)).

FOIA cases are decided using a *de novo* review standard.  5 U.S.C. § 552(a)(4)(B); *see, e.g. Aronson v. IRS*, 973 F.2d 962, 967 (1st Cir. 1992) (determining that, "once a court determines that the statute in question is an Exemption 3 statute, and that the information requested at least arguably falls within the statute, FOIA *de novo* review normally ends" and "[a]ny further review must take place under more deferential, administrative law standards").

## V.     FINCEN'S WITHHOLDINGS ARE PROPER

**A.     All BSA reports submitted to FinCEN and records of BSA reports are exempt from disclosure pursuant to the Bank Secrecy Act, 31 U.S.C. § 5319, under Exemption 3.**

At bottom, Plaintiffs' FOIA Request seeks information collected by FinCEN in GTO Reports pursuant to the BSA.  Decl. ¶ 6; Dkt. No. 1-1 at 1-5.  Indeed, ***all*** information FinCEN has which is responsive to Plaintiffs' FOIA Request is derived or extracted from GTO Reports or is kept in a record of GTO Reports.  *See* Decl. ¶¶ 26, 39, 55.  This is why Exemption 3 applies to every single document identified in FinCEN's *Vaughn* index, and FinCEN's Motion should be granted.  *See* Decl. ¶¶ 26, 39, 55; *see also* Decl. ¶¶ 48-55, Ex. 1.

Here, there is no question that the BSA exempts from disclosure under the FOIA the information Plaintiffs seek from those "report[s] and records of reports." 31 U.S.C. § 5319. Plaintiffs have even partially acquiesced as much, stipulating that "Plaintiffs shall not challenge Defendant's withholding in full of GTO Reports" because GTO Reports are unequivocally exempt from disclosure under FOIA. Dkt. No. 23 at ¶¶ 2-4. Plaintiffs, however, persist in seeking information derived or extracted from GTO Reports which is contained in "records of reports," such as the spreadsheets summarizing GTO Reports along with other types of BSA Reports, as well as various memoranda and email that contain information derived or extracted from GTO Reports — all of which are equally protected by the BSA and therefore also properly withheld under Exemption 3.[2] 31 U.S.C. § 5319; *see* Decl. Ex. 1.

"Exemption 3 protects records exempt from disclosure pursuant to a separate statute," such as the BSA. *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 776 (9th Cir. 2015); *see also Turner v. United States Dep't of the Treasury*, 2017 WL 1106030, at *7 (E.D. Cal. Mar. 23, 2017) ("Any such information collected pursuant to the BSA is therefore properly subject to Exemption 3"). Section 5319 of the BSA prohibits disclosure "under section 552 of title 5" of "report[a] and records of reports" as the terms are used in Subchapter II Records and Reports on Monetary Instrument Transactions, which includes GTO Reports.[3] GTO Reports are authorized within Subchapter II, and therefore are a type of BSA Report within the scope of 31 U.S.C. § 5319. *See* 31 U.S.C. § 5326 (part of Subchapter II, authorizing GTO Reports, such that GTO Reports are prohibited from disclosure under 31 U.S.C. § 5319); *see also* Decl. ¶¶ 22, 26, 29-35, 45, 48, n.7.[4] "There is a two-step inquiry in deciding Exemption 3 questions." *Hamdan*, 797 F.3d 776. "[Courts] ask first whether the statute identified by the agency is a statute of exemption within the meaning of Exemption 3, and then whether the withheld records satisfy

---

[2] If the Court decides that FinCEN's withholdings pursuant to Exemption 3 are proper, then the Court need not consider the applicability of the other exemptions, because such a determination would mean FinCEN has no non-exempt responsive information — documents with other exemptions asserted would cease to be responsive if Exemption 3 applies as FinCEN has asserted it. *See* Decl. ¶¶ 26, 39, 55. In the alternative, if the Court decides Exemption 3 does not apply, the Court should consider the other exemptions addressed herein.

[3] Exemption 3 provides that laws enacted after the OPEN FOIA Act of 2009 must specifically cite to FOIA. *See* 5 U.S.C. § 552(b)(3)(B). The BSA does exactly that. *See* 31 U.S.C. § 5319.

[4] Insofar as SAR Reports may be at issue, they too are part of Subchapter II and therefore within the scope of 31 U.S.C. 5319. *See* 31 U.S.C. § 5318 (part of Subchapter II, authorizing SAR Reports). *See* Decl. ¶ 26.

the criteria of the exemption statute." [5]  *Id*.  There is no doubt that both prongs are satisfied in this case.

