# EXHIBIT 26

Case 3:19-cv-08181-JCS Document 29-28 Filed 09/10/20 Page 2 of 5

This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers visit https://www.djreprints.com.

https://www.wsj.com/articles/new-rule-may-miss-target-on-real-estate-purchases-1456223402

PROPERTY REPORT

# New Rule May Miss Target on Real-Estate Purchases

Treasury aims to crack down on transactions by limited liability companies, but loopholes could thwart plan



Jennifer Shasky Calvery, director of the financial crimes enforcement network with the U S Treasury, said: 'We are seeking to understand the risk that corrupt foreign officials, or transnational criminals, may be using premium U S real estate to secretly invest millions in dirty money'
**PHOTO:** ANDREW HARRER/BLOOMBERG NEWS

*By Josh Barbanel*
Updated Feb. 23, 2016 2:55 pm ET

A new rule designed to lift the veil of secrecy from real estate purchased through anonymous shell companies in New York and Miami might not have the intended effect, real-estate lawyers and brokers said.

The rule, which takes effect March 1 and continues for 180 days, requires title insurers to send the government the names of the human owners behind limited liability companies that buy high-value real estate in the two cities in all-cash transactions.

But the rule can be circumvented if buyers pay the entire purchase price using a bank wire transfer, take out even a small mortgage or choose to forgo title insurance. Some might

simply choose to delay a closing until the 181st day.

Stuart Saft, a Manhattan real-estate lawyer, said he is puzzled by the rule.

"I don't understand what you are trying to do," Mr. Saft said he told a Treasury official who consulted with him on the new order before it was issued.

The Treasury Department, long worried about the laundering of ill-gotten gains, said in a statement announcing the rule that it is instituting the temporary program to understand the risks inherent in "opaque" corporate structures used to buy and sell real estate. The current temporary program could be extended and expanded, officials said.

THE PROPERTY REPORT

- Malls Lose More Department Store Tenants
- Startups Crash Real-Estate Brokerage Market
- Investors Play It Safe With Saint-Gobain Facility Deal

"We are seeking to understand the risk that corrupt foreign officials, or transnational criminals, may be using premium U.S. real estate to secretly invest millions in dirty money," said Jennifer Shasky Calvery, the director of the Treasury's financial crimes enforcement network, in the statement.

Brokers and real-estate lawyers said wealthy individuals, from movie stars protecting their privacy to foreign businessmen worried about kidnapping threats, routinely use LLCs to shield their purchases from public disclosure.

Of more than 1,300 condos sold for more than $3 million in Manhattan last year, just under half were purchased in the name of an individual owner, a Wall Street Journal review of property records shows. About 40% used LLCs, and 11% used other corporate structures.

The Treasury Department was given the right to impose anti-money-laundering rules on the real-estate industry in the 2001 USA Patriot Act, but has repeatedly adopted

temporary exemptions in the face of opposition from the industry.

For nearly two decades, banks have faced stringent requirements to monitor customers and to file reports of suspicious activities with the government. Under draft due diligence requirements likely to be adopted later this year, banks will have to meet explicit criteria on identifying the beneficial owners of limited liability companies.

The new Treasury order, issued to title insurance companies, covers residential transactions valued at $3 million or more in Manhattan and $1 million or more in Miami-Dade County purchased by LLCs or other corporate structures. It applies only where there is no mortgage issued and at least some of the proceeds are paid in currency or bank checks, traveler's checks or money orders.

Title insurers are required to collect the names along with photocopies of driver's licenses, passports or other IDs of members of the companies who own or control more than 25%. If there is no mortgage, buyers could choose to forgo title insurance entirely, though real-estate lawyers said that would create added risk.

Buyers can legally avoid a filing by paying for wire transfers or taking out a small mortgage via the LLC, although banks and mortgage companies also are required to vet mortgage applicants and report suspicious activity.

Stephen Hudak, a spokesman for the financial crimes enforcement network, said the agency believes many transactions still take place through cashier's check. If it finds that buyers avoid or evade the reporting requirements, that would be useful information for the government, he said.

"If behavior changes that is interesting to law enforcement," he said.

Ying Genève DuBois, a real-estate lawyer in Fort Lauderdale, Fla., said many Chinese buyers are afraid of being monitored by any government and might be spooked by the new rules. A buyer looking at condos in Aventura in northern Miami Dade County might switch to similar condos in Hallandale Beach, across the border in Broward County, she said.

But many lawyers and brokers so far have reacted with a collective shrug. They say most transactions will be exempt from the rules. Buyers who use LLCs are more concerned

about keeping their names out of the newspapers than out of a nonpublic government database of 190 million records, several brokers said.

"It has not been an issue," said Oren Alexander, a broker with Douglas Elliman active in both Miami and New York, who has been involved with more than 50 transactions involving LLC buyers.

Mr. Saft, a partner at Holland & Knight in New York, said that given the high level of scrutiny of overseas cash transfers by banks, he told a high-level Treasury official that it would be better to allow criminals to buy American real estate.

"Right now this money is buried in Africa or Russia, he said. "If one of these dictators buys an apartment and puts down $60 million, you have an asset in the U.S. you can grab."

**Write to** Josh Barbanel at josh.barbanel@wsj.com

Copyright © 2020 Dow Jones & Company, Inc. All Rights Reserved

This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers visit https://www.djreprints.com.