1

2  D. Victoria Baranetsky (Cal. Bar No. 311892)
   THE CENTER FOR INVESTIGATIVE
3  REPORTING
   1400 65th St., Suite 200
4  Emeryville, CA 94608
   vbaranetsky@revealnews.org
5  Telephone: (510) 982-2890

6  Attorney for Plaintiffs

7

8

9              UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF CALIFORNIA
10               SAN FRANCISCO DIVISION

11
   THE CENTER FOR INVESTIGATIVE          )  Case No. 3:19-cv-8181-JCS
12 REPORTING and AARON GLANTZ,           )
                                         )  **OPPOSITION TO DEFENDANT'S**
13                          Plaintiffs,  )  **MOTION FOR SUMMARY JUDGMENT**
                                         )  **AND**
14      v.                               )
                                         )  **NOTICE OF CROSS MOTION AND**
15 UNITED STATES DEPARTMENT OF           )  **CROSS MOTION FOR SUMMARY**
   TREASURY,                             )  **JUDGMENT; MEMORANDUM OF**
16                                       )  **POINTS AND AUTHORITIES IN**
                           Defendant.    )  **SUPPORT OF CROSS MOTION FOR**
17                                       )  **SUMMARY JUDGMENT**
                                         )
18                                       )
                                         )  Date:  January 8, 2021
19                                       )  Time: 9:30 AM
                                         )  Place: Courtroom F, 15th Floor
20                                       )
                                         )
21                                       )
                                         )
22                                       )
                                         )
23                                       )
                                         )
24 _____

25

26

27

28

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................ 1

II.   STATEMENT OF FACTS ............................................................................................. 2

   A.   The Identity of Property Owners Is Historically Public Information.................................. 2

   B.   Beneficial Ownership is Public Information by Its Nature Because Disclosure is Necessary for the Marketplace to Function.................................................................................. 2

   C.   Business Entities Increasingly Obscure Ownership of Residential Property. ..................... 3

   D.   Public Agencies Increasingly Collect Beneficial Ownership Information........................... 4

   E.   Beneficial Ownership Records Contain Information of Intense Public Debate. .................. 4

   F.   FinCEN's Mission and Authority to Issue GTOs Under the BSA. ...................................... 5

   G.   CIR's FOIA Requests, Administrative Appeals, and Initiation of this Action.................... 5

III.    ARGUMENT ................................................................................................................ 6

   A.   The Freedom of Information Act and the Standard of Review. ........................................... 6

   B.   The Public Domain Doctrine Requires Disclosure Because the Names of Beneficial Owners Are Public Information....................................................................................................... 6

   C.   Treasury Must Disclose Intrinsically Public Information Under the Foreseeable Harm Standard. ....................................................................................................................... 8

   D.   FOIA Requires Disclosure Because the Information Can Be Reasonably Segregated.......... 9

   E.   The BSA Does Not Require Withholding Under Exemption 3......................................... 10

   F.   The Records May Not Be Withheld Under Exemption 7 Because Treasury Has Not Shown They Are Law Enforcement Records........................................................................... 13

   G.   Exemption 7(A) Is Inapplicable Because the Government Has Failed To Show Disclosure Would Interfere With Law Enforcement. ...................................................................... 14

   H.   Disclosure is Necessary Because the Government Has Improperly Withheld Public Information as Private Under Exemption 6 & 7(C)................................................................... 15

     1.   Exemption 6 does not apply because the withheld database and emails are not personnel or medical files or "similar records." ............................................................................. 16

     2.   Exemptions 6 and 7(C) do not apply because beneficial ownership is not intimate information, and regardless, public interest requires disclosure.......................................... 17

   I.   Exemption 7(E) Does Not Apply Because the Records Do Not Disclose Techniques........ 18

   J.   Treasury May Not Withhold Factual Material Under Exemption 5. ................................. 19

IV.    CONCLUSION ............................................................................................................ 20

-ii-

OPP. TO DEF'S MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT.
SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.

**TABLE OF AUTHORITIES**

**CASES**

*ACLU N. Cal. v. DOJ*, 880 F.3d 473 (9th Cir. 2018) ................................................................. 7, 19

*ACLU N. Cal. v. FBI*, No. 10-CV-03759-RS, 2015 WL 1346680 (N.D. Cal. Mar. 23, 2015) ........ 14

*ACLU v. CIA*, 710 F.3d 422 (D.C. Cir. 2013) ............................................................................ 7

*ACLU v. DOJ*, 655 F.3d 1 (D.C. Cir. 2011) ........................................................................ 7, 18

*ACLU v. FBI*, 881 F.3d 776 (2018) ...................................................................................... 13

*ACLU v. FBI*, No. C 12-03728 SI, 2013 WL 3346845 (N.D. Cal. July 1, 2013) ...................... 14, 15

*Afshar v. Dep't of State*, 702 F.2d 1125 (D.C. Cir. 1983) .......................................................... 7

*Aguirre v. S.E.C*, 551 F. Supp. 2d 33 (D.D.C. 2008) .................................................... 16, 17, 18

*Bloomer v. U.S. Dep't of Homeland Sec.*, 870 F. Supp. 2d 358 (D. Vt. 2012) .............................. 12

*Castaneda v. United States*, 757 F.2d 1010 (9th Cir. 1985) ...................................................... 18

*Citizens for Responsibility & Ethics in Wash. v. DOJ* , 658 F. Supp. 2d 217 (D.D.C. 2009) ..... 14, 15

*Citizens for Responsibility & Ethics in Wash. v. DOJ*, 854 F.3d 675 (D.C. Cir. 2017) ................... 7

*Cohen v. EPA*, 575 F. Supp. 425 (D.D.C. 1983) ................................................................... 18

*Cottone v. Reno*, 193 F.3d 550 (D.C. Cir. 1999) .................................................................... 7

*Ctr. for Investigative Reporting v. Dep't of Labor*, 424 F. Supp. 3d 771 (N.D. Cal. 2019) .......... 8, 9

*Ctr. for Pub. Integrity v. U.S. Dep't of Energy*, 287 F. Supp. 3d 50 (D.D.C. 2018) ........................ 7

*Davis v. DOJ*, 968 F.2d 1276 (D.C. Cir. 1992) ...................................................................... 7

*Dep't of Interior v. Klamath Water Users Prot. Ass'n*, 532 U.S. 1 (2001) .................................... 20

*Dep't of the Air Force v. Rose*, 425 U.S. 352 (1976) .................................................... 6, 11, 16, 17

*Dunaway v. Webster*, 519 F. Supp. 1059 (N.D. Cal. 1981) .................................................. 13, 19

*Ecological Rights Foundation v. FEMA*, No. 16-cv-05254-MEJ, 2017 WL 5972702 (N.D. Cal.,
     Nov. 30, 2017) ............................................................................................................ 9

*EFF v. ODNI*, 639 F.3d 876 (9th Cir. 2010) .................................................................. 16, 17, 18

*Hamdan v. DOJ*, 797 F.3d 759 (9th Cir. 2015) ........................................................... 6, 9, 10, 19

*Hayden v. NSA*, 608 F.2d 1381 (D.C. Cir. 1979) .............................................................. 6

*Henderson v. Vision*, No. 2:20-cv-12649, ECF No. 1 (E.D. Mich. Sept. 29, 2020) ........................ 8

*Johnson v. FBI*, 118 F. Supp. 3d 784 (E.D. Pa. 2015)........................................................... 7

*Judicial Watch of Florida, Inc. v. DOJ*, 102 F. Supp. 2d 6 (D.D.C. 2000) ..................................... 18

*Judicial Watch, Inc. v. DOJ*, 365 F.3d 1108 (D.C. Cir. 2004)....................................................... 17

*Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 375 F. Supp. 3d 93 (D.D.C. 2019) ...................... 9

*Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 598 F. Supp. 2d 93 (D.D.C. 2009).............. 16

*Kowack v. USFS.*, 766 F.3d 1130 (9ᵗʰ Cir. 2014) ............................................................ 20

*Lahr v. NTSB*, 569 F.3d 964 (9th Cir. 2009).............................................................. 6, 16

*Lane v. Dep't of the Interior*, 523 F.3d 1128 (9th Cir. 2008) ........................................................ 6

*Lardner v. DOJ*, No. Civ.A.03-0180 (JDB), 2005 WL 758267 (D.D.C. Mar. 31, 2005) .............. 18

*Lawyers' Comm. For Civ. Rights v. U.S. Dep't of Treasury*, No. 4:07cv02590, ECF No. 71 (N.D.

   Cal May 11, 2009) ............................................................................................ 15

*Lion Raisins v. U.S. Dep't of Agric.*, 354 F.3d 1072 (9th Cir. 2004) ............................................ 15

*Niagara Mohawk Power Corp. v. United States Dep't of Energy*, 169 F.3d 16 (D.C. Cir. 1999) ..... 7

*Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143 (9th Cir. 2008)........................................... 10

*People for the American Way Foundation v. NPS*, 503 F. Supp. 2d 284 (D.D.C. 2007)............... 18

*Pratt v. Webster*, 673 F.2d 408 (D.C. Cir. 1982)............................................................... 13

*Pub. Emps. for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n*, 740 F.3d

   195 (D.C. Cir. 2014) ........................................................................................ 13

*Raimondo v. FBI*, 3:13-cv-02295, ECF No. 90, at 10 (N.D. Cal. May 10, 2016).....................14, 15

*Reed v. NLRB*, 927 F.2d 1249 (D.C. Cir. 1991) ................................................................ 17

*Reporters Comm. for Freedom of the Press v. DOJ*,  489 U.S. 749 (1989) ................. 11, 13, 17, 18

*Reporters Comm. for Freedom of the Press v. DOJ*, 816 F.2d 730 (D.C. Cir. 1987) .................... 11

*Reporters Comm. for Freedom of the Press v. FBI*, CV 15-1392 (RJL), 2020 WL 1324397 (D.D.C.

   Mar. 20, 2020) ............................................................................................... 8

*Rosenberg v. U.S. Dep't of Def.*, 442 F. Supp. 3d 240 (2020) .................................................. 8, 9

*Senate of Puerto Rico v. DOJ*, 823 F.2d 574 (D.C. Cir. 1987) ...................................................... 12

*Sierra Club Inc. v. USFWS.*, 925 F.3d 1000 (9th Cir. 2019) .......................................................... 20

*Sims v. CIA*, 642 F.2d 562 (D.C. Cir. 1980).................................................................................. 17

*Tax Analysts v. IRS*, 294 F.3d 71 (D.C. Cir. 2002)....................................................................... 13

*Turner v. U.S. Dep't of the Treasury*, 2017 WL 1106030 (E.D. Cal. Mar. 23, 2017)...............11, 12

*U.S. Dep't of Defense v. FLRA*, 510 U.S. 487 (1994) ..............................................................14, 16

*U.S. Dep't of State v. Ray*, 502 U.S. 164 (1991) .......................................................................... 17

*U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595 (1982)........................................................ 16

*Watkins v. U.S. Bureau of Customs & Border Prot.*, 643 F.3d 1189 (9th Cir. 2011) ...................... 6

*Wiener v. FBI*, 943 F.2d 972 (9th Cir. 1991) ............................................................................... 14

*Willamette Industries, Inc. v. United States*, 689 F.2d 865 (1982)................................................. 9

*Wilner v. NSA*, 592 F.3d 60 (2d Cir. 2009) ................................................................................. 12

## STATUTES

31 U.S.C. § 310(b)(2)(c) ............................................................................................................ 13

31 U.S.C. § 5319..............................................................................................................5, 11, 12

31 U.S.C. §§ 5311 *et seq.* ...................................................................................................... 5, 10

5 U.S.C. § 552(a)(8)(A) ............................................................................................................... 1

5 U.S.C. § 552(b).................................................................................................................... 1, 9

5 U.S.C. § 552(b)(6) ............................................................................................................. 6, 15

5 U.S.C. § 552(b)(7)(C) ......................................................................................................... 6, 15

5 U.S.C. § 552(b)(7)(E) ............................................................................................................. 19

5 U.S.C. App. 4, §§ 101 *et seq.* ................................................................................................. 8

## OTHER AUTHORITIES

Aaron Glantz, *Homewreckers*, REVEAL (Oct. 19, 2019) https://bit.ly/3jtOhY3 ............................... 5

Ben Casselman & Connor Dougherty, *Want a House Like This? Prepare for a Bidding War with Investors*, N.Y. TIMES (June 20, 2019) https://nyti.ms/36umgMu ................................................ 4

Bureau of the Census, *2018 Rental Housing Finance Survey* (Sept. 1, 2020) https://bit.ly/3neI3O8 ............................................................................................................................... 3

Bureau of the Census, *Rental Housing Finance Survey (RHFS) 2018 National - Ownership and Management* (Sept. 1, 2020) https://bit.ly/34zpoE0 ........................................................ 3

Bureau of the Census, *Who Owns the Nation's Rental Properties?* (1996) ..................................... 3

Charles Szypszak, *Public Registries and Private Solutions: An Evolving American Real Estate Conveyance Regime*, 24 WHITTIER L. REV. 663 (2003) ............................................................. 2

Christopher L. Peterson, *Foreclosure, Subprime Mortgage Lending, and the Mortgage Electronic Registration System*, 78 U. CIN. L. REV. 1359 (2010) ..................................................... 3

*FFIEC BSA/AML Examination Manual* (May 5, 2018) https://bit.ly/2GxG32m ............................ 4

FinCEN, *FinCEN's Mandate from Congress*, https://bit.ly/2GIBu5H............................................... 5

FinCEN, *Mission*, https://bit.ly/3lp7wCQ...................................................................................... 5

John Swain, *Michael Cohen Case Sheds Light on Sean Hannity's Property Empire*, GUARDIAN (Apr. 23, 2018) https://bit.ly/3cQrQtI................................................................................... 3

*Johnson v. Exec. Office of U.S. Attorneys*, 310 F.3d 771 (D.C. Cir. 2002) .................................... 10

Law Library of Congress, *Disclosure of Beneficial Ownership in Selected Countries* (July 2017) https://bit.ly/30v7jFX...................................................................................................... 4

Lou Fancher, *Why Home Ownership Has Kept Declining*, E. BAY EXPRESS (Nov. 12, 2019) https://bit.ly/2HJQeBA.................................................................................................... 5

M. Mark Heekin, *Modernizing Mortgage Foreclosure Law: A Call for Transparency and an End to the Payment Rule*, 33 QUINNIPIAC L. REV. 165 (2014)................................................................. 2

Spencer Woodman, *A roundup of FinCEN Files reporting from North America*, ICIJ (Sept. 29, 2020) https://bit.ly/30wIIki ................................................................................... 9, 15

Stephanie Saul, *Real Estate Shell Companies Scheme to Defraud Owners Out of Their Homes*, N.Y. TIMES (Nov. 7, 2015) https://nyti.ms/2SnX7dU ............................................................. 3

U.S. GAO, *Company Formations: Minimal Ownership Information Is Collected and Available* (2006), https://bit.ly/2GAh9zF ..................................................................................... 4

**TREATISES**

14 POWELL ON REAL PROPERTY § 82.01[1][b] (Michael Allen Wolf ed., 2007) .............................. 2

Caryl A. Yzenbaard, RESIDENTIAL REAL ESTATE TRANSACTIONS § 5:7 (1991).............................. 2

Herbert T. Tiffany and Basil Jones, TIFFANY ON REAL PROPERTY § 1457 (1939)........................... 2

**REGULATIONS**

31 C.F.R.  § 1020.320(e)(2) ........................................................................................................ 5

D.C. Code § 29-102.01 ........................................................................................................ 4, 8

N.Y. Tax Law § 1409 (McKinney 2020)............................................................................... 4, 8

Phila. Code § 9-3900.............................................................................................................. 4, 8

**LEGISLATIVE MATERIALS**

120 CONG. REC. 17,033 (1974) ................................................................................................ 18

155 CONG. REC. S.3175 (2009) ................................................................................................ 11

156 CONG. REC. S.7886 (2010) ................................................................................................ 18

National Defense Authorization Act for Fiscal Year 2012, Pub. L. No. 112-81, 125 Stat 1298,

    1600–01, 1604 (2011)...................................................................................................... 11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on January 8, 2021, at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom F, located on the 15th floor of United States District Court for the Northern District of California, San Francisco Division, 450 Golden Gate Ave., 94102, before the Honorable Joseph Spero, the Plaintiffs The Center for Investigative Reporting and Aaron Glantz (collectively "Plaintiffs" or "CIR") will, and hereby do, oppose the motion filed by Defendant the Department of Treasury ("Treasury"), Financial Crimes Enforcement Network ("FinCEN") and cross move the Court for an order granting for summary judgment in Plaintiffs' favor.

Pursuant to Federal Rule of Civil Procedure 56, CIR respectfully asks that this Court issue an order requiring the government to release all records, including any necessary redactions, improperly withheld from the public under the Freedom of Information Act Exemptions 3, 5, 6, and 7, 5 U.S.C. § 552(b)(3), (5), (6), and (7). This opposition and cross motion is based on this notice of cross motion and motion, the memorandum of points and authorities in support of this opposition and cross motion, the Declarations of D. Victoria Baranetsky ("Baranetsky Decl."), Professor K-Sue Park ("Park Decl.") and Leilani Farha ("Farha Decl."), and attached exhibits, all papers and records on file with the Clerk or which may be submitted prior to or at the time of the hearing, and any further evidence which may be offered.

- viii -
Opp. to Def's Mot. Summ. J.; Not. of Cross Mot. and Cross Mot.
Summ. J.; Mem. in Supp. of Cross Mot. Summ. J.

**RELIEF SOUGHT BY PLAINTIFFS**

Plaintiffs seek an order dismissing Defendant's claims and granting Plaintiffs' motion.

**ISSUES TO BE DETERMINED**

Did Defendant improperly withhold records under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(b) exemptions where the information is public and segregable?

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

In this action, Plaintiffs seek the disclosure of government records – chiefly, a U.S. Department of Treasury spreadsheet – revealing the names, addresses, and other limited information pertaining to beneficial owners of limited liability companies ("LLCs") that own property in the U.S. Here, the Court should order at least partial disclosure of the records, which contain this information that is both actually and intrinsically public and which is segregable from any exempt information.

In recent years, a trend has emerged where individuals increasingly purchase residential real estate through shell companies, in an effort to obfuscate their identities.  However, beneficial ownership information remains public, as several major American cities and numerous countries around the globe require its disclosure.  *Id.* Under the well-established "public domain doctrine," which requires disclosure of information that is already publicly accessible, regardless of whether any FOIA exemptions apply, the records should be disclosed.

Because the information is also *intrinsically* public, disclosure is additionally required under the 2016 OPEN FOIA Amendment, because no "foreseeable harm" exists.  5 U.S.C. § 552(a)(8)(A). For more than 300 years, America's recording laws have mandated property ownership information be public to ensure the orderly transfer of property and to provide a secure commercial platform. Disclosure of such intrinsically public information creates no harm but conversely, a public benefit.

Even if the requested information were not already public, disclosure is necessary because the information is reasonably segregable and, in any event, the Government has failed to meet its burden of showing that Exemptions 3, 5, 6 and 7 apply in the first instance.  Accordingly, this Court should deny the Government's motion for summary judgment and grant CIR's cross motion.

-1 -

## II.  STATEMENT OF FACTS

### A.  The Identity of Property Owners Is Historically Public Information.

Ownership of land has historically been public information.  Public recording of land ownership has roots predating the nation's founding.  *See* M. Mark Heekin, *Modernizing Mortgage Foreclosure Law: A Call for Transparency and an End to the Payment Rule*, 33 QUINNIPIAC L. REV. 165, 193 (2014) (stating that for more than three centuries, land title records have been public).  Since the seventeenth century, land title records systems in England and in the American colonies made information about beneficial ownership publicly available.  *See* 14 POWELL ON REAL PROPERTY § 82.01[1][b] (Michael Allen Wolf ed., 2007) (as early as 1639 land was "accounted of no value until they be recorded.").  By the time of the American Revolution, mortgagees who failed to record their mortgages risked losing the ability to enforce their terms.  *See* Herbert T. Tiffany and Basil Jones, TIFFANY ON REAL PROPERTY § 1457 (1939).

The principle that individuals are supposed to be able to look up who owns property only became more firmly cemented in American property law as the nation developed.  (*See* Park Decl. ¶ 4 ("[T]the public registries . . . that American colonists developed in the seventeenth century grew into the first nation-wide, comprehensive, transparent property recording system in the world.").)  Eventually, every state established its own recording laws and "public recording system," providing the foundation to a functioning U.S. property market.  Charles Szypszak, *Public Registries and Private Solutions: An Evolving American Real Estate Conveyance Regime*, 24 WHITTIER L. REV. 663, 666 (2003) (noting "the regime relies on a public recording system"); Heekin, at 190  ("The cornerstone of America's legal tradition of transparency of landholding interests has been the establishment of a public recording act in each state, which protects all parties.").  The United States' transparent property system ultimately became the "global standard".  (*See* Park Decl. ¶ 12.)

### B.  Beneficial Ownership is Public Information by Its Nature Because Disclosure is Necessary for the Marketplace to Function.

Apart from this history, beneficial ownership information is, by its nature, public.  The public nature of this information flows from the economic need to guard the integrity of the American

-2 -

OPP. TO DEF'S MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT.
SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.

property system through transparency.  The public disclosure of property ownership serves multiple objectives.  Disclosure of names helps prevent and resolve disputes over property rights, facilitates the enforcement of property rights, and provides economic certainty in private land.  *See* Christopher L. Peterson, *Foreclosure, Subprime Mortgage Lending, and the Mortgage Electronic Registration System*, 78 U. CIN. L. REV. 1359, 1364-65 (2010).  Conversely, anonymity fosters corruption, abuse, and landlord negligence – which is why disclosure of ownership has been an American tradition for centuries.  (Park Decl. ¶ 3.)  These objectives are increasingly undermined by the proliferation of all-cash purchases by corporate vehicles, such as LLCs,[1] which conceal the identities of owners.

**C.    Business Entities Increasingly Obscure Ownership of Residential Property.**

There has been an exponential increase in residential property ownership by LLCs and other shell companies in recent decades.[2]  *See* Census Bureau, *2018 Rental Housing Finance Survey* (Sept. 1, 2020) https://bit.ly/3neI3O8.  This phenomenon occurs, because in many states, LLCs and other similar business entities "are not required to disclose their [beneficial] owners[3] to [state] regulators," and may be registered to lawyers or companies.  *John* Swain, *Michael Cohen Case Sheds Light on Sean Hannity's Property Empire*, GUARDIAN (Apr. 23, 2018) https://bit.ly/3cQrQtI.

By shielding the ownership of property, shell companies corrupt the marketplace by effectively withholding crucial economic information.  For instance, all-cash purchases by LLCs have been attributed to deed fraud.  *See* Stephanie Saul, *Real Estate Shell Companies Scheme to Defraud Owners Out of Their Homes*, N.Y. TIMES (Nov. 7, 2015) https://nyti.ms/2SnX7dU.  Fraudulent actors can then "hide behind inscrutable mazes of [LLCs]…post office boxes and fake

---

[1] LLCs are business entities that enjoy the benefit of pass-through taxation while limiting liability for members.  (Park Decl., ¶ 6).  The first domestic limited liability companies did not appear until 1977, and LLCs were not widely used until the late 1990s.  (Park Decl., ¶ 7).

[2] In 1991, individuals owned 92% of all rental properties. Census Bureau, *Who Owns the Nation's Rental Properties?*, 1 (1996).  Today, they own 71%, with business entities quintupling their share, from 3% to 16%.  *Compare id. to* Census Bureau, *Rental Housing Finance Survey (RHFS) 2018 National - Ownership and Management* (Sept. 1, 2020) https://bit.ly/34zpoE0.  With rental units, shell companies now own 18 out of 48 million or 40%.  *See* RHFS 2018.

[3] A "beneficial owner" is a member of the business entity who enjoys the benefits of ownership, even though the title to the property is in the name of the company.  (Park Decl. ¶ 6.)

addresses," causing serious harm to the market.  *Id.*  In 2017, Treasury stated that such transactions accounted for "one in four residential…purchases" nationwide.  FinCEN, FIN 2017-A003.

**D.      Public Agencies Increasingly Collect Beneficial Ownership Information.**

To combat this problem, local, state, and international governments have, in recent years, passed legislation requiring LLCs and other entities to make beneficial ownership public.  *See* Phila. Code § 9-3900 (requiring beneficial ownership disclosure); N.Y. Tax Law § 1409 (McKinney 2020) (same); D.C. Code § 29-102.01 (same); *see also* U.S. GAO, *Company Formations: Minimal Ownership Information Is Collected and Available* (2006), https://bit.ly/2GAh9zF (stating Alaska, Connecticut, Kansas, Maine, and New Hampshire require some reporting of ownership).  In these jurisdictions, which include some of the largest real estate markets in America, beneficial ownership is *actually* public.  Because these jurisdictions are major urban centers, LLCs registered in these locales are used to purchase properties elsewhere, making ownership outside these cities also identifiable.[4]  Similarly, outside of the United States, many countries affirmatively require this information be identified.  *See* Farha Decl. ¶¶ 11-14 (listing countries); Law Library of Congress, *Disclosure of Beneficial Ownership in Selected Countries* (July 2017) https://bit.ly/30v7jFX (listing twenty-nine countries).  Increasingly, international LLCs are buying U.S. property, further showing that this information is not only public in America but across the globe.

**E.      Beneficial Ownership Records Contain Information of Intense Public Debate.**

Because of the growing problem of using LLCs to obscure ownership, the records described in the Request are of intense public interest, as demonstrated by the significant media coverage.  *See, e.g.*, Ben Casselman & Connor Dougherty, *Want a House Like This? Prepare for a Bidding War with Investors*, N.Y. TIMES (June 20, 2019) https://nyti.ms/36umgMu; Lou Fancher, *Why Home*

---

[4] Additionally, while many states' do not proactively require disclosure of the beneficial owners, that information is often still *actually* public because forms often require identification of an "authorized person" or "registered agent", *FFIEC BSA/AML Examination Manual* (May 5, 2018) https://bit.ly/2GxG32m, and often a beneficial owner lists themselves or a traceable person.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Ownership Has Kept Declining*, E. BAY EXPRESS (Nov. 12, 2019) https://bit.ly/2HJQeBA; Aaron Glantz, *Homewreckers*, REVEAL (Oct. 19, 2019) https://bit.ly/3jtOhY3 (similar).

### F. FinCEN's Mission and Authority to Issue GTOs Under the BSA.

FinCEN, a bureau of the Department of the Treasury ("Treasury"), has a mission to combat financial abuses within the United States. FinCEN, *Mission*, https://bit.ly/3lp7wCQ (FinCEN's mission "is to safeguard the financial system"). In part, it fulfills that mission by "disseminat[ing] financial intelligence" to the public. FinCEN, *Strategic Plan*, https://bit.ly/3iFTmvl (stating FinCEN's duty is to disseminate intelligence to enhance the "integrity of financial systems"). Under the Bank Secrecy Act of 1970, 31 U.S.C. §§ 5311 *et seq.* ("BSA"), an anti-money laundering law, FinCEN also combats problems stemming from land recording opacity by collecting information from financial institutions. *See* FinCEN, FIN 2017-A003. In particular, it issues Geographic Targeting Orders ("GTOs"), specifically defined under the BSA, which require institutions to report certain transactions. FinCEN, *FinCEN's Mandate from Congress*, https://bit.ly/2GIBu5H.

### G. CIR's FOIA Requests, Administrative Appeals, and Initiation of this Action.

On July 17, 2019, Plaintiffs submitted a request ("the Request") to FinCEN for *any* agency records containing information about the "real human owners" of residential real estate purchased wholly with cash from 2016 to July 2019. (Dkt. No. 1-1 at 2-5.) Importantly, CIR specifically requested records *outside* the BSA's jurisdiction and specifically *did not* request GTOs, having already had a November 24, 2018 request for GTOs denied. (Baranetsky Decl., Ex. 1 at 1 (requesting Geographic Targeting Orders)). Upon advice from an agency official, CIR filed its July 2019 request for FinCEN records created outside of the BSA's jurisdiction. (*See* Baranetsky Decl., ¶ 5.) On July 24, 2019, Treasury denied the Request in full ("the Denial"). Treasury again provided a "*Glomar* response" and stated the BSA prohibited disclosure. (Dkt. No. 1-1 at 9-10) (citation omitted.)

On August 1, 2019, Plaintiffs submitted an administrative appeal letter ("the Appeal") to Treasury. (*Id.* at 12-16.) In the Appeal, Plaintiffs argued that the "requested records do not fall under the scope of the [BSA]" and CIR clarified "it does not seek records of GTO[s]…or any [investigatory

records]." (*Id.*)  Rather, "CIR is simply interested…real property owners of America's real estate" and that the "purpose of the Bank Secrecy Act" supported disclosure. (*Id.*)  CIR also objected to Exemption 3 and argued that Treasury failed to release segregable portions, among other arguments. *Id*.  On October 17, 2019, Treasury remanded the matter. (*Id.* at 20.)  After receiving no further correspondence, Plaintiffs initiated this action on December 16, 2019. (Dkt. No. 1.)

After CIR initiated this action, on January 31, 2020, FinCEN sent a response, revoking its *Glomar* response, (*See* Dkt. No. 14-1) and withheld materials pursuant to Exemption 3. (*Id.* (citation omitted).)  On February 7, 2020, FinCEN sent a second response, reiterating Exemptions 3 and 6. (Dkt. No. 14-2 (citing §§ 552(b)(3), (b)(6)).)  On February 27, 2020, FinCEN issued a final response "indicating 113,871 pages were being withheld in full." (Dkt. No. 29.)  Finally, on June 26, 2020, FinCEN released eleven pages in part. *Id*.  FinCEN now asserts the records are exempt under Exemptions 5, 7(A), 7(C), and 7(E). (*See id.* (citations omitted).)

## III. ARGUMENT

### A. The Freedom of Information Act and the Standard of Review.

FOIA's "basic purpose reflect[s] a general philosophy of full agency disclosure unless information is exempt[] under clearly delineated statutory language." *Dep't of Air Force v. Rose*, 425 U.S. 352, 360-61 (1976) (citations and quotations omitted).  The agency invoking an exemption "bears the burden of demonstrating that the exemption properly applies." *Lahr v. NTSB*, 569 F.3d 964, 973 (9th Cir. 2009).  Exemptions are interpreted narrowly. *Id*.  While the agency may meet its burden with declarations providing factual specificity, *Lane v. Dep't of the Interior*, 523 F.3d 1128, 1135-36 (9th Cir. 2008), conclusory and generalized allegations are insufficient. *See Watkins v. CBP.*, 643 F.3d 1189, 1195 (9th Cir. 2011).  While a court should respects agency "expertise," *Hayden v. NSA*, 608 F.2d 1381, 1388 (D.C. Cir. 1979), it reviews an agency's decision *de novo*.

### B. The Public Domain Doctrine Requires Disclosure Because the Names of Beneficial Owners Are Public Information.

An agency's justification for invoking an exemption must be "logical" and "plausible." *Hamdan v. DOJ*, 797 F.3d 759, 774 (9th Cir. 2015).  A claim that defies common sense cannot be

-6 -

OPP. TO DEF'S MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT.
SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.

"logical." *ACLU v. CIA*, 710 F.3d 422, 431 (D.C. Cir. 2013); *id.* ("There comes a point where . . . court[s] should not be ignorant as judges of what [they] know."). Applying tools of logic, courts have concluded that "'an exemption can serve no purpose once information . . . becomes public.'" *See, e.g.*, *ACLU N. Cal. v. DOJ*, 880 F.3d 473, 491 (9th Cir. 2018) (quoting *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999)). Under the "public domain doctrine," material that is "ordinarily exempt" from disclosure may not be withheld if already public. *Id.* In such cases, the burden is on the requester to show that the information is public, and then shifts to the government to "rebut the plaintiff's proof." *Cottone*, 193 F.3d at 556.

Applying this test, multiple courts have found publicity spoils the claims of various exemptions, including Exemptions 3, 4, 5, 6 and 7, as alleged here, and even claims of national security. *See, e.g.*, *ACLU N. Cal.*, 880 F.3d at 491 (Exemption 5); *Citizens for Responsibility & Ethics in Wash. v. DOJ*, 854 F.3d 675, 683 (D.C. Cir. 2017) (6 & 7(C) concerning publicly identified individuals); *ACLU v. DOJ*, 655 F.3d 1 (D.C. Cir. 2011) (6 and 7(C)); *Cottone*, 193 F.3d at 554 (3); *Niagara Mohawk Power Corp. v. United States Dep't of Energy*, 169 F.3d 16, 19 (D.C. Cir. 1999) (4); *Davis v. DOJ*, 968 F.2d 1276, 1279-80 (D.C. Cir. 1992) (3, 7(C), and 7(D)); *Afshar v. Dep't of State*, 702 F.2d 1125, 1130-34 (D.C. Cir. 1983) (1 and 3).

In those and other cases, courts applying the public domain doctrine have disclosed more sensitive records than at issue here. *Cottone* is illustrative: There, the withheld records, which included wiretapped conversations procured by undercover agents in connection to a mafia investigation, "los[t] their protective cloak," making Exemptions 3 and 7 inapplicable. 193 F.3d at 552-57; *see also Ctr. for Pub. Integrity v. U.S. Dep't of Energy*, 287 F. Supp. 3d 50, 56, 63-69 (D.D.C. 2018) (ordering production of a memo involving investigations of a nuclear site); *Johnson v. FBI*, 118 F. Supp. 3d 784, 789, 795 (E.D. Pa. 2015) (ordering FBI to release an investigative file). Just recently, this Circuit determined that technical information about DOJ's electronic surveillance tracking criminals was subject to disclosure. *See ACLU N. Cal.*, 880 F.3d at 485-91.

The public domain doctrine applies here, as the names of beneficial owners are public information. In the United States alone, the Cities of Philadelphia, New York and Washington, D.C.,

require disclosure of beneficial ownership information of entities. *See* Phila. Code § 9-3900; N.Y. Tax Law § 1409 (McKinney 2020); D.C. Code § 29-102.01. Internationally, the United Kingdom, Ireland, and Ukraine each require public disclosure of beneficial ownership. (*See* Park Decl., ¶ 10; *see generally* Farha Decl.) Any LLCs from these jurisdictions that have purchased property in the United States have necessarily disclosed their beneficial ownership, rendering much of the requested FinCEN records public. Other U.S. laws also mandate this type of disclosure. Ethics in Government Act of 1978, 5 U.S.C. App. 4, §§ 101 *et seq*. (requiring high-level federal officials to file reports, disclosing property ownership, regardless of whether they are held through a business entity).[5] FinCEN's release of its comprehensive compilation would only disclose already public information.[6]

### C.   Treasury Must Disclose Intrinsically Public Information Under the Foreseeable Harm Standard.

In 2016, the OPEN FOIA Amendment added heightened requirements for withholding under FOIA, called the "foreseeable harm" standard. 5 U.S.C. § 552(a)(8)(A). This standard requires 1) an agency to allege that a foreseeable harm will result from disclosure, and 2) that the harm will result to an interest the relevant exemption seeks to protect. *Reporters Comm. for Freedom of the Press v. FBI*, 15-cv-1392-RJL, 2020 WL 1324397, at *8 (D.D.C. Mar. 20, 2020). The agency must "connect the harms in a meaningful way to the information withheld." *Rosenberg v. U.S. Dep't of Def.*, 442 F. Supp. 3d 240, 259 (2020). Even if some exemptions apply in this case, Treasury has failed to make a proper showing that the independent hurdle of "foreseeable harm" has been met. *See Ctr. for Investigative Reporting v. Dep't of Labor*, 424 F. Supp. 3d 771, 780 (N.D. Cal. 2019) ("[E]ven if information falls within the scope of a discretionary exemption, it cannot be withheld…

---

[5] Although information regarding beneficial owners is actually public, the records are somewhat difficult to aggregate. Still, many journalists have written stories revealing beneficial owners of LLCs, further showing that the information is *actually* public. (*See* Baranetsky Decl., Exs. 3-14 (twelve articles identifying beneficial owners of LLCs).) Similarly, ACLU, NAACP, & LDF identified beneficial owners in a complaint. *See* Compl., ¶16, *Henderson v. Vision*, No. 2:20-cv-12649, ECF 1 (E.D. Mich. Sept. 29, 2020); (Baranetsky Decl., Ex. 14).
[6] Regardless, should the Court find that only a subset of the requested information is in the public domain (for those business entities established jurisdictions requiring disclosure of beneficial owners), the FOIA Exemptions should not apply to this portion of CIR's request.

unless the agency also shows that disclosure will harm the interest protected by that exemption."); *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 375 F. Supp. 3d 93, 98 (D.D.C. 2019) (similar).

This Court has previously decided that such failures are fatal to certain Exemption claims. For instance, this Court rejected an Exemption 5 claim for failure to satisfy the foreseeable harm standard in *Ecological Rights Foundation v. FEMA*, No. 16-cv-05254-MEJ, 2017 WL 5972702 (N.D. Cal., Nov. 30, 2017).  Specifically, the Court stated that FEMA failed to "provide any justification for how the agency would be harmed by disclosure as required by the FOIA Improvement Act of 2016 . . . Absent a showing of foreseeable harm . . . the documents must be disclosed."  *Id.*; *see also Rosenberg*, 442 F. Supp. 3d at 263 (similarly denying Exemption 5 claim); *Judicial Watch, Inc.*, 375 F. Supp. 3d at 98 (same).

Here, FinCEN is unable to show that any harms will foreseeably result from disclosure of the names of beneficial owners, as beneficial ownership information is inherently open and only creates public benefit.  *See supra* Section II.F.  *See Ctr. for Investigative Reporting,* 424 F. Supp. 3d at 780 (finding no foreseeable harm even where information was *mostly* public).  Indeed, much more sensitive FinCEN records have recently been published with no negative consequences.  *See* Spencer Woodman, *A roundup of FinCEN Files reporting from North America*, ICIJ (Sept. 29, 2020) https://bit.ly/30wIIki.

### D.    FOIA Requires Disclosure Because the Information Can Be Reasonably Segregated.

FOIA states that any "reasonably segregable portion of a record shall be provided to any person."  5 U.S.C. § 552(b).  Thus, agencies have a "duty to segregate" and provide releasable information through redaction.  *Id.*  Under FOIA, agencies cannot withhold disclosable information merely because the record also contains exempt information.  *Hamdan*, 797 F.3d at 779 (discussing FOIA's segregability requirement); *see also Willamette Industries, Inc. v. United States*, 689 F.2d 865, 867 (1982) ("the agency cannot justify withholding an entire document simply by showing that it contains some exempt material.").  "The burden is on the agency to establish that all reasonably segregable portions of a document have been segregated and disclosed."  *Pac. Fisheries, Inc. v.*

-9 -

OPP. TO DEF'S MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT.
SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.

*United States*, 539 F.3d 1143, 1148 (9th Cir. 2008).  It is reversible error for the district court "to simply approve the withholding of an entire document without entering a finding on segregability." *Hamdan*, 797 F.3d at 779 (citation omitted).

Regardless of whether any exemption applies, the requested information must be released because it is segregable.  Treasury provides no explanation for why the requested information (including simple names and addresses) cannot be disclosed.  The names and addresses are likely in a wholly separate spreadsheet column, and as such, redacted records would not reveal any determinations from FinCEN regarding the status of any investigations.  The Government has also failed to carry its burden of explaining altogether – let alone with specificity – *why* and *how* this information is so inextricably intertwined.  *See Johnson v. Exec. Office of U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002) ("the agency must provide a 'detailed justification' for its non-segregability").  Rather than offer any meaningful detail, Treasury's otherwise voluminous declaration flatly states that, with respect to the 42,915 pages "withheld in their entirety, FinCEN determined that no additional meaningful, non-exempt information can reasonably be segregated and released." (*See* Mosier Decl. ¶ 47; Gov. Br. at 20.)  Such cursory language fails to meet the burden set out in *Johnson*, the government's own standard.

**E.      The BSA Does Not Require Withholding Under Exemption 3.**

The records are improperly withheld by Treasury under the Bank Secrecy Act, 31 U.S.C. §§ 5311 *et seq*., because FOIA Exemption 3 does not apply.  Exemption 3 allows a responding agency to withhold information "*specifically exempted* from disclosure by statute." 5 U.S.C. § 552(b)(3) (emphasis added).  If the material is specifically exempt, the Court considers if the "statute (A) (i) requires that the matters be withheld from the public in such a manner as to leave *no discretion* on the issue; or (ii) establishes *particular criteria* for withholding or refers to *particular types of matters* to be withheld; and (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, *specifically cites* to this paragraph." *Id.* (emphases added).  In applying Exemption 3, "the court must be able to determine from the defendant's declarations whether there were reasonably

segregable portions of documents subject to Exemption 3 that were nonetheless releasable." *Turner v. U.S. Dep't of the Treasury*, 2017 WL 1106030, at *7 (E.D. Cal. Mar. 23, 2017).

Here, the records are improperly withheld by under the BSA for several reasons.  First, the text of the BSA does not "specifically cite" to Exemption 3 or the OPEN FOIA Act, as required by statute.  In 2011, the BSA was, admittedly amended to provide that covered reports "may not be disclosed under any …'freedom of information' [act]," 31 U.S.C. § 5319, however, in making this 2011 amendment, Congress failed to "specifically cite" to Exemption 3 or the OPEN FOIA Act – despite having the opportunity – as required by the OPEN FOIA Act of 2009.  Thus, according to plain statutory interpretation, the BSA is not a withholding statute.[7]  Treasury leapfrogs over this failure by incorrectly suggesting that the OPEN FOIA Act only requires "FOIA" to be cited, Gov. Br. at 28 n. 4,[8] rather than the specific FOIA Exemption.[9]

Even if the Court determines that the BSA is a withholding statute, Exemption 3 does not apply because the Bank Secrecy Act does not "specifically exempt" the records at issue here.  This failure is fatal.  While a statute may permit federal agencies to withhold records that fall within its ambit, such an exemption must be construed *narrowly*.  *Rose*, 425 U.S. at 361.  "Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of

---

[7] While this requirement may seem unnecessarily exacting, it is not without reason.  OPEN FOIA's co-sponsor Senator Patrick Leahy stated that "(b)(3) statutory exemptions should be clear and unambiguous…."  155 CONG. REC. S3175-76 (2009).  The Act's express purpose was to stop "exemption creep" by making sure that exemptions are clear and explicit. *Id*. As a guard against such "exemption creep," the OPEN FOIA Act requires exemptions to cite specifically to FOIA Exemption 3.  *See id*.  Congress has taken this requirement seriously in other circumstances.  For instance, just months after the BSA was amended, Congress enacted the National Defense Authorization Act for Fiscal Year 2012, Pub. L. No. 112-81, 125 Stat 1298, 1600–01, 1604 (2011), which fulfilled the OPEN FOIA Act's requirement by correctly including a specific citation to Exemption 3.  Thus, by its plain language and in contrast to other legislation, the BSA is not an Exemption 3 statute.  *Reporters Comm. for Freedom of the Press v. DOJ*, 816 F.2d 730, 735 (D.C. Cir. 1987) (a statute's actual words determine Exemption 3 applicability), *rev'd on other grounds by* 489 U.S. 749 (1989).
[8] Treasury asserts that the OPEN FOIA Act requires a statute to "specifically cite to FOIA," but the OPEN FOIA Act in fact states that a statute must "specifically cite[] to this paragraph," which the BSA does not do.  *See* 31 U.S.C. 5319.
[9] The Government relies on *Turner*, however, that case cited caselaw that preceded the OPEN FOIA Act of 2009.  Plaintiffs were unable to locate caselaw that supported the Treasury's position and that squarely addressed the BSA's lack of language concerning the OPEN FOIA Act.

specific documents; the sole issue [is] the inclusion of the withheld material within the statute[]." *Bloomer v. U.S. Dep't of Homeland Sec.*, 870 F. Supp. 2d 358, 365 (D. Vt. 2012) (citation omitted).

Here, Treasury tries to stretch the BSA's reach by stating that the records are properly withheld because they are "*in part* derived or extracted" from GTOs, which the BSA specifically exempts. Gov. Br. at 28. However, Plaintiffs ask not for GTOs but for "spreadsheets, emails, and memorandum," which the BSA does *not* enumerate. Courts have refused to draw such expansive "veil[s] of secrecy" over all records connected to a statute. *Senate of Puerto Rico v. DOJ*, 823 F.2d 574, 582 (D.C. Cir. 1987). As Treasury essentially admits, none of these "spreadsheets, memoranda, and email" are expressly "exempt from disclosure under § 552." Gov. Br. at 29. And while the Government relies on the fact that "GTO Reports are authorized within Subchapter II, and therefore are a type of BSA Report within the scope of 31 U.S.C. § 5319," *id.*, Treasury provides no similar citation for the withheld records. Accordingly, Exemption 3 simply does not apply.[10]

Moreover, to the extent the Court is persuaded by the Government's argument that the records are "specifically exempt" because they are "*in part* derived or extracted from BSA Reports," Gov. Br. at 28 (emphasis added), this argument also fails for several reasons. First, it is logically incorrect. To claim that records "derived *in part*" are the same as those "specifically exempt" is not true at face value. Clearly records such as GTO reports, which are specific forms, differ from informal emails and spreadsheets. *Cf. Bloomer*, 870 F. Supp.2d at 365 ("within the statute's coverage").

Second, the Government's interpretation would impermissibly grant Treasury "discretion on the issue" by allowing the agency to define what is "derived from" or "included" in the BSA and what is not, in contravention of the requirements of Exemption 3. 5 U.S.C. § 552(b)(3)(A). Similarly, the BSA establishes no "particular criteria for withholding" what information is derived from and what is not, which would exacerbate this problem. *Id.* Under Treasury's interpretation it could expand its reach under the BSA to all records. *Cf. Turner*, 2017 WL 1106030, at *7 (stating there are "BSA" and "non-BSA" records).

---

[10] Congress could have avoided this problem if it exempted "any records containing any GTO information" or "names of beneficial owners" but the BSA contains no such language.

1

2

3

4

5

Finally, while Treasury argues that withholding is required by the BSA, disclosure would in fact advance the purpose of the statute.  *See Reporters Comm.*, 489 U.S. at 765 (considering congressional intent when determining Exemption 3).  The BSA's purpose includes combatting money laundering, 31 U.S.C. § 310(b)(2)(c), and disclosure of beneficial ownership is consistent with that purpose.  (*See* Park Decl., ¶ 11; Farha Decl. ¶ 16) (disclosure disincentives criminal acts).

6

7

**F.      The Records May Not Be Withheld Under Exemption 7 Because Treasury Has Not Shown They Are Law Enforcement Records.**

8

9

10

11

12

13

14

15

16

17

18

19

20

To assert Exemption 7, the Government must, as a threshold issue, show that the records were "compiled for" criminal or civil "law enforcement purposes." *Tax Analysts v. IRS*, 294 F.3d 71, 76 (D.C. Cir. 2002).  "[A]n agency with a clear law enforcement purpose . . . need only be held to a minimal showing," *Dunaway v. Webster*, 519 F. Supp. 1059, 1076 (N.D. Cal. 1981), but an agency with a mixed purpose must show more, *see Pub. Emps. for Envtl. Responsibility (PEER) v. U.S. Section, Int'l Boundary & Water Comm'n*, 740 F.3d 195, 203 (D.C. Cir. 2014) ("[L]aw enforcement entails more than just investigating [] individuals").  The Ninth Circuit employs a two-part "rational nexus test" that interrogates if the investigatory activity relates "to the enforcement of federal laws." *ACLU v. FBI*, 881 F.3d 776, 780 (2018).  To satisfy this test, the agency must identify "a *particular individual* or a *particular incident*" as the object of its investigation and the connection to "*violation of federal law*."  *Pratt v. Webster*, 673 F.2d 408, 420 (D.C. Cir. 1982) (emphases added).  Law enforcement does not include investigation of past criminal activity, *PEER*, 740 F.3d at 203, nor does it include "mere[]" "general monitoring of private individuals[]," *Pratt*, 673 F.2d at 420.

21

22

23

24

25

26

27

Treasury, a mixed-purpose agency, effectively concedes that the records here *do not* qualify as law enforcement records but rather amount to "[i]nformation compiled in furtherance of FinCEN's general mission" and general monitoring.  (Mosier Decl. ¶ 68.)  But as courts have stated, Exemption 7 only covers records that concern "a particular individual or a particular incident" and that go beyond the "monitoring[.]" *Pratt*, 673 F.2d at 420.  Conflating matters, Treasury invokes FinCEN's "authority to issue [GTOs]" for law enforcement purposes, Gov. Br. at 3, but the records at issue here are, once again, *not* GTOs.  Informal emails and spreadsheets are a far cry from official orders.

28

-13 -

OPP. TO DEF'S MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT.
SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.

Treasury states, in its own words, "[t]hese documents," which are not GTOs, "do not reflect that the persons have been charged—much less convicted—[or] broken any law." (Mosier Decl. ¶ 82.)[11]

Additionally, FinCEN fails to show a rational nexus to law enforcement exists because it does not cite to specific crimes or statutes that have been violated, but rather makes sweeping statements about ostensible money laundering. Gov. Br. at 11-13. This Circuit has held that such broad statements are not enough for withholding under Exemption 7, even when made by pure law enforcement agencies. *See Wiener v. FBI*, 943 F.2d 972, 985 (9th Cir. 1991) (FBI citations to the "Civil Obedience Act and the Anti-Riot Act" fails because both are very broad criminal statutes"); *see also ACLU N. Cal. v. FBI*, No. 10-CV-03759-RS, 2015 WL 1346680, at *4 (N.D. Cal. Mar. 23, 2015) (same); *ACLU v. FBI*, No. C 12-03728 SI, 2013 WL 3346845, at *6 (N.D. Cal. July 1, 2013) (similar); *Raimondo v. FBI*, 3:13-cv-02295, ECF No. 90, at 10 (N.D. Cal. May 10, 2016) (deeming references to "violent criminal threat, domestic terrorism investigations" insufficient). This Court should similarly conclude Treasury has failed to satisfy the threshold requirement of Exemption 7.[12]

### G.   Exemption 7(A) Is Inapplicable Because the Government Has Failed To Show Disclosure Would Interfere With Law Enforcement.

Assuming *arguendo* that the records are related to law enforcement, the Government must still prove that disclosure of the information could reasonably be expected to interfere with enforcement proceedings in order to claim Exemption 7(A). It has not done so.

First, Exemption 7(A) does not apply to putative or hypothetical proceedings. In *Citizens for Responsibility & Ethics in Wash. v. DOJ*, the agency conceded, as it has here, that there were no pending enforcement proceedings or ongoing investigations that would lead to such proceedings, but nonetheless argued that such proceedings were "reasonably anticipated." 658 F. Supp. 2d 217, 225, 228-29 (D.D.C. 2009). The court found this explanation to be insufficient, holding that the DOJ had not meet its burden under Exemption 7(A), as it failed to "describe with any reasonable degree of

---

[11] CIR does not seek GTOs, the 42,915 non-GTO records are at issue. (*See* Mosier Decl. ¶¶ 5, 47).
[12] CIR also notes that a core purpose of FOIA is to enable the understanding of how agencies oversee the spending of public tax dollars and enforce laws and regulations, *see U.S. Dep't of Defense v. FLRA*, 510 U.S. 487, 495 (1994), which is what disclosure here would do.

-14-

particularity . . . the hypothetical proceedings, the parties involved, when such proceedings might occur, or how the information withheld here might be used by these hypothetical parties to interfere with these hypothetical proceedings." *Id. at* 226.

Here, FinCEN has equally failed to carry its burden, as it has only "confirmed" that "portions of these documents" involve "*potential* targets of grand jury investigation" and "the subject …is *under consideration* for *possible* enforcement." (Mosier Decl. ¶ 74)  To the extent that FinCEN asserts that the requested records regard "persons who are under active investigation," *id.*, FinCEN still provides no supporting details, nor any specific proceeding.  *Cf. Lawyers' Comm. For Civ. Rights v. U.S. Dep't of Treasury*, No. 4:07cv02590, ECF No. 71, at 13 (N.D. Cal. May 11, 2009) (Exemption 7A didn't apply where Treasury "provided [no] details regarding the proceedings").

Second, where Exemption 7(A) is claimed for records concerning pending enforcement actions, an agency must still show that disclosure interferes with law enforcement proceedings. FinCEN has not done so.  It merely states, "[r]eleasing this information . . . would frustrate sensitive and complex law enforcement operations[.]"  (Mosier Decl. ¶ 74.)  Such conclusory remarks do not explain "*how* releasing *each* of the withheld documents" let alone documents containing limited information would cause interference.  *Lion Raisins v. U.S. Dep't of Agric.*, 354 F.3d 1072, 1084 (9th Cir. 2004) (emphases added).   As in *ACLU v. FBI*, FinCEN's conclusory statement is insufficient to invoke Exemption 7(A), as this court "cannot make an assessment…without any basis other than the [Treasury's] bald assertion."  2013 WL 3346845, at *7; *see also Raimondo*, ECF No. 90, at 1 (stating assertions must be specific).[13]

### H.   Disclosure is Necessary Because the Government Has Improperly Withheld Public Information as Private Under Exemption 6 & 7(C).

Exemption 6 and Exemption 7(C) both exempt the release of records which would constitute invade personal privacy.  §§ 552(b)(6), (b)(7)(C).  Exemption 6 covers "personnel and medical files

---

[13] Indeed, where the requested information is so limited, it is unclear how disclosure could possibly create an interference especially where BSA records (known as SARs), containing confidential information, were recently published without causing any obvious interference.  *See* Spencer Woodman, *A roundup of FinCEN Files reporting from North America*, ICIJ (Sept. 29, 2020) https://bit.ly/30wIIki.

and similar files," where disclosure "would constitute a clearly unwarranted invasion of personal privacy."  Exemption 7(C) covers "records or information compiled for law enforcement."[14]  In considering whether Exemption 6 applies to a particular request for information, a court must consider, first, whether the information is contained in a personnel, medical, or "similar" file, and, second, "whether release of the information would constitute a clearly unwarranted invasion of the person's privacy."  *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982).  In conducting the second inquiry, which applies to Exemption 6 and 7(C), courts "balance the individual's privacy interest against …FOIA's central purpose of…disclosure."  *FLRA*, 510 U.S. 487, 491 (1994); *see also Lahr*, 569 F.3d at 973 (balancing privacy against public interest in government openness").

### 1. Exemption 6 does not apply because the withheld database and emails are not personnel or medical files or "similar records."

As to the first inquiry, the Government has not and, indeed, cannot in good faith meet its burden to show that the withheld records are similar to personnel or medical files.  Courts usually find records are "similar" only if they contain "personal data ordinarily found in a personnel file, such as birthplace, parents' names, past residences, school records, examination results" or even more intrusive medical information.  *Rose*, 425 U.S. at 377.  A record that simply reveals names and addresses connected to a business entity should not qualify as a "similar record."[15]

In *EFF v. ODNI*, plaintiffs pursued emails containing "names of the telecommunications carriers *and their agents.*"  639 F.3d 876, 885 (9th Cir. 2010).  While the Ninth Circuit did not reach the issue, it cast doubt on whether the records were "similar files."  *Id.* at 886 (stating "this may be a

---

[14] When Congress enacted Exemption 7(C) as part of the 1974 amendments to the FOIA, it purposefully adopted the "personal privacy" language of Exemption 6 to ensure congruence between the protections afforded by both exemptions.  For that reason, as one court has stated, "[t]he privacy inquiries under Exemptions 6 and 7(C) are 'essentially the same.'" *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 598 F. Supp. 2d 93, 96 n.1 (D.D.C. 2009).

[15] Exemption 7(C), discussed below, has not been construed to treat the names of corporate agents as intrinsically personal.  *See Aguirre v. S.E.C.*, 551 F. Supp. 2d 33, 57 (D.D.C. 2008) (citing cases explaining that the names and even the personal financial information of corporate actors are not personal, as compared to "social security numbers, telephone numbers, addresses, birth dates, and other personal information[,]" "incidental medical information[,]" "personal expenses, credit card charges, mortgage payments and credit history," which were properly withheld).

closer question than the government describes" but assuming "without deciding" that they were). Further, the Supreme Court has emphasized that even where a "personnel file" is at issue, an agency cannot apply a blanket exemption to withhold *all* information…therein." *Rose*, 425 U.S. at 371.

Here, documents, including a spreadsheet containing names and addresses of LLC beneficial owners, would not reveal personal information of the kind contained in personnel or medical files. Accordingly, the logic of *EFF v. ODNI*, which involved a similar list of company agents, controls.

> ### 2. Exemptions 6 and 7(C) do not apply because beneficial ownership is not intimate information, and regardless, public interest requires disclosure.

In the event that the Court concludes that the records are "similar files," it should nonetheless determine that the scales clearly weigh in favor of disclosure, because there are no privacy interests in beneficial ownership information and because any *de minimis* concerns are outweighed by the immense public interest in disclosure.

Exemption 6 and, logically, Exemption 7(C) only "protect intimate details of personal and family life, not *business judgments and relationships*." *Sims v. CIA*, 642 F.2d 562, 575 (D.C. Cir. 1980) (emphasis added) (discussing Exemption 6). The Supreme Court has stated that the "disclosure of a list of names and other identifying information" is not "inherently" private. *U.S. Dep't of State v. Ray*, 502 U.S. 164, 176 n.12 (1991). Rarely does revealing a name disclose "sensitive personal information." *See Judicial Watch, Inc. v. DOJ*, 365 F.3d 1108, 1126 (D.C. Cir. 2004); *Reed v. NLRB*, 927 F.2d 1249, 1251 (D.C. Cir. 1991); *Aguirre*, 551 F. Supp. 2d at 57 (same).

Moreover, names, addresses and other facts do not amount to personal facts when in the context of a business relationship. *Cf. Reporters Comm.*, 489 U.S. at 749-50 (stating the Exemption applies to "personal facts") (citation omitted). For example, one court held that a list of agricultural subsidy recipients revealing "names, business addresses and amounts of subsidy" impacted no more than their "business capacities." *Wash. Post Co. v U.S. Dep't of Agric.*, 943 F. Supp. 31, 35-36 (D.D.C. 1996); *see also Sims*, 642 F.2d at 575 (similar). Even where privacy interests are extant, courts have found that a countervailing public interest can outweigh privacy interest. *EFF v. ODNI*, 595 F.3d at 959 (stating "public interest" "weigh[ed] in favor of disclosure" of private information);

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*see also Aguirre*, 551 F. Supp. at 54-58 (similar).  As the Ninth Circuit has stated, the interest in disclosure is especially paramount where it could unearth *possible* corruption or undue influence.  *EFF*, 639 F.3d at 886 (records showing undue influence weighed in favor of disclosure); *see also People for the American Way Foundation v. NPS*, 503 F. Supp. 2d 284, 305 (D.D.C. 2007) (similar); *Lardner v. DOJ*, No. Civ.A.03-0180 (JDB), 2005 WL 758267, at *18 (D.D.C. Mar. 31, 2005) (similar); *Judicial Watch of Florida, Inc. v. DOJ*, 102 F. Supp. 2d 6, 18 (D.D.C. 2000) (similar).

Here, the scales clearly weigh in favor of disclosure.  There is no privacy interest in the names or addresses of beneficial owners of LLCs, as this information is in the context of individuals' "business capacities."  *Wash. Post Co.*, 943 F. Supp. at 35-36; *see also* Park Decl., ¶ 12. Moreover, any privacy interest is clearly outweighed by the substantial public interest in disclosure here, *see supra* Section II.G, as knowledge of beneficial ownership benefits our democracy ensuring our governors are kept accountable, *see Reporters Comm.*, 489 U.S. at 773 (explaining "[o]fficial information that sheds light on an agency's performance" merits disclosure).

Even to the extent Exemption (7)(C) has a simpler standard, Treasury has failed to meet that lower threshold.[16]  Caselaw shows,[17] agencies routinely release even more sensitive records.  *See Aguirre*, 552 F. Supp. 3d at 47 (concerning unlawful trading practices); *Castaneda v. United States*, 757 F.2d 1010, 1012 (9th Cir. 1985) (undercover investigation files); *see also Cohen v. EPA*, 575 F. Supp. 425, 430 (D.D.C. 1983) ("individuals are identified" in "public roles as users of hazardous waste sites"); *ACLU*, 655 F.3d at 12 ("prosecutions [and] warrantless cell phone tracking").

## I.      Exemption 7(E) Does Not Apply Because the Records Do Not Disclose Techniques.

Exemption 7(E) protects information that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement

---

[16] While Exemption 6 & 7(C) are essentially the same, 6 protects a "clearly unwarranted" invasion of privacy, while 7(C) requires disclosure "could reasonably" invade privacy.

[17] Legislative history also supports this: Senator Hart, who introduced 7(C) explained, "Our concern is that . . . [Exemption 7] will deny public access to [corporate] information [] previously available." 120 CONG. REC. 17,033 (1974).  Senator Leahy reiterated protecting corporations and agents "would close a vital window into how our Government works." 156 CONG. REC. S.7886 (Nov. 15, 2010).

-18-

investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E); *see also Hamdan*, 797 F.3d at 778.  Here, the Government incorrectly asserts that disclosure would reveal "techniques or procedures" – namely GTO reports – because the requested records are *not* GTOs and, regardless, GTOs are public and not unique.

To begin, Exemption 7(E) does not apply because the records are emails and spreadsheets that reveal no technique.  The requested information – which the agency has already admitted that it collects, (*see* Dkt. 29-15 at 8 (admitting collection of "name, address, and taxpayer [ID]")) – at most reveals the *application* of procedure, which is not enough for 7(E).  *See ACLU N. Cal.*, 880 F.3d at 491 (contrasting a technique's application as opposed to "deploying a particular" technique).

To the extent that Treasury claims that these records reveal the technique of GTOs, this Court should also reject that argument.  As stated by this Circuit, Exemption 7(E) does not apply to those investigative techniques that are "routine" or obvious.  *Rosenfeld*, 57 F.3d at 815.  GTOs are simple forms compiling real estate information.  *Cf. Dunaway*, 519 F. Supp. at 1083 (Exemption (7)(E) only covers "unique" records).  Treasury admits this fact, describing the GTO as formulaic.  (*See* Mosier Decl. ¶ 22 (GTOs simply "require title insurance companies and others to report information")).

Even if the Court agrees with Treasury that GTOs are techniques or procedures that could plausibly be revealed by the records, Exemption 7(E) still does not apply because GTOs are "generally known to the public."  *Rosenfeld*, 57 F.3d at 815; *see also Hamdan*, 797 F.3d at 777 (same).  The BSA itself explicitly discusses GTOs.  Most importantly, as stated in Treasury's declaration, GTOs have been "publicly issued," (Mosier Decl. ¶ 32 ("[S]even real estate GTOs have been publicly issued within the time [of] Plaintiffs[' request]"); *see also* Dkts. 29-13, 29-15), as well as having been described and promoted in FinCEN's press releases, (*see* Dkt. 29-14).  One such release goes into detail about the form.  *Id.*  Such public techniques simply cannot be withheld.

**J.      Treasury May Not Withhold Factual Material Under Exemption 5.**

Exemption 5 allows withholding of "inter-agency or intra-agency" records which "would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  To qualify for Exemption 5's protection, a document "must fall within the ambit of a

-19-

OPP. TO DEF'S MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT.
SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.

privilege against discovery." *Dep't of Interior v. Klamath Water Users Prot. Ass'n*, 532 U.S. 1, 8 (2001). This incorporates the deliberative process privilege, which shields "documents that are both 'predecisional' and part of the agency's 'deliberative process.'" *Kowack v. USFS.*, 766 F.3d 1130, 1135 (9th Cir. 2014). The Ninth Circuit "has defined [the] deliberative process privilege under Exemption 5 narrowly," explaining it applies only if disclosure "would expose an agency's decision-making process." *Sierra Club Inc. v. USFWS.*, 925 F.3d 1000, 1011 (9th Cir. 2019). Conversely, "factual material" is not protected. *Kowack*, 766 F.3d at 1135. Here, Treasury asserts Exemption 5 applies to three classes of documents, but all the requested material within is factual and segregable.[18]

First, Treasury declares that an e-mail from FinCEN to law enforcement "refer[s] possible persons of interest for further investigation," and accordingly is "pre-decisional as well as deliberative," (Mosier Decl. ¶ 57 (discussing Ex. 1 at Doc. # 6).) However, Treasury provides no explanation as to *why* releasing simple facts and redacting all else would release deliberative material. *See Sierra Club*, 925 F.3d at 1011. Second, in asserting Exemption 5 wholesale to two FinCEN intelligence reports, (Mosier Decl. ¶ 58 (discussing Dkt. 29-1 at Docs. ## 7-8)), Treasury concedes that these reports contain "factual summaries[.]" *Id.* ¶ 59. Despite this fatal admission, Treasury attempts to justify withholding through a token recitation of the Exemption 5 standard, which is inadequate. *Cf. Kowack*, 766 F.3d at 1135 ("stand-alone fact section[s]" and "isolated facts" are disclosed). Third, FinCEN asserts Exemption 5 as to forty-eight drafts of memoranda, stating they are not final. (*See* Mosier Decl. ¶ 60 (discussing Dkt. 29-1 at Docs. # 14-61).) Again, pre-decisional documents, if segregable, must be released in part. *See Sierra Club*, 925 F.3d at 1018 (remanded drafts for segregability). Accordingly, segregable information must be disclosed.

## IV.   CONCLUSION

For the foregoing reasons, the DOL's motion for summary judgment should be denied, and CIR's cross motion for summary judgment should be granted.

---

[18] Plaintiffs acknowledge that the opinions contained in these withheld documents may be privileged.

1

2          DATED: October 8, 2020

3

Respectfully submitted,

*s/ D. Victoria Baranetsky*

4          D. Victoria Baranetsky
           THE CENTER FOR INVESTIGATIVE REPORTING
5          1400 65th St., Suite 200
           Emeryville, CA 94608
6          vbaranetsky@revealnews.org
           Telephone: (510) 982-2890

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28