D. Victoria Baranetsky (Cal. Bar No. 311892)
THE CENTER FOR INVESTIGATIVE
REPORTING
1400 65th St., Suite 200
Emeryville, CA 94608
vbaranetsky@revealnews.org
Telephone: (510) 982-2890

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| THE CENTER FOR INVESTIGATIVE REPORTING and AARON GLANTZ,<br><br>       Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE TREASURY,<br><br>       Defendant. | Civil Action No. 3:19-cv-08181-JCS |

**DECLARATION OF K-SUE PARK, JD, PHD**

I, K-Sue Park, declare as follows:

      1.      I am currently Associate Professor at Georgetown University Law Center, in Washington, D.C. I hold a JD cum laude from Harvard Law School, a Ph.D. from the University of California, Berkeley, an M.Phil with distinction from the University of Cambridge, and a BA summa cum laude from Cornell University.

2.      I am a legal scholar with expertise on the history of American Property Law. I have taught classes on Property Law and advanced Property Law topics at Georgetown and at UCLA School of Law, and I have published articles on the history of American property and the American land system in top peer-reviewed journals and law reviews. I have personal knowledge of the matters stated in this declaration based on my legal research. If called upon to do so, I am competent to testify to all matters set forth herein.

3.      Ownership of land has an ancient tradition of having been public information. In the 1660s, colonists began to implement a comprehensive land title records system that made information about beneficial ownership available to the public in order to ensure the orderly transfer of American property entitlements and to provide a secure platform for private commerce. David Thomas Konig, *Community Custom and the Common Law: Social Change and the Development of Land Law in Seventeenth-Century Massachusetts*, 18 AM. J. OF LEG. HIST. 137 (1974).

4.      The American legal system introduced the important tradition of making property ownership information public to the world. The concept of property registers existed in England, but the public registries of entitlements in real property that American colonists developed in the seventeenth century grew into the first nation-wide, comprehensive, transparent property recording system. After the establishment of the United States, every state established a public recording act to protect all parties holding or dealing in interests in land; the public record of beneficial ownership contained in a registry constitutes "[t]he cornerstone of America's legal tradition of transparency of landholding interests." Christopher L. Peterson, *Foreclosure, Subprime Mortgage Lending, and the Mortgage Electronic Registration System*, 78 U. CIN. L. REV. 1359, 1365 (2010).

5.      For centuries, the objective of a public record of beneficial ownership has been multifold: to provide certainty in private bargains, facilitate the enforcement of property rights, prevent and resolve disputes over property rights, and protect communities from commercial chaos after disasters like floods, earthquakes, fire, and hurricanes. *Id*. at 1364-65. In this way, disclosure also promotes compliance with laws and regulations because it permits for accountability.

6.      Only recently have certain corporate vehicles been able to obfuscate information about ownership by actual humans from public land records to a significant degree. Corporate structures such as, Limited Liability Companies (LLCs) are a business structure allowed by state statute that act as the "owner" of a property on title records and limit liability for its members. A beneficial owner is a member of the LLC (or other similar business entity) who enjoys the benefits of ownership even though the title to the form of property purchased by the LLC is in the name of the company.

7.      The appearance and increase of LLCs (and other similar entities) buying property constitutes a very recent phenomenon, as the first domestic limited liability companies did not appear until 1977, and as LLCs were not widely used until the late 1990s. Susan Pace Hamill, "The Story of LLCs: Combining the Best Features of a Flawed Business Tax Structure," in Kirk J. Stark ed., BUSINESS TAX STORIES, 295, 297 (2005). The instances in which property interests are recorded under the name of LLCs – making beneficial ownership information unavailable to the public – still represent a mere fraction of the records in public land registries, though that proportion is growing.

8.      The relatively recent disruptions to the public record caused by the substitution of entity names for beneficial ownership information have introduced problems of corruption,

landlord negligence, and obstacles to enforcement that the system of transparency was designed to prevent.

9. Because of these problems, several state and local jurisdictions have passed legislation requiring business entities to make beneficial ownership of property within their jurisdictions once again publicly available.  *See* Phila. Code § 9-3900 (requiring disclosure of beneficial ownership information when entities obtain new or renew existing property or commercial rental licenses); N.Y. Tax Law § 1409 (McKinney 2020) (requiring disclosure of beneficial ownership information in tax filings); D.C. Code § 29-102.01 (requiring disclosure of beneficial ownership information to the Department of Consumer and Regulatory Affairs for all newly formed domestic entities and all foreign entities doing business in DC).  In these jurisdiction, beneficial ownership of land is actually public information.

10. Several countries, including the United Kingdom, Ukraine, and Ireland, have also passed legislation mandating public recordation of beneficial ownership interests.  *See* Register of People with Significant Control Regulations 2016, SI 2016/339, art. 7 (Eng.); Zakon Ukrainy Pro Zapobigannia ta Protydiiu Legalizatsii (Vidmyvanniu) Dokhodiv Oderzhanykh Zlochynnym Shliakhom Financuvanniu Terorizmu ta Finansuvanniu Rozpovciuzhdennia Zbroï Masovogo Znyshchennia, abz. 30 st. 1 rozd. 1 [Section 1, Article 1, Part 30 of the Law of Ukraine on Prevention and Counteraction to Legalization (Laundering) of the Proceeds of Crime, Terrorist Financing as well as Financing of Proliferation of Mass Destruction Weapons] Golos Ukraïny, Dec. 28, 2019, No. 251; European Union (Anti-Money Laundering: Beneficial Ownership of Corporate Entities) Regulations 2019 (SI 110/2019) (Ir.), http://www.irishstatutebook.ie/eli/2019/si/110/made/en/print.

11. As previously suggested, beneficial ownership information, is by its nature, inherently public. The public interest in the disclosure of beneficial ownership flows from the public's interest in protecting the integrity and transparency of the American property system, the important market function that transparency has served, and the discouragement of corruption, abuse, and landlord negligence that anonymity inevitably fosters. Representative Carolyn Maloney, sponsor of the Corporate Transparency Act, which passed the U.S. House of Representatives with bipartisan support in October 2019, referenced these public interests explicitly when she stated that the bill would "help to crack down on New York's real estate being used to park illicit money, driving up housing costs and limiting availability." *House Passes Maloney Bill to Crack Down on Anonymous Shell Companies*, Rep. Carolyn B. Maloney Newsroom (Oct. 22, 2019) https://maloney.house.gov/media-center/press-releases/house-passes-maloney-bill-to-crack-down-on-anonymous-shell-companies; *see also* Louise Story and Stephanie Saul, *Towers of Secrecy: Stream of Foreign Wealth Flows to Elite New York Real Estate*, N.Y. TIMES (Feb. 7, 2015) https://www.nytimes.com/2015/02/08/nyregion/stream-of-foreign-wealth-flows-to-time-warner-condos.html.

12. Public access to beneficial ownership information through county registers across the country is a key part of what made the U.S. property system a global standard for record-keeping and transparency. The U.S. property system remains an important model for ongoing efforts by the World Bank to introduce land reform through land titling systems around the globe. *See Why Secure Land Rights Matter*, The World Bank (Mar. 24, 2017), https://www.worldbank.org/en/news/feature/2017/03/24/why-secure-land-rights-matter. The World Bank, working with economist Hernando De Soto, has embraced the latter's insight that the comprehensive public registration of land is directly correlated with a nation's wealth and is crucial

for the development and growth of a modern economy. When De Soto pioneered this idea in 2000, he specifically emphasized that the collecting, centralizing, and publicizing information about beneficial ownership and other entitlements to property was a crucial part of a modern property system and a functional market. Hernando De Soto, THE MYSTERY OF CAPITAL (2000).

13. Additionally, beneficial ownership information is not information in which individuals have a personal privacy interest that is protected by law. Congress has seen fit to protect individuals from the publication of some information pertaining to their personal affairs with explicit legislation recognizing their privacy interests in, for example, medical conditions. *See, e.g.*, Health Insurance Portability and Accountability Act (HIPAA) of 1996 § 1320(d)(6), 42 U.S.C. § 1320(d) (obtaining or disclosing another person's individually identifiable health information is a punishable offense). By contrast, public recording acts mandate the publication of certain non-private information, requiring the public recordation of individuals' beneficial ownership of real property. Indeed, the public interest in the business relation of an individual's ownership of property is the hallmark of the American property system, and information about beneficial ownership has been centralized and public for centuries. Recognizing privacy interests in beneficial ownership undermines this fundamental principle of American property law, its land system, and its real estate market.

14. I declare under penalty of perjury of the laws of the District of Columbia that the foregoing is true and correct to the best of my knowledge and belief.

Executed October 1, 2020, in Washington, DC.

/s/ _____
K-Sue Park