First, "the [BSA] . . . has been found to meet the requirements of [5 U.S.C. § 552(b)(3)] subpart (A)(i),"

"which 'requires that the matters be withheld from the public in such a manner as to leave no discretion

on the issue.'"  § 8:4.Subpart (A)(i): statutes requiring withholding, Guidebook to the Freedom of

Information and Privacy Acts (2020) (quoting 5 U.S.C. § 552(b)(3)(A)(i)) (footnote omitted).  Second,

Courts have repeatedly found that various types of BSA reports and documents containing information

derived or extracted from BSA Reports, are properly withheld pursuant to 31 U.S.C. § 5319 under

Exemption 3.[6]

For example, in *Sciba v. Bd. of Governors of Fed. Reserve Sys.*, the Court found the government

"correctly assert[ed] Exemption 3(A) of the FOIA as justification for nondisclosure of the withheld

documents because the two SAR[ Reports] s and four [Currency Transaction Reports ("CTRs")] f[e]ll

within the scope of 31 U.S.C. § 5319."  2005 WL 3201206 at *5. (also finding that "[i]n accordance

with the requirements of Exemption 3(A), section 5319 is a separate statute from the FOIA . . . and that

'[t]he absolute language of section 5319 eliminates any possibility of agency discretion thus satisfying

the requirement of Exemption 3(A) that a statutorily mandated privilege must leave no discretion to the

agency for withholding.'" (quoting *Linn v. U.S. Dep't of Justice*, 1995 WL 631847, at *30 (D.D.C. Aug.

22, 1995) (alterations omitted)).  Accordingly, the Court should find that FinCEN's withholding of

information from SAR Reports under Exemption 3 is proper.

Likewise, in *Berger v. IRS*, the Court found "[t]he IRS properly withheld [in full or in part pages

containing] [BSA] report information under both FOIA and the Privacy Act."  487 F. Supp. 2d 482, 496,

498 (D.N.J. 2007) (also finding "that § 5319 meets the criteria of Exemption 3 because it mandates

withholding in such a manner as to leave no discretion on the issue to the agency").  In *Berger*

---

[5] It is also noteworthy that Exemption 3 is unique among the FOIA exemptions "in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within that statute's coverage." *Goland v. CIA*, 607 F.2d 339, 350 (D.C. Cir. 1978) (footnote omitted); *see also Sciba v. Bd. of Govs. of Fed. Res. Sys.*, 2005 WL 3201206, at *5 (D.D.C. Nov. 4, 2005).

[6] Lest there be any doubt that 31 U.S.C. § 5319 applies equally to SAR Reports as it does the GTO Reports which Plaintiffs stipulated away.  See Dkt. No. 23.  *See, e.g.  Stein v. U.S. SEC*, 266 F. Supp. 3d 326, 350 (D.D.C. 2017) (finding "[t]he SEC's withholding of [278 SAR Reports] under Exemption 3 was appropriate" pursuant to "31 U.S.C. § 5319, a provision of the [BSA] which exempts from FOIA disclosure records and reports on monetary instruments transactions, including SARs").

1   specifically, the Court found the IRS properly withheld in full or in part 43 pages because they contained

2   "information derived or extracted from [BSA] Reports" — like the spreadsheets, memoranda, and email

3   at issue in this case.  *Id.* at 496; *see also Cuban v. S.E.C.*, 795 F. Supp. 2d 43, 63 (D.D.C. 2011) ("the

4   Court finds that . . . exemption [3(A) in view of the BSA] prohibits disclosure of Documents 50 and 51,

5   as they were created by a financial institution and contain either a report or a record of reports"

6   (emphasis added)); *Ortiz v. United States Dep't of Justice*, 67 F. Supp. 3d 109, 118 (D.D.C. 2014) ("The

7   Court concludes that the teletype is properly withheld under Exemption 3 because it is derived from

8   reports generated pursuant to the [BSA], and the Act deems such reports exempt from disclosure under

9   the FOIA."); *Turner*, 2017 WL 1106030 at *8 (finding information derived or extracted directly from

10  BSA Reports is properly withheld pursuant to the BSA non-disclosure provision); Decl. ¶¶ 26, 39, 55,

11  Ex. 1.  Accordingly, the Court should find FinCEN properly withheld information from BSA Reports,

12  including GTO Reports — and including spreadsheets, memoranda, and email containing information

13  derived or extracted from GTO Reports.

14      In *Bloomer v. U.S. Dep't of Homeland Sec.* the Court found "that DHS ha[d] properly asserted

15  Exemption 3" as to "information that has been reported by financial institutions to the Treasury

16  Department, and [was] subsequently shared with other government agencies" pursuant to the BSA.  870

17  F. Supp. 2d 358, 365 (D. Vt. 2012) (also finding "[t]he [BSA] is properly within the bounds of

18  Exemption 3 because it "mandates withholding in such a manner as to leave no discretion on the issue to

19  the agency" (citing *Berger*, 487 F. Supp. 2d at 496)).  Specifically regarding the second prong, the Court

20  found Exemption 3 was properly asserted in view of "DHS's *Vaughn* Index [which] explain[ed] that the

21  redaction [was] part of a 'Report of Investigation from the TECS database' [and an accompany

22  declaration that explained] 'the information ICE redacted concerned [CTRs] from financial institutions,

23  as required by the [BSA].'"  *Id.*  (alterations omitted).  FinCEN has done the same here.  Decl. ¶¶ 5, 48-

24  55; *see* Decl. Ex. 1 (for each application of Exemption 3 explaining withholding in part or in full in view

25  of BSA Reports, including GTO Reports which are the source of information sought by Plaintiffs).

26  According, the Court should find that FinCEN properly withheld information reported by financial

27  institutions to FinCEN under Exemption 3, pursuant to the BSA.

28

1

2

### 1.   Arguments in Plaintiff's' Complaint that Exemption 3 does not apply are unsupported by case law.

Despite acknowledging that withholding information pursuant to Exemption 3 in view of the BSA may be proper in some cases, Plaintiffs suggest this is not such a case.  *See* Dkt. No. 1 at ¶ 21. Plaintiffs' suggestion is incorrect.  Given that the Complaint was filed before FinCEN served its *Vaughn* index, the Complaint could not have anticipated that FinCEN's only source of responsive information is within GTO Reports, or records of reports such as various spreadsheets, memoranda, and email that derive or extract the responsive information from GTO Reports.  Decl. ¶¶ 6, 26, 39, 55; Ex. 1; Dkt. No. 1-1 at 1-5 (Plaintiffs' FOIA request, which seeks information FinCEN has only in GTO Reports or in other documents which derive responsive information from GTO Reports).  As such, all withholding pursuant to Exemption 3 under the BSA are proper, even in view of the arguments advanced by Plaintiffs in their Complaint.  *See* Dkt. No. 1 at ¶¶ 19, 21.

In apparent anticipation of the fact that Exemption 3 would apply to this case in view of the BSA, Plaintiffs' Complaint cites five cases, each of which is distinguishable or supports application of Exemption 3.  *See* Dkt. No. 1 at ¶¶ 19, 21.  Plaintiffs' reliance on *California Bankers Ass'n v. Shultz* for the assertion that the BSA does "not enumerate an intention to keep the identities of residential real estate owners secret" is misplaced because *Shultz* addresses only the 1970 version of the BSA, and therefore did not consider the fact that FinCEN's regulatory functions have been amended by Title III of the USA PATRIOT Act of 2001 and other post-1970 legislation.  416 U.S. 21 (1974); Dkt. No. 1 at ¶ 19; Dec. ¶ 19; 31 U.S.C. § 5311 (effective Oct. 26, 2001).  Plaintiffs' argument also ignores that even in *Shultz*, the Supreme Court noted under the 1970 version of 31 U.S.C. § 1081 "delegates to the Secretary the authority for specifying the currency transactions which should be reported, 'if they involve the payment, receipt, or transfer of United States currency, or such other monetary instruments as the Secretary may specify.'"  *Shultz*, 416 U.S. at 94.  As such, whether the 1970 BSA specifically "enumerate[s] an intention to keep the identities of residential real estate owners secret" is irrelevant — the authority to do so was and is delegated to the Treasury.  Dkt. No. 1 at ¶ 19; Decl. ¶¶ 19-21.

Plaintiffs' reliance on *BizCapital Bus. & Indus. Dev. Corp. v. Comptroller of Currency of U.S.* is also misplaced because there the case did not even involve the BSA, let alone FinCEN's GTO Reports.

Rather, the "one issue [on appeal was] whether the district court erred in failing to remand the case to the [Office of Comptroller of Currency ("OCC")] for an initial administrative determination of BizCapital's request, using the standard imposed by the district court," in view of "the balancing test set forth in the OCC's *Touhy* regulation[,] 12 C.F.R. §§ 4.31–4.40." 467 F.3d 871, 873 (5th Cir. 2006). Accordingly, *BizCapital* is irrelevant to the facts of this case.

Additionally, Plaintiffs' citation to *Davis v. U.S. Dep't of Justice* does not support Plaintiffs' suggestion that segregable portions of BSA Records must be disclosed. 2003 WL 25568468, at *5 (D.D.C. Mar. 21, 2003); Dkt. No. 1 at ¶ 21. Rather, the Court in *Davis* found that "FinCEN properly withheld [in full] the report at issue in . . . under Exemption 3 because the [BSA] so mandate[d], and [left] FinCEN no discretion on the issue. *Davis*, 2003 WL 25568468, at *5 (citing *Linn*, 1995 WL 631847 at *30). *Boyd v. Exec. Office for United States Attorneys* also fails to support Plaintiffs proposition regarding segregability of BSA records. 87 F. Supp. 3d 58, 90 (D.D.C. 2015); Dkt. No. 1 at ¶ 21. In *Boyd*, the Court merely "remand[ed] th[e] matter to defendants so that they [could] coordinate with Treasury to provide a more detailed justification and to release any reasonably segregable portions of the records." *Id.* The Court did not comment of the propriety of segregating information withheld specifically under Exemption 3. *Id.* Finally, Plaintiff also cites in *Berger* for support, but there it was only information "not derived or extracted directly from [BSA] Reports [that] could be segregated" and produced — the Court determined that the IRS properly withheld all "[BSA] forms or information derived or extracted from [BSA] reports." 487F. Supp. 2d at 496. No information within, derived from, or extracted from BSA Reports was segregated for production.[7] *Id.*

## B.   FinCEN has met the threshold requirement of Exemption 7

As a threshold matter, FOIA Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such records or information" would result in one of six specified harms. 5 U.S.C. § 552(b)(7). Prior to invoking any one of the enumerated harms under FOIA Exemption 7, the agency must demonstrate that the records at

---

[7] Here, the only source of information responsive to Plaintiffs' FOIA Request are GTO Reports or information contained in various spreadsheets, memoranda, and email that has been derived or extracted from those GTO Reports. Decl. ¶¶ 6, 26, 39, 55, Ex. 1. Because GTO Reports are a type of BSA Report subject to 31 U.S.C. 5319, FinCEN has no responsive information which can be segregated. *See id.*; Dkt. No. 1 at ¶ 21; *see also* 31 U.S.C. § 5326.

issue were compiled for a law enforcement purpose and that the enforcement activity is within the law

enforcement responsibilities of that agency.  In this case, there is no doubt that FinCEN — the Financial

Crimes Enforcement Network — has a law enforcement mandate within the meaning of Exemption 7.

*See* 31 U.S.C. § 310(b)(2)(C)(i)-(ii) (charging FinCEN with "identify[ing] possible criminal activity to

appropriate Federal, State, local, and foreign law enforcement agencies" and "support[ing] ongoing

criminal financial investigations and prosecutions."); *see also  Lewis v. U.S. Dep't of the Treasury*, 2020

WL 1667656, at *3 (D.D.C. Apr. 3, 2020) ("While FinCEN is indeed a mixed function agency, agencies

that have both civil and criminal enforcement duties still can invoke Exemption 7 as long as they

compiled the records for law enforcement purposes. . . . FinCEN has met the necessary threshold

showing for Exemption 7." (internal quotation marks and citation omitted)).  As such, FinCEN is

responsible for federal laws relating to financial crimes.  *See* Decl. ¶¶ 66-69.

"An agency with a clear law enforcement mandate need only establish a rational nexus between

enforcement of a federal law and the document for which an exemption is claimed."  *Los Angeles Times

Commc'ns, LLC v. Dep't of Army*, 442 F. Supp. 2d 880, 895 (C.D. Cal. 2006) (internal quotation marks

and citation omitted).  Here, the responsive records were compiled in the course of FinCEN's fulfillment

of its statutory duties to support FinCEN's own investigations and to enforce statutes that FinCEN

administers, including facilitating investigations of financial or other crimes by other law enforcement

agencies.  Decl. ¶ 69.  "Thus, these records were compiled for law enforcement purposes and fall

squarely within FinCEN's statutory duties, satisfying the threshold requirement."  Decl. ¶ 69.

### C.   FinCEN properly withheld law enforcement techniques and procedures for law enforcement investigations under Exemption 7(E).

Exemption 7(E) protects "records or information compiled for law enforcement purposes, but

only to the extent that the production of such law enforcement records of information . . . would disclose

techniques and procedures for law enforcement investigations or prosecutions, or would disclose

guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be

expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  "The statutory requirement that

the government show that disclosure 'could reasonably be expected to risk circumvention of the law'

applies only to guidelines for law enforcement investigations or prosecutions, not to techniques and

procedures." *ACLU of N. Cal. v. United States Dep't of Justice*, 880 F.3d 473, 491 (9th Cir. 2018) (quoting *Hamdan*, 797 F.3d at 778).  FinCEN has made that showing.  *See* Decl. ¶¶ 84-92.

Under the circumstances of this case, because FinCEN's only sources of responsive information are contained in, derived from, or extracted from reports or records of reports filed with FinCEN pursuant to the BSA, even if the Court did not grant FinCEN's Motion as to Exemption 3, all responsive information sought by Plaintiffs would still be properly withheld under Exemption 7(E).  Specifically, for every single document where FinCEN has asserted Exemption 7E, FinCEN has also asserted Exemption 3 in view of the BSA.[8]  Decl. ¶¶ 91, 92, Ex. 1.  Exemption 3 applies to all the same documents and most of the same pages as Exemption 7(E) because all of documents take the BSA Report information, which is subject to Exemption 3, and analyze it for law enforcement purposes using FinCEN's non-public law enforcement techniques and procedures, which are subject to Exemption 7(E).  Decl. ¶ 84; *see* Decl. ¶¶ 18, 21, 22, 84, 91, 92, Ex. 1.  As the numbers evidence, that analysis even extends to some pages which do not specifically cite BSA Report information.

As explained in the Declaration of Mr. Mosier, FinCEN "analyz[es] [BSA Reports] using sophisticated non-public techniques."  Decl. ¶ 18; *see* Decl. ¶¶ 21 ("FinCEN's responsibilities include the detection and deterrence of financial crime by using sophisticated techniques not publicly disclosed to analyze this data, which comes from BSA Reports individually and in combination with others of the same and different types, to identify possible criminal activities"); ¶ 22 ("GTO Reports are unique to FinCEN and are different in material ways from information that other governmental entities keep and publicly record for tax and other administrative purposes."); ¶ 87 ("releasing the details of the transactions reported or how that information is processed would severely compromise the very purposes for which the data is collected and the techniques used to digest that data").  And at least one Court has even recognized that FinCEN's "specific methodolog[ies]—the details of which have not been publicly disclosed . . . [are] sufficient to justify the use of Exemption 7(E) for the information withheld to protect the non-public methodology."  *Yunes v. United States Dep't of Justice*, 2016 WL 4506971, at

---

[8] For example, of the 126 pages of final draft documents consisting of memoranda and email, Exemption 7(E) is asserted for all 126 pages, while Exemption 3 applies to 123 of those same pages.  Decl. ¶ 92; n.15.  With respect to the draft memoranda, Exemption 7(E) is asserted for all 1,309 pages, while Exemption 3 applies to 1,283 of those same pages.  Decl. ¶ 92.  And the spreadsheets compiling BSA Reports are withheld in full pursuant to both Exemptions 3 and 7(E).  Dec. Ex. 1 at Doc # 1, 12.

*7 (D.D.C. Aug. 26, 2016).

Moreover, insofar as it is relevant, the risk of circumvention is real, and well documented.  *See* Decl. ¶¶ 87-89.  Indeed, "[m]ajor newspapers have run stories that describe the potential for real estate purchasers to attempt to evade GTO reporting in various ways."  Decl. ¶ 87; *see* Decl. Exs. 24-26.  Thus, "[r]elease of this information, therefore, reasonably could be expected to facilitate circumvention of the law by money launderers, in that it could divulge a particular law enforcement technique and internal investigative methodology for obtaining money-laundering information that would allow a person to alter his behavior in order to avoid detection."  Decl. ¶ 88.

### D.    Personally identifying information in FinCEN's records compiled for law enforcement purposes is properly withheld under Exemption 7C.

Plaintiffs FOIA Request boils down to a request for information about third party individuals that is protected by Exemption 7(C).  *See* Dkt. No. 1-1 at 1-5 (seeking "information about the real human owners . . . of all-cash real residential real estate transactions . . . including . . . addresses[,] . . [t]he name of the true, human owners of each residential real estate purchased with cash[,] . . . [t]he name of the individual responsible for representing the purchaser[,] . . . [and] [t]he address of the human owners.").  All this information, however, is contained in, derived from, or extracted from BSA Reports, which are created to identify criminal financial activity, and which contain tip and lead information.  Decl. ¶¶ 77, 78, 82, 83, Ex. 1 at Doc. # 1-6, 8-12, 14-20, 30-47, and 48-61.  Accordingly, all such information is properly withheld by FinCEN pursuant to Exemption 7(C).

Exemption 7(C) applies when the production of records compiled for law enforcement purposes "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C); *Taylor v. U.S. Dep't of Justice*, 257 F. Supp. 2d 101, 113 (D.D.C. 2003).  In applying Exemption 7(C), the court must balance the public interest in disclosure against the privacy interest of the third parties involved.  *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 767 (1989) ("*Reporters*").  "[I]nformation about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct" is not the type of information to which FOIA permits access.  *Dep't of Def. v. Federal Labor Relations Auth.*, 510 U.S. 487, 496 (1994) (internal quotation marks and citation omitted).

1       As the Supreme Court has observed, the provisions of FOIA "reflect a congressional

2 understanding that disclosure of records containing personal details about private citizens can infringe

3 significant privacy interests." *Reporters*, 489 U.S. at 766.  Disclosure of redacted or withheld material is

4 warranted only when the individual seeking the information demonstrates a public interest in the

5 information that is sufficient to overcome the privacy interest at issue.  *See Martin v. Dep't of Justice*,

6 488 F.3d 446 (D.C. Cir. 2007); *Boyd v. Criminal Div.*, 475 F.3d 381, 386-87 (D.C. Cir. 2007).  In order

7 to trigger the balancing of public interests against private interests, a FOIA requester must "(1) 'show

8 the public interest sought to be advanced is a significant one, an interest more specific than having the

9 information for its own sake,' and (2) 'show the information is likely to advance that interest.'"  *Boyd*,

10 475 F.3d at 387 (quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004)).

11       "Exemption 7(C) allows broad categorical protection of information that identifies third parties

12 in law enforcement records." *Thomas v. Dep't of Justice*, 531 F. Supp. 2d 102, 107 (D.D.C. 2008).  And

13 "privacy interests are particularly difficult to overcome when law enforcement information regarding

14 third parties is implicated," as is the case with some of the information withheld in part here.  *Martin*,

15 488 F.3d at 457.  "'Third parties who may be mentioned in investigatory files' and 'witnesses and

16 informants who provide information during the course of an investigation' have an 'obvious' and

17 'substantial' privacy interest in their information." *Id.* (citation omitted).

18       Here especially, the public interest in non-disclosure does not outweigh the substantial private

19 interests.  "[T]he standard for an 'unwarranted invasion of privacy' under FOIA Exemption 7(C) is

20 broadly interpreted." *Brown v. U.S. Dep't of Justice*, 2015 WL 1237274, at *9 (E.D. Cal. Mar. 17,

21 2015) (citing *Reporters*, 489 U.S. at 756, 765-66).  Thus, for example, "[l]aw enforcement personnel

22 involved in a criminal investigation [also] have a . . . privacy interest under Exemption 7(C) in not

23 having their identities disclosed," as is the situation with FinCEN employees and other federal law

24 enforcement officials in this case.  *Brown*, 2015 WL 1237274, at *9 (internal quotation marks and

25 citations omitted).  "The [Supreme] Court has narrowly defined the public interest that is cognizable in a

26 FOIA balancing: The only relevant public interest in the FOIA balancing analysis is the extent to which

27 disclosure of the information sought would shed light on an agency's performance of its statutory duties

28 or otherwise let citizens know what their government is up to." *Prudential Locations LLC v. United*

1   *States HUD*, 739 F.3d 424, 433 (9th Cir. 2013) (internal quotation marks, alterations, and citations

2   omitted).  "[I]t is clear that the public's interest in disclosure is not furthered by disclosure of

3   information about individuals that is accumulated in governmental files but that reveals little or nothing

4   about an agency's own conduct."  *Taylor*, 257 F. Supp. 2d at 114 (internal quotation marks, alterations,

5   and citations omitted).  "The asserted public interest in disclosure must be a 'significant one' and 'more

6   specific than having the information for its own sake.'"  *North v. U.S. Dep't of Justice*, 658 F. Supp. 2d

7   163, 172 (D.D.C. 2009) (citation omitted).  Even if a particular privacy interest is minor, nondisclosure

8   remains justified where, the public interest in disclosure is "virtually nonexistent."  *Davis v. U.S. Dep't*

9   *of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992).

10           **1.**       **The personally identifying information of third-parties associated with BSA**
                           **Reports is properly withheld under Exemption 7(C).**

11           Here, FinCEN invokes Exemption 7(C) to protect the personally identifying information of third

12   party individuals.  *See* Decl. ¶¶ 77, 78, 82, 83, Ex. 1 at Doc. # 1-6, 8-12, 14-20, 30-47, and 48-61.  In

13   every instance, the record containing the personally identifying information of a third party was

14   "compiled for law enforcement purposes," including the investigation of criminal financial activity, and

15   contains information derived from BSA Reports including tip and lead information.  Decl. ¶ 82; *see also*

16   Decl. ¶¶ 66-69, 77, 78, 79, 80, 82, 84, 91.  As such, "[r]eleasing the identities of these persons to the

17   public could subject them to undue public attention, harassment, embarrassment, and severe financial

18   consequences."  Decl. ¶ 82.  Moreover, "[t]he persons identified in these reports have significant privacy

19   interests in not having their names publicly associated with BSA Reports . . . or being associated with

20   potential law enforcement-related investigations [because] [t]hese documents do not reflect that the

21   persons have been charged—much less convicted—of a crime[,] and may well be found not to have

22   broken any law in connection with the information that FinCEN has compiled."  *Id.*  Accordingly,

23   disclosure could, for example, imply individuals are involved with criminal activity when no illegal

24   activity has occurred.  *See id.*  Indeed, members of the public may draw adverse inferences from the fact

25   that an individual is mentioned in the files of a law enforcement agency.  *See id.*; *Thomas*, 531 F. Supp.

26   2d at 110 ("Exemption 7(C) recognizes that the stigma of being associated with any law enforcement

27   investigation affords broad privacy rights to those who are connected . . . with such an investigation."

28

(citing *Reporters*, 489 U.S. at 773-75)).

Additionally, the public interest in non-disclosure does not outweigh the substantial private interests of the third-parties. The Supreme Court has held that when the "subject of [a FOIA request] is a private citizen and when the information is in the Government's control as a compilation, rather than as a record of 'what the Government is up to,' the privacy interest protected by Exemption 7(C) is in fact at its apex while the FOIA-based public interest in disclosure is at its nadir." *Reporters*, 489 U.S. at 780 (addressing the application of Exemption 7(C) to a FOIA request that sought the rap sheets of four members of the Medico family). Such is the case here. Plaintiffs' FOIA Request seeks information about private citizens that the Government controls as a compilation, rather than as a record of what the Government is up to. *See* Dkt. No. 1-1 at 1-54. Indeed, Plaintiff's FOIA Request is clear, Plaintiffs seek to report on the "state of the housing market" by identifying the "real human owners . . . of all-cash real residential real estate transactions," not on the operations of FinCEN. Dkt. No. 1-1- at 1. "[A]s a categorical matter [such] a third party's request for law enforcement records or information about a private citizen can reasonably be expected to invade that citizen's privacy, [such that] when the request seeks no 'official information' about a Government agency, but merely records that the Government happens to be storing, the invasion of privacy is 'unwarranted.'" *Reporters*, 489 U.S. at 780; *see also Prudential*, 739 F.3d at 433.

### 2. The personally identifying information of FinCEN employees and federal law enforcement officials are properly withheld under Exemption 7(C).

FinCEN also invokes 7(C) to protect the names of FinCEN employees and the names of federal law enforcement officials who are charged with the investigation and prosecution of criminal activity.[9] Decl. ¶¶ 77-81, Ex. 1 at Doc. # 2-6, 11-12 and 14-20. As explained in the Declaration, "persons targeted for these actions could bear significant ill will toward the FinCEN [and other law enforcement]

---

[9] FinCEN has also withheld individual employee information under FOIA Exemption 6. As discussed herein, both Exemption 6 and 7(C) require the Court to balance the privacy interest protected by the exemption against the public interest in government openness that would be serviced by disclosure. *See Nat'l Archives*, 541 U.S. at 171. The only distinction between the balancing tests applied under is the "magnitude of the public interest" required to override the privacy interests protected by the exemptions. *Forest Serv. Empls.*, 524 F.3d at n.2. Where the documents at issue are compiled for law enforcement purpose, only the lower requirement of Exemption 7(C) must be met. *See Lane*, 523 F.3d at 1137 (where Exemption 7(C) applies, the court need not reach whether the information might also be protected under Exemption 6); *Nat'l Archives*, 541 U.S. at 165-66 (same).

1  personnel that participated in the investigations and enforcement proceedings [and] because these

2  FinCEN personnel may be in positions of access to information regarding investigations with national

3  security implications or other sensitive criminal matters, they could become targets of harassing

4  inquiries."  Decl. ¶ 63; *see Lesar v. Dep't of Justice*, 636 F.2d 472, 487 (D.C. Cir. 1980) (finding

5  legitimate privacy interest in shielding the identities of government officials where disclosure could

6  subject them to "annoyance or harassment"); *Thomas*, 531 F. Supp. 2d at 110 ("Exemption 7(C) protects

7  the privacy interests of law enforcement personnel whose names are contained in law enforcement

8  records.").  Indeed, release of the FinCEN employee and law enforcement official names could interfere

9  with their ability to conduct future investigations and place them in danger from the targets of law

10  enforcement investigations.  Decl. ¶¶ 77-81.

### E.     The names of FinCEN and other government employees are properly withheld under Exemption 6.

Exemption 6 applies to "personnel and medical files and similar files the disclosure of which

would constitute a clearly unwarranted invasion of personal privacy."[10]  5 U.S.C. § 552(b)(6).  "The

phrase 'similar files' "has a broad, rather than a narrow meaning."  *Forest Serv. Empls. for Envtl. Ethics*

*v. U.S. Forest Serv.*, 524 F.3d 1021, 1024 (9th Cir. 2008)  (internal quotation marks and citation

omitted).  For example, "[g]overnment records containing information that applies to particular

individuals satisfy the threshold test of Exemption 6."  *Id*.  Both Exemption 6 and 7(C) require the Court

to balance the privacy interest protected by the exemption against the public interest in government

openness that would be serviced by disclosure.  *See Nat'l Archives,* 541 U.S. at 171.  The only distinction

between the balancing tests applied is the "magnitude of the public interest" required to override the

privacy interests protected by the exemptions.  *Forest Serv. Empls*, 524 F.3d at n.2 (citation omitted).

Where the documents at issue are compiled for law enforcement purpose, only the lower requirement of

Exemption 7(C) must be met.  *See Lane*, 523 F.3d at 1137 (where Exemption 7(C) applies, the court

need not reach whether the information might also be protected under Exemption 6).  "Disclosures that

would subject individuals to possible embarrassment, harassment, or the risk of mistreatment constitute

---

[10] Exemptions 6 and 7(C) exempt the disclosure of personal, private information.  These exemptions are often considered together.  *See Yonemoto v. Dep't of Veterans Affairs*, 686 F.3d 681, 693 n.7 (9th Cir. 2012).

nontrivial intrusions into privacy under Exemption 6." *Cameranesi v. Dep't of Def.*, 856 F.3d 626, 638 (9th Cir. 2017).

Here, FinCEN properly asserted Exemption 6 in withholding information identifying career level FinCEN employees and other federal law enforcement personnel.  Decl. ¶¶ 61-65, Ex. 1 at Doc. # 2-6, 11-12, 14-20.  The concerns regarding persons bearing ill will towards these personnel which might make them, targets of harassment or efforts to access sensitive information are the same as with respect to Exemption 7(C), above.  Decl. ¶¶ 61-65; *see also* Decl. ¶¶ 77-81.

### F.     FinCEN's documents compiled for law enforcement purposes are properly withheld under Exemption 7A.

Under the Freedom of Information Reform Act of 1986 Exemption 7(A) authorizes the withholding of "records or information compiled for law enforcement purposes" if release "could reasonably be expected to interfere with (A) enforcement proceedings."  P.L. 99–570 (HR 5484), October 27, 1986, 100 Stat 3207.  As such, Exemption 7(A) requires a two-step analysis: first, there must be a reasonable likelihood of a pending or contemplated law enforcement proceeding; second, release must be reasonably expected to cause some articulable harm to that proceeding.  *See Butler v. Dep't of Air Force*, 888 F. Supp. 174, 183 (D.D.C. 1995) (*aff'd sub nom. Butler v. U.S. AirForce*, 116 F.3d 941 (D.C. Cir. 1997)) (citing *N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978)); *see also Lion Raisins, Inc. v. USDA*, 231 F. App'x 563, 564 (9th Cir. 2007) (finding agency submissions described "ongoing proceedings and explained how disclosure" could interfere).[11]

Here, "[b]ecause Plaintiffs' request is so broad, records responsive to its request touch upon a number of law enforcement inquiries with wide-ranging implications."  Decl. ¶ 71; *see also* Dkt. No. 1-1 at 1-5.  Moreover, as the Declaration explains, for every document withheld pursuant to Exemption 7A, "FinCEN has confirmed . . . that portions of these documents involve (1) potential targets of grand jury investigation; (2) the subject of a grand jury investigation who is under consideration for possible enforcement action; and (3) persons who are under active investigation."  Decl. ¶ 74, Decl. Ex. 1 at Doc. # 9, 11, 52-60 (all withholdings under 7(A) are only in part).  As the Declaration explains further,

---

[11] The government, however, "need not 'make a specific factual showing with respect to each withheld document that disclosure would actually interfere with a particular enforcement proceeding.'"  *Lynch v. Dep't of the Treasury*, 2000 WL 123236, at *2 (9th Cir. Jan. 28, 2000) (internal quotation marks and citations omitted).

1    "[r]eleasing this information . . . would frustrate sensitive and complex law enforcement operations

2    involving highly sophisticated criminals taking all available precautions to launder money enough to

3    buy homes."  Decl. ¶ 74.

4            **G.      FinCEN's Draft Documents Are Properly Withheld In Full Under Exemption 5.**

5            FOIA exempts from mandatory disclosure "inter-agency or intra-agency memorandums or letters

6    that would not be available by law to a party other than an agency in litigation with the agency."  5

7    U.S.C. § 552(b)(5).  FOIA thus permits agencies to withhold privileged information, including

8    deliberative materials.  *See, e.g.*, *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *Maricopa*

9    *Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1089, 1092 (9th Cir. 1997).  Exemption 5 incorporates the

10   deliberative process privilege ("DPP").  *Dep't of the Interior v. Klamath Water Users Protective Ass'n*,

11   532 U.S. 1, 8 (2001).  The purpose of the DPP is "to allow agencies freely to explore possibilities,

12   engage in internal debates, or play devil's advocate without fear of public scrutiny."  *Carter v. U.S.*

13   *Dep't of Commerce*, 307 F.3d 1084, 1088-89 (9th Cir. 2002) (internal quotation marks and citations

14   omitted).

15           To fall within the DPP, a document must be both "(1) 'predecisional' or 'antecedent to the

16   adoption of agency policy' and (2) 'deliberative,' meaning 'it must actually be related to the process by

17   which policies are formulated.'"  *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1117 (9th

18   Cir. 1988) (quoting *Jordan v. Dep't of Justice*, 591 F.2d 753, 774 (D.C. Cir. 1978)).  A document is

19   "predecisional [if it is] prepared in order to assist an agency decisionmaker in arriving at his decision,

20   [as opposed to] postdecisional [documents] setting forth the reasons for an agency decision already

21   made."  *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975).  A document is

22   "deliberative" if "disclosure of materials would expose an agency's decisionmaking process in such a

23   way as to discourage candid discussion within the agency and thereby undermine the agency's ability to

24   perform its functions."  *Dudman Comm'ns Corp. v. Dep't of the Air Force*, 815 F.2d 1565, 1568 (D.C.

25   Cir. 1987).  Further, it need not "contain recommendations on law or policy."  *Nat'l Wildlife Fed'n*, 861

26   F.2d at 1118.  Documents covered by the DPP include "'recommendations, draft documents, proposals,

27   suggestions and other subjective documents which reflect the personal opinions of the writer rather than

28   the policy of the agency,' as well as documents which would 'inaccurately reflect or prematurely

1   disclose the views of the agency.'" *Id.* at 1118-19 (citation omitted).

2       In this case FinCEN has also withheld in part several documents as deliberative, and in some

3   cases, also as pre-decisional, as explained in the Declaration.  Decl. ¶¶ 56-60; Ex. 1 at Doc. # 6-8, 14-61.

4       **H.    FinCEN has produced all reasonably segregable portions of responsive records.**

5       Under FOIA, "[a]ny reasonably segregable portion of a record shall be provided to any person

6   requesting such record after deletion of the portions which are exempt . . . ."  5 U.S.C. § 552(b).  The

7   agency need not disclose non-exempt portions of a document if "they are inextricably intertwined with

8   exempt portions such that the excision of exempt information would impose significant costs on the

9   agency and produce an edited document with little informational value." *Willamette Indus., Inc. v.*

10  *United States*, 689 F.2d 865, 867-68 (9th Cir. 1982) (internal quotation marks and citations omitted).

11  The agency must provide a "detailed justification" for its claim of non-segregability, but "is not required

12  to provide so much detail that the exempt material would be effectively disclosed." *Johnson v. Exec.*

13  *Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (citation omitted).  "The agency can meet

14  its burden [to establish that all reasonably segregable portions of documents have been segregated and

15  disclosed] by offering an affidavit with reasonably detailed descriptions of the withheld portions of the

16  documents and alleging facts sufficient to establish an exemption." *Pac. Fisheries Inc. v. United States*,

17  539 F.3d 1143, 1148 (9th Cir. 2008) (internal citations omitted); *see* Decl. ¶¶ 47-92, Ex. 1.

18      FinCEN has met the segregability requirement.  The Declaration describes the documents at

19  issue, the information withheld, the exemptions claimed and why the exemptions apply.  Decl. ¶¶ 47-92.

20  The Declaration also details FinCEN's inspection of voluminous spreadsheets and line-by-line review of

21  all other documents.  Decl. ¶ 47.  As such, FinCEN determined there is no further information that could

22  be reasonably segregated for release and did not withhold any non-exempt information on the grounds it

23  was non-segregable. *Id.*; *see also Johnson*, 310 F.3d at 776 (finding the segregability requirement met

24  where the *Vaughn* index describes the documents withheld and applicable exemptions and when the

25  declaration stated that a line-by-line review of documents was conducted and no releasable information

26  could be reasonably segregated).

27  **VI.    CONCLUSION**

28      Accordingly, FinCEN respectfully requests that the Court grant summary judgment in its favor.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
3:19-CV-08181 JCS                          20

DATED: September 10, 2020

Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

*/s/ J. Wesley Samples*
J. WESLEY SAMPLES
Assistant United States Attorneys

Attorneys for Defendants