DAVID L. ANDERSON (CABN 149604)
United States Attorney
SARA WINSLOW (DCBN 457643)
Chief, Civil Division
J. WESLEY SAMPLES (CABN 321845)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
Fax: (415) 436-6748
wes.samples@usdoj.gov

Attorneys for Defendant

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| THE CENTER FOR INVESTIGATIVE REPORTING and AARON GLANTZ,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE TREASURY,<br>Defendant. | Case No.: 3:19-cv-08181-JCS<br><br>**DEFENDANT FINCEN'S CROSS OPPOSITION AND REPLY FOR SUMMARY JUDGMENT**<br><br>Date: December 11, 2020<br>Time: 9:30am<br>Location: Courtroom F,<br>15th Floor, San Francisco<br><br>The Hon. Joseph C. Spero |

## CONTENTS

I.    **INTRODUCTION** ...........................................................................................1

II.    **FINCEN'S WITHHOLDINGS ARE PROPER UNDER 31 U.S.C. § 5319 AND PLAINTIFFS FAIL TO SHOW OTHERWISE** ...........................1

    A.    The public domain doctrine does not require disclosure ......................1

    B.    Plaintiffs' argument that the BSA does not require withholding under Exemption 3 fails because 31 U.S.C. § 5319 was enacted more than 20 years before the OPEN FOIA Act and cites section552 of title 5 .................6

    C.    Plaintiffs ignore that the Bank Secrecy Act, 31 U.S.C. § 5319, under Exemption 3, applies to reports and "records of reports" ...................7

    D.    The foreseeable harm standard does not require disclosure of any withheld information, and it does not apply to Exemption 3 at all ...................11

    E.    The information Plaintiffs assume exists and should be segregable would be the very information FinCEN seeks to withhold ...................11

    F.    Plaintiffs' reliance on superseded law and mischaracterizations do not change the fact that FinCEN has met the Exemption 7 threshold ...................12

    G.    Plaintiffs ignore that the FinCEN has pointed to ongoing investigations such that Exemption 7(A) applies ...................13

    H.    Plaintiffs' attempt to conflate GTOs with records of reports fails to rebut FinCEN's assertion of Exemption 7(E) ...................14

    I.    Exemption 6 applies to information identifying career level FinCEN employees and Plaintiffs do not argue otherwise ...................15

    J.    Plaintiffs' arguments regarding Exemption 7(C) are not responsive to FinCEN's reasons for withholding, such that FinCEN's application of 7(C) is unrebutted ...................16

    K.    FinCEN has identified foreseeable harms that would result if the Exemption 5 documents were disclosed, and sufficiently explained the decision making processes at issue to justify withholding under Exemption 5 ...................17

III.    **CONCLUSION** ...........................................................................................17

**<u>TABLE OF AUTHORITIES</u>**

**<u>FEDERAL CASES</u>**

*ACLU of N. Cal. v. U.S. Dep't of Just.*, 880 F.3d 473 (9th Cir. 2018) ............................... 5, 15

*ACLU v. FBI*, No. 12-cv-3728-SI, 2013 WL 3346845 (N.D. Cal. July 1, 2013) ....................................................................................................................... 14

*ACLU v. NSA*, No. 13-cv-9198, 2017 WL 1155910 (S.D.N.Y. Mar. 27, 2017) ...................................................................................................................... 12

*ACLU v. U.S. Dep't of Just.*, 655 F.3d 1 (D.C. Cir. 2011) ....................................... 5

*Afshar v. U.S. Dep't of State*, 702 F.2d 1125 (D.C. Cir. 1983) ......................... 2, 4

*Berger v. IRS*, 487 F. Supp. 2d 482 (D.N.J. 2007)*r* ................................................ 9

*Bloomer v. U.S. Dep't of Homeland Sec.*, 870 F. Supp. 2d 358 (D. Vt. 2012) ................................................................................................................... 7, 10

*Citizens for Responsibility & Ethics in Wash. V. U.S. Dep't of Just.*, 854 F.3d 675 (D.C. Cir. 2017) ................................................................................... 5

*Cottone v. Reno*, 193 F.3d 550 (D.C. Cir. 1999) .......................................... 2, 3, 4, 5

*Ctr. For Pub. Integrity v. U.S. Dep't of Energy*, 287 F. Supp 3d 50 (D.D.C. 2018) .................................................................................................... 5

*Cuban v. S.E.C.*, 795 F. Supp. 2d 43 (D.D.C. 2011) ............................................ 7

*Davis v. U.S. Dep't of Just.*, 968 F.2d 1276 (D.C. Cir.1992) ....................... 2, 3, 4, 7

*Dep't of Air Force v. Rose*, 425 U.S. 352 (1976) ................................................. 9

*Ewell v. U.S. Dep't of Just.*, 153 F. Supp. 3d 294 (D.D.C. 2016) ......................... 2

*Goland v. CIA*, 607 F.2d 339 (D.C. Cir. 1978) ................................................... 8

*Hamdan v. U.S. Dep't of Just.*, 797 F.3d 759 (9th Cir. 2015) .............................. 15

*Johnson v. FBI*, 118 F. Supp. 3d 784 (E.D. Pa. 2015) .......................................... 6

*Kowack v. USFS*, 766 F.3d 1130 (9th Cir. 2014) .............................................. 17

*Lahr v. NTSB*, 569 F.3d 964 (9th Cir. 2009) ..................................................... 16

*Lawrence v. Holder*, 717 F.3d 1036 (9th Cir. 2013) ............................................ 6

*Lawyers' Comm. For Civ. Rights v. U.S. Dep't of Treasury*, No. 07-cv-2590-PJH, 2009 U.S. Dist. LEXIS 42327 (N.D. Cal. May 11, 2009) ................... 13

*Lion Raisins, Inc. v. U.S. Dep't of Agric.*, 354 F.3d 1072 (9th Cir. 2004) ....... 13, 14

*McRae v. U.S. Dep't of Just.*, 869 F. Supp. 2d 151 (D.D.C. 2012) ....................... 10

*Niagara Mohawk Power Corp. v. U.S. Dep't of Energy*, 169 F.3d 16 (D.C. Cir. 1999) .................................................................................................. 4, 5

*Ortiz v. U.S. Dep't of Just.*, 67 F. Supp. 3d 109 (D.D.C. 2014) ........................ 7, 9

*Pratt v. Webster*, 673 F.2d 408 (D.C. Cir. 1982) ............................................ 12

*Raimondo v. FBI*, No. 13-cv-2295-JSC, 2016 U.S. Dist. LEXIS 61958 (N.D. Cal. May 10, 2016) ........................................................................... 14

*Reporters Comm. For Freedom of the Press v. U.S. Dep't of Just.*, 816 F.2d 730 (D.C. Cir. 1987) .......................................................................... 7

*Rosenberg v. U.S. Dep't of Immigration & Customs Enf't*, 13 F. Supp. 3d 92 (D.D.C. 2014) ................................................................................... 7, 11

*Sciba v. Bd. of Govs. of Fed. Res. Sys.*, 2005 WL 3201206 (D.D.C. Nov. 4, 2005) ......................................................................................................... 8

*Senate of Puerto Rico v U.S. Dep't of Just.*, 823 F.2d 574 (D.C. Cir. 1987) ..................... 10

*Sierra Club, Inc. v. U.S. Fish & Wildlife Serv.*, 925 F.3d 1000 (9th Cir. 2019) ..................................................................................................... 17

*Small v. I.R.S.*, 820 F. Supp. 163 (D.N.J. 1992) ............................................. 9

*Turner v. U.S. Dep't of the Treasury*, No. 15-cv-7, 2017 WL 1106030 (E.D. Cal. Mar. 23, 2017 ..................................................................... 7, 9, 10

*Waterman v. IRS*, 288 F. Supp. 3d 206 (D.D.C. 2018) ..................................... 16

*Winter v. NSA*, 569 F. Supp. 545 (S.D. Cal. 1983) .......................................... 9

*Yunes v. U.S. Dep't of Just.*, 263 F. Supp. 3d 82 (D.D.C. 2017) ..................... 7, 15

## FEDERAL STATUTES

31 U.S.C.A. § 5319 ..................................................................................... 1, 6, 7, 12

5 U.S.C. § 552(b)(3) .......................................................................................... 6

## FEDERAL RULES

Fed. R. Crim. P. 6(e) ....................................................................................... 10

## LEGISLATIVE MATERIALS

155 Cong. Rec. S.3175 (Mar. 17, 2009) ............................................................ 7

Consolidated Appropriations Act of 2012, Pub. L. 112-74, § 119, 125 Stat 786, 891 (2011) ........................................................................................... 6

Department of Homeland Security Appropriations Act of 2010, Pub. L. 111-83, § 564, 123 Stat. 2142, 2184 (2009) ...................................................... 6

Housing and Community Development Act of 1992, Pub. L. 102-550, §
1506, 106 Stat. 3672, 4055 (1992).................................................................. 6

Money and Finance, Pub. L. 97-258, § 5319, 96 Stat. 877, 999 (1982) ...................................... 6

Uniting and Strengthening America by Providing Appropriate Tools
Required to Intercept and Obstruct Terrorism (USA PATRIOT ACT)
Act of 2001, Pub. L. 107–56, § 358, 115 Stat 272, 326 (2001) ............................ 6

## OTHER AUTHORITIES

2014 BSA/AML Examination Manual,
https://bsaaml.ffiec.gov/docs/manual/01_Introduction /01.pdf .............................. 13

Black's Law Dictionary (11th ed. 2019)............................................................... 6

## TABLE OF EXHIBITS

| Ex. No. | Description |
|---------|-------------|
| Ex. 1 | FinCEN's 2017 Advisory to Financial Institutions and Real Estate Firms and Professionals, FIN-2017-A003 (Aug. 22, 2017) |

# I.     INTRODUCTION

Plaintiffs' Opposition and Cross Motion for Summary Judgment (D.I. 32) is most noticeable for what it does not do. First, it fails to even acknowledge FinCEN's argument that all responsive information FinCEN has is contained in, derived from, or extracted from "report[s] and records of reports" which are exempted from disclosure per the Bank Secrecy Act:

> The Secretary of the Treasury shall make information in a report filed under this subchapter available to an agency, including any State financial institutions supervisory agency, United States intelligence agency . . . upon request of the head of the agency or organization. The report shall be available for a purpose that is consistent with this subchapter. The Secretary may only require reports on the use of such information by any State financial institutions supervisory agency for other than supervisory purposes or by United States intelligence agencies. However, a report and ***records of reports*** are exempt from disclosure under section 552 of title 5, and may not be disclosed under any State, local, tribal, or territorial "freedom of information", "open government", or similar law.

31 U.S.C.A. § 5319[1]  (emphasis added).  Plaintiffs have even stipulated as much with respect to the "report[s]" themselves. *See* Dkt. Nos 23, 28 at n.2. Plaintiffs, however, persist in seeking equally exempt "records of reports," including the spreadsheet with which Plaintiffs are chiefly interested.  Second, Plaintiffs fail to meet their burden to show that any of the information withheld by FinCEN is in the public domain, as explained in greater detail in the Second Declaration of Mr. Mosier attached here in response to Plaintiffs' Cross Motion.  The remainder of Plaintiffs' arguments similarly miss the mark, as discussed below.[2]  In view of Plaintiffs' failures, the Court should grant FinCEN's Motion (D.I. 29).

## II.     FINCEN'S WITHHOLDINGS ARE PROPER UNDER 31 U.S.C. § 5319 AND PLAINTIFFS FAIL TO SHOW OTHERWISE

### A.     The public domain doctrine does not require disclosure

Plaintiffs have not and cannot now meet their burden to show that there is information in the public

---

[1] If the Court decides that FinCEN's withholdings pursuant to Exemption 3 are proper, then the Court need not consider the applicability of the other exemptions, because such a determination would mean FinCEN has no non-exempt responsive information. *See* First Mosier Decl. ¶¶ 26, 39, 55; Mot. at n. 2.

[2] FinCEN objects to Plaintiffs' use of bit.ly links and all citations which rely on bit.ly links.  The majority (if not all) appear to be broken or inaccessible via the DOJ's network, and the bit.ly links may track FinCEN and the Court when accessed.  The Bluebook even provides short links which "clearly indicate[] the source of the site [are permissible,] but not bit.ly." THE BLUEBOOK R. 18.2.2(d) (21st ed. 2020). Moreover, they serve to circumvent page limits.  FinCEN further objects to the extent Plaintiffs "Notice of Motion" is not within the limited pages of Plaintiffs' Opposition. Civil L.R. 7-2(b)(1).  And FinCEN objects for the reasons explained in the Second Declaration of Mr. Mosier. *See* Mosier Decl. 2 ¶¶ 35-45.

domain that is the exact duplicate of the information withheld by FinCEN under Exemption 3 pursuant to 31 U.S.C. § 5319.[3]  The D.C. Circuit has explained that the public domain exception is a narrow one, requiring a showing "that there is a permanent public record of the ***exact*** portions [of the records]" requested.  *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999) (emphasis added) (quoting *Davis v. U.S. Dep't of Just.*, 968 F.2d 1276, 1280 (D.C. Cir.1992)); *see also Ewell v. U.S. Dep't of Just.*, 153 F. Supp. 3d 294, 305 (D.D.C. 2016) (discussing *Cottone v. Reno*).  Here, however, Plaintiffs have failed to specifically identify any allegedly duplicate records.  *See* Mosier Decl. 2 ¶¶ 1-34, 46.  As the Court in *Cottone v. Reno* explained with respect to Exemption 3:

> [T]he party advocating disclosure bears the initial burden of production; for were it otherwise, the government would face the daunting task of proving a negative: that requested information 'had not been previously disclosed. . . . To satisfy his burden, [Plaintiffs] must 'point to ***specific information*** in the public domain that appears to ***duplicate*** that being withheld.' . . . Of course, it will very often be the case that some type of hard copy facsimile will be the only practicable way for a FOIA requester to demonstrate that the ***specific information*** he has solicited has indeed circulated into the public domain, . . . [and] this is as it should be; for while the logic of FOIA postulates that an exemption can serve no purpose once information — including sensitive law-enforcement intelligence—becomes public, we must be confident that the information sought is truly public and that the requester receive no more than what is publicly available before we find a waiver.

*Cottone*, 193 F.3d at 554-555 (emphasis added) (quoting *Afshar v. U.S. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983) (internal quotation marks, alterations, and citations omitted); *see also Afshar*, 702 F.2d at 1131-32 (finding Plaintiff failed to show prior release where, as here, "[the Court was] able to tell from the affidavits already submitted by the government that the withheld information is in some material respect different from that to which plaintiff refers."); Mosier Decl. 2 ¶ 6.

The line drawn in *Cottone*, which addressed Exemption 3, is informative here.  In that case, Salvatore Cottone was prosecuted for criminal offenses based in part on Title-III wiretapped recordings. *Cottone* 193. F.3d at 552.  Cottone requested all "tape recordings cross-referenced to his name, including [but not limited to] those tapes that the government had played for the jury at his trial."  *Id*. at 553.  The Court of Appeals determined that Cottone was entitled to "only those tapes that were played in open court [and] to the extent that Cottone seeks [other] recordings that were not played in court . . . Exemption 3

---

[3] It is undisputed that Plaintiffs bear the burden.  *See* Opp. at 7:6-8 (admitting "the burden is on the requester to show the information is public.")

remains inviolate." *Id*. at 556.  The Court of Appeals reasoned that Cottone had only satisfied his burden to "point[] to specific information in the public domain" as to the "***exact*** portions" of the tapes which "Cottone ha[d] demonstrated precisely . . . were played in open court." *Id*. at 554-55 (emphasis original). The Court of Appeals distinguished *Cottone* from *Davis v. U.S. Dep't of Just.*, 968 F.2d 1276 (D.C.Cir.1992), where plaintiff's public domain argument was rejected "because he could not identify which ***specific*** tapes had been played during trial." *Id*. at 555 (emphasis original) (citing *Davis*, 968 F.2d at 1280); *see also Davis*, 968 F.2d at 1280 ("our public domain cases . . . require the requester to point to 'specific' information identical to that being withheld").  In view of the distinction drawn in *Cottone*, with its emphasis on specificity and exactness, there is no doubt Plaintiffs have failed to meet their burden here for at least two independent reasons.  *See* Mosier Decl. 2 ¶¶ 1-34, 46.

First, Plaintiffs have failed to meet their burden because they only generally cite various laws, news articles, and a complaint filed in another case — none render the information in FinCEN's records public.  *See* Opp. at 8:5-6.  Indeed, Plaintiffs do not even attempt to point to exact portions of specific records resulting from the various laws cited or in the referenced news articles and complaint — none of the news articles nor the complaint even contain actual records.  *See* Opp. at 6:25-8:9, n.5; *Cottone*, 193 F.3d at 554-555.  Nor do Plaintiffs cite ***specific information*** in the public domain that is the ***duplicate*** of the information withheld.  *See* Opp. at 6:25-8:9, n.5; *Cottone*, 193 F.3d at 554-555.  Instead Plaintiffs couch their argument in only general terms, erroneously alleging "[a]ny LLCs from [Philadelphia, New York, or Washington, D.C.] that have purchased property in United States have necessarily disclosed their beneficial ownership, rendering much of the requested FinCEN records public," and offer an excuse to explain why Plaintiffs have no specific information — because "the records are somewhat difficult to aggregate." Opp. at 8:5-6, n.5.[4]  Plaintiffs' failure, however, to even allege or otherwise identify publicly available specific information that is exactly duplicated in FinCEN's withheld records is fatal to Plaintiffs'

---

[4] Plaintiffs also allege, based on paragraph 10 of Dr. K-Sue Park's declaration, that "the United Kingdom, Ireland, and Ukraine each require public disclosure of beneficial ownership."  Opp. at 8:2-3.  This statement, however, appears to conflate beneficial ownership of entities with beneficial ownership of real property, standing only for the proposition that these three countries require disclosure of the beneficial ownership of entities within their respective boarders, and paragraph 10 of Dr. K-Sue Park's declaration does not meaningfully elaborate further.  It is not clear how Plaintiffs contend any of these materials relate to beneficial ownership of property within the U.S. as is at issue here.  *See also* Mosier Decl. 2 ¶ 5, n.1.

public domain argument. Plaintiffs cannot meet their burden by generally alleging that in some cases beneficial owners are generally known, have been identified, or must be disclosed.

Second, all the laws Plaintiffs cite in support of their "public domain doctrine" argument materially differ from the reports and records of reports withheld by FinCEN with respect to both the types and sources of data collected. *See* Opp. at 6:25-8:9; Mosier Decl. 1 ¶ 34; Mosier Decl. 2 ¶¶ 1-34, 46; Mosier Decl 1. ¶¶ 24, 32, 87, n.6; *see also Afshar*, 702 F.2d at 1131-32 (finding no prior release where, as here, "[the Court was] able to tell from the affidavits already submitted by the government that the withheld information is in some material respect different from that to which plaintiff refers."); *Cottone* 193 F.3d at 554-555. "[N]one of the laws cited in Plaintiffs [Opposition] collects the same data from the same sources with the same objectives as FinCEN does with its GTO Reports, and which FinCEN maintains in records of those GTO Reports." Mosier Decl. 2 ¶ 6; *see* Mosier Decl. 1 ¶¶ 24, 32, 34, 87, n.6. As such, records created in compliance with the laws cited by Plaintiffs in their opposition would by definition not be exact duplicates of the records withheld by FinCEN under Exemption 3 per to 31 U.S.C. § 5319 — Plaintiffs themselves do not argue otherwise. *See* Opp. at 6:25-8:9. *See* Mosier Decl. 2 ¶¶ 1-34, 46. Additionally, in so far as Plaintiffs' Opposition discusses laws and regulations outside of section III(B) regarding the public domain doctrine, those other laws and regulations are also materially different with respect to the type of data collected and the sources from which that data is collected. *See* Opp. at 6:25-8:9; Mosier Decl. 2 ¶¶ 6, 23-26 (addressing the U.S. GAO *Company Formations Minimal Ownership Is Collected and Available* cited in the Opp. at 4:7-22 and argument at Opp. n.4), 31-34, 46; Mosier Decl 1. ¶¶ 24, 32, 87, n.6; *see also Afshar*, 702 F.2d at 1131-32. Plaintiffs cannot meet their burden, where, as here, the information withheld differs in material respects from the information to which Plaintiffs refer only generally in their "public domain doctrine" argument.

Moreover, none of the other cases cited by Plaintiffs support a finding that the public domain doctrine applies under these facts. *See* Opp. at 7:9-16.[5] The Court in *Niagara Mohawk Power Corp. v. U.S. Dep't of Energy*, 169 F.3d 16 (D.C. Cir. 1999) posed a question equally applicable in this case: "[Plaintiffs'] position here is a little odd: if the information is publicly available, one wonders, why is it

---

[5] With respect to *Cottone*, 193 F.3d 550, *Afshar*, 702 F.2d 1125, and *Davis*, 968 F.2d 1276, see the discussion *supra*, where FinCEN relies on these cases to advance its affirmative argument.

burning up counsel fees to obtain it under FOIA?" *Id*. at 19.  Moreover, that Court suggested, but did not

expressly find, that "information on two the forms [not] identical in scope" might justify withholding of

the undisclosed "materially broader" form, even where the narrower form was publicly disclosed. *Id*. at

19-21 (ultimately remanding). *ACLU of N. Cal. v. U.S. Dep't of Just.*, 880 F.3d 473 (9th Cir. 2018) merely

relies on *Cottone* for the general propositions cited above. *Id*. at 491 (*citing Cottone*, 193 F.3d at 554).  It

did not even rule on the public domain issue, instead remanding it for a factual determination.  In *Citizens*

*for Responsibility & Ethics in Wash. V. U.S. Dep't of Just.*, 854 F.3d 675  (D.C. Cir. 2017) the public

disclosure issue was limited to specific "individuals who ha[d] already been publicly identified" in relation

to the specific records at issue in that case.[6]  *Id*. at 681-683.  Plaintiffs have not identified any such

individuals in relation to specific FinCEN records here.  Moreover, Court there did not find that publicity

exemptions — the Court "d[id] not [actually] resolve the question of whether the Government redactions

of names were proper." *Id*. at 682.  With respect to *ACLU v. U.S. Dep't of Just.*, 655 F.3d 1 (D.C. Cir.

2011), Plaintiffs cite no particular page, and all discussion of public availability is limited to Exemption

7(C) and a finding that "disclosure . . . would not compromise much more" "than a de minimis privacy

interest" because "the specific list actually at issue" contained case names, docket numbers, and court

information that was actually "publicly available and readily accessible to anyone who might be interested

in it" — unlike here. *Id*. at 4, 12.

Finally, in so far as Plaintiff suggest other courts have relied on the public domain doctrine to

"disclose[] more sensitive records than at issue here," that ignores 31 U.S.C. § 5319, and is also not true.

*See* Opp. at 7:17-25. [7]  In *Ctr. For Pub. Integrity v. U.S. Dep't of Energy*, 287 F. Supp 3d 50 (D.D.C.

2018), the "nuclear site" Plaintiffs hint must be "sensitive" is Sandia National Laboratories ("SNL"), and

the "memo" referenced did not contain any nuclear secrets as alluded, but related to the renewal of the

contract whereby Lockheed Martin operates SNL. *See id*. at 56-57.  Only Exemptions 4 and 7(C) were at

issue with respect to public domain. *See id*. at 61, 65. *Johnson v. FBI*, 118 F. Supp. 3d 784 (E.D. Pa.

---

[6] This case in fact supports FinCEN's application of Exemption 7(C), as discussed further, *infra* section II(J).  *See Citizens*, 854 FF.3d at 681-682 (where, as here "individuals may be named or otherwise identified who have not previously been publicly implicated in the .. investigation. … and there is no compelling evidence that the agency is engaged in illegal activity, such names are categorically exempt from disclosure." (internal quotation marks, alterations, and citations omitted)).
[7] With respect to *Cottone*, 193 F.3d 550 and *ACLU of N. Cal.*, 880 F.3d 473, which involved sections of the USA Book related to electronic surveillance, see the discussion *supra* section II(A).

2015) was a situation, unlike here, where a FOIA request followed a public trial. *Id*. at 789. And the Court did not order the FBI to release the confidential investigative file, but rather ordered "the FBI to supplement its filings, [to] address with more particularity, (1) the specific materials and information in the investigative file, [and] (2) whether . . . materials or information became . . . public record at . . . trial." *Id*. at 796; Opp. at 7:23. Accordingly, Plaintiffs' reliance on the public domain doctrine fails.

**B.** **Plaintiffs' argument that the BSA does not require withholding under Exemption 3 fails because 31 U.S.C. § 5319 was enacted more than 20 years before the OPEN FOIA Act and cites section552 of title 5**

Plaintiffs' argument that "the BSA does not 'specifically cite' to Exemption 3 of the OPEN FOIA Act" of 2009 fails because the relevant portion of the BSA, 31 U.S.C. § 5319, was enacted in 1982, has remained unaltered since, and even cites "section 552 of title 5." Opp. at 11:4; *see* 31 U.S.C. § 5319 (Pub. L. 97-258, § 5319, 96 Stat. 877, 999 (1982), as amended Pub. L. 102-550, § 1506, 106 Stat. 3672, 4055 (1992)) (providing in relevant part: "However, a report and records of reports are exempt from disclosure under section 552 of title 5"). That 31 U.S.C. § 5319 was "amended" in 2001 and 2011 is irrelevant. *See* Pub. L. 112-74, § 119, 125 Stat 786, 891 (2011) (using the word "amended" with respect to 31 U.S.C. § 5319); Pub. L. 107–56, § 358, 115 Stat 272, 326 (2001) (using the word "amended" with respect to 31 U.S.C. § 5319). The OPEN FOIA Act language on which Plaintiffs attempt to rely requires a statute to "specifically cite" 5 U.S.C. § 552(b)(3) only "if *enacted* after the date of enactment of the OPEN FOIA Act of 2009." 5 U.S.C. § 552(b)(3) (Pub. L. 111-83, § 564, 123 Stat. 2142, 2184 (2009)) (emphasis added). "Enacted" and "amended" do not have the same meaning — and Plaintiffs cite no authority suggesting otherwise. [8] *C.f Lawrence v. Holder*, 717 F.3d 1036, 1041 (9th Cir. 2013) ("Congress can certainly draw lines that specify effective dates when it enacts or amends relief statutes"). Indeed, the same Congressional Record Plaintiffs cite reveals that the OPEN FOIA Act of 2009 was intended to apply only to *new legislation* — not amendments to laws already enacted. "The OPEN FOIA Act simply requires that when Congress provides for a statutory exemption to FOIA in *new legislation*, Congress

---

[8] *See* Black's Law Dictionary (11th ed. 2019) (Amend: "2. To change the wording of; specif., to formally alter (a statute, constitution, motion, etc.) by striking out, inserting, or substituting words <amend the legislative bill>"); *id*. (Enact: "1. To make into law by authoritative act; to pass <the statute was enacted shortly before the announced deadline>").

1    must state its intention to do so explicitly and clearly." 155 CONG. REC. S.3175 (Mar. 17, 2009) (emphasis

2    added).[9]  Congress said nothing about amending existing laws, though it did say "no one can fairly

3    question the need to keep certain Government information secret to ensure the public good," as is the case

4    here.  *Id*.

5          Lest there be any doubt, 31 U.S.C. § 5319 has been consistently enforced by courts since 2009 —

6    including by courts which have considered the OPEN FOIA Act of 2009.  *See Davis v. FBI*, No. 18-CV-

7    0086, 2019 WL 2870729, at *6 (D.D.C. July 3, 2019) (in 2019 discussing the OPEN FOIA Act of 2009

8    and then stating "[i]t is firmly established in this Circuit that the BSA is a proper basis for invoking an

9    Exemption 3 withholding" (quoting *Rosenberg v. U.S. Dep't of Immigration & Customs Enf't*, 13 F. Supp.

10   3d 92, 116 n.9 (D.D.C. 2014)); *Yunes v. U.S. Dep't of Just.*, 263 F. Supp. 3d 82, 86 (D.D.C. 2017) (quoting

11   31 U.S.C. § 5319 in 2017 to "find[] that the government has amply shown that the withheld document is

12   a BSA report that is exempt from disclosure under FOIA" (internal quotation marks, citation, and

13   alterations omitted)); *Cuban v. S.E.C.*, 795 F. Supp. 2d 43, 63 (D.D.C. 2011) (applying 31 U.S.C. § 5319

14   in 2011); *Ortiz v. U.S. Dep't of Just.*, 67 F. Supp. 3d 109, 118 (D.D.C. 2014) (applying 31 U.S.C. § 5319

15   in 2014); *Bloomer v. U.S. Dep't of Homeland Sec.*, 870 F. Supp. 2d 358, 365 (D. Vt. 2012) (applying 31

16   U.S.C. § 5319 in 2012);  *Turner v. U.S. Dep't of the Treasury*, No. 15-cv-7, 2017 WL 1106030 (E.D. Cal.

17   Mar. 23, 2017 (in 2017 finding information derived or extracted directly from BSA Reports is properly

18   withheld pursuant to the BSA non-disclosure provision).

19        **C.    Plaintiffs ignore that the Bank Secrecy Act, 31 U.S.C. § 5319, under Exemption 3,
            applies to reports and "records of reports"**

20        Since its inception, 31 U.S.C. § 5319 has provide that "a report ***and records of reports*** are exempt

21   from disclosure under section 552 of title 5."  *See* 31 U.S.C. § 5319 (Pub.L. 97-258, Sept. 13, 1982, 96

22   Stat. 999).  There is no dispute that GTO Reports are "report[s]" as under 31 U.S.C. § 5319.  *See* 31 U.S.C.

23   § 5326 (part of Subchapter II, authorizing GTO Reports, such that GTO Reports are prohibited from

24   disclosure under 31 U.S.C. § 5319); *see also* Mot. at 5-8; Mosier Decl. 1 ¶¶ 22, 26, 29-35, 45, 48, n.7; *see*

25

26   _____

27   [9] Likewise, Plaintiffs fail to support their allegation that "the BSA is not an Exemption 3 statute" with any
     applicable authority.  Opp. at n.7.  The one case Plaintiffs cite to support this argument, *Reporters Comm.
     For Freedom of the Press v. U.S. Dep't of Just.*, 816 F.2d 730, 735 (D.C. Cir. 1987), not only predates the

28   OPEN FOIA Act of 2009, it also involves a statute which — unlike 31 U.S.C. § 5319 — involved a statute
     which "d[id] not specifically exempt from public disclosure any matter."

*generally* Opp. More importantly, however, Plaintiffs completely fail to rebut FinCEN's argument regarding "records of reports" — the words "records of reports" do not even appear in Plaintiffs' Opposition. *See generally* Opp.; *see e.g., id*. at 11:13. Rather, Plaintiffs completely ignore the "records of reports" language in 31 U.S.C. 5319 and accuse FinCEN of "stretch[ing] the BSA's reach" and that "Treasury provides no similar citation [as FinCEN did for GTO Reports] for the withheld records." Opp. at 12:3-5, 12:11-12. But that argument misses the mark. *See* Mosier Decl. 2 ¶ 35-37 (explaining Plaintiffs errors).[10] 31 U.S.C. § 5319 specifically exempts both "reports and ***records of reports*** . . . from disclosure." 31 U.S.C. § 5319 (emphasis added). Therefore, records of GTO Reports, including the spreadsheet which is Plaintiffs' chief concern, are also exempt from disclosure under section 552 of title 5. *See* Mosier Decl. 1 ¶¶ 26, 39, 48-55, Ex. 1; *see also* Mot. at 5, 9, n.7

Exemption 3 is unique among the FOIA exemptions "in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within that statute's coverage." *Goland v. CIA*, 607 F.2d 339, 350 (D.C. Cir. 1978) (footnote omitted); *see also Sciba v. Bd. of Govs. of Fed. Res. Sys.*, 2005 WL 3201206, at *5 (D.D.C. Nov. 4, 2005); *see* Opp. at 11-12 (arguing essentially the same). There is no doubt that here — under the plain language of the statute, both "a report and a ***records of reports*** are exempt from disclosure." Accordingly, the BSA, pursuant to 31 U.S.C. § 5319, forbids disclosure of "spreadsheets, emails, and memorandum" in so far as they are "records of reports" — contrary to Plaintiffs' bald assertion to the contrary. *See* Opp. at 12:5-6 (arguing the "BSA does *not* enumerate" "'spreadsheets, emails and memorandum'" (emphasis original)); *id* at 12:17-18 (mischaracterizing the emails and spreadsheets at issue as "informal"). Moreover, Plaintiffs do not aver that the portions of spreadsheets, emails, and memoranda at issue here are not "records of reports" within the meaning of 31

---

[10] Plaintiffs' Opposition twice attributes the quotation "in part derived or extracted" to page 28 of FinCEN's Motion (D.I. 29). Opp. at 12:5, 12:15 (both citing "Gov. Br. at 28"). FinCEN's Motion, however, does not contain that quotation and in fact ends at page 20. Additionally, Plaintiffs' Opposition cites page 29 of FinCEN's motion to allege that "Treasury essentially admits [that] none of these 'spreadsheets, memoranda, and email' are expressly 'exempt from disclosure under § 552." Opp. at 12:8-9. For the sake of clarity, Plaintiffs are incorrect. FinCEN contends that the spreadsheets, memoranda, and email are exempt from disclosure as detailed in the *Vaughn* Index. *See* Moiser Decl. 1 at Ex. 1; Mosier Decl. 2 ¶¶ 35-37. Moreover, it is not clear what Plaintiffs are citing as FinCEN's entire filing (D.I. 29) is only 28 pages long.

U.S.C. § 5319 — which they are.[11]  *See* Mosier Decl. 1 ¶¶ 26, 39 ("documents which derive information from GTO Reports, such that those documents that derive information from GTO Reports are themselves records of reports also subject to 31 U.S.C. § 5319 and therefore properly withheld at least in part under Exemption 3"), 48-55, Ex. 1; *see also* Mot. at 5, 9, n.7.  As such, the BSA specifically exempts the content of the records at issue here — Plaintiffs have failed to address the language of 31 U.S.C. § 5319 necessary to argue otherwise.

Lest there be any doubt, courts have applied Exemption 3 under 31 U.S.C. § 5319 to find records of reports properly withheld.  Tellingly Plaintiffs fail to address this in their Opposition.  *See Ortiz v. United States Dep't of Just.*, 67 F. Supp. 3d 109, 118 (D.D.C. 2014) (the Court considered a "'21–page teletype'" that included 'information obtained from systems maintained by [FinCEN] and information *derived* from records filed pursuant to the [BSA],'" conclude[ing] that the teletype [was] properly withheld under Exemption 3 because it [was] *derived* from reports generated pursuant to the [BSA], and the Act deems such reports exempt from disclosure under the FOIA" (emphasis added));  *Berger v. IRS*, 487 F. Supp. 2d 482, 496, 498 (D.N.J. 2007) (the IRS withheld numerous pages of a confidential informant file that contained information regarding certain cash transactions provided by FinCEN and "[t]he IRS [later] determined that information in those 22 pages not *derived or extracted directly from [BSA] reports* could be segregated from exempt information, and the IRS therefore disclosed [the non-BSA] portions of CI file pages" (emphasis added));[12]  *Small v. I.R.S.*, 820 F. Supp. 163, 166 (D.N.J. 1992) (the Court "grant[ed] summary judgment to the IRS pursuant to FOIA exemption (3)" as to seven pages that the IRS contended were exempt pursuant to 31 U.S.C. § 5319 because those "pages *contain* information from the Treasury Enforcement Communications System ('TECS') and the Currency and Banking Retrieval System ('CBRS')" (emphasis added)); *see also Turner*, 2017 WL 1106030 at *8.[13]

---

[11] Plaintiffs cite *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976) for the proposition that the "ambit [of] an exemption must be construed narrowly."  Opp. at 11 (emphasis omitted).  To be clear, FinCEN argues that "records of reports" — as specifically stated in 31 U.S.C. § 5319 — are within the "ambit" of the BSA such that the BSA authorizes their withholding,  Moreover, Exemption 3 was not even at issue in *Rose. Rose*, 425 U.S. at 361.

[12] As explained in the First Declaration of Mr. Mosier, including Exhibit 1, which is the *Vaughn* Index, there is no such segregable information in this case.  *See* First Mosier Decl. ¶¶ 26, 47-55, Ex. 1.

[13] Courts have also found that withholding derived information is appropriate under Exemption 3 in cases not related to the BSA.  *See Winter v. NSA*, 569 F. Supp. 545, 546-48 (S.D. Cal. 1983) (recognizing 18

And the cases Plaintiffs cite for their argument that the BSA does not require withholding under Exemption 3 — which it does — are either inapposite or in fact support FinCEN's position. For example, the "veil of secrecy" quotation from *Senate of Puerto Rico v. US. Dep't of Just.*, 823 F.2d 574, 582 (D.C. Cir. 1987) concerns Fed. R. Crim. P. 6(e), which is about recording and disclosing during grand jury proceedings. Opp. at 12:6-7. And in *Bloomer*, 870 F. Supp. 2d at 365, the Court found "that DHS ha[d] properly asserted Exemption 3" as to "information that has been reported by financial institutions to the Treasury Department, and [was] subsequently shared with other government agencies" pursuant to the BSA. Opp. at 11-12; *see* Mot. at 8.

Moreover, Plaintiffs' unsupported assertion that withholding of information derived from GTO Reports would grant FinCEN "impermiss[ible] . . . 'discretion on the issue'" again ignores the plain language of the statue. Opp. at 12:19-20. 31 U.S.C. § 5319 limits such withholdings to "records of reports" — which is exactly what FinCEN has done. *See* Mosier Decl. 1 at ¶¶ 26, 39, 48-55, Ex. 1. Plaintiffs' reliance on *Turner* for the proposition that there are "BSA records" and "non-BSA records" misses the point. *Turner*, 2017 WL 1106030 at *6-7 (discussing the adequacy of search for "non-BSA" records where all BSA records were categorically excluded from the search). 31 U.S.C. § 5319 applies to BSA reports and records of those BSA reports — non-BSA records are irrelevant here.

Finally, Plaintiffs' argument that disclosure would advance the purpose of the Bank Secrecy Act including 31 U.S.C. § 5319, but it is also refuted by the Declarations of Mr. Mosier. *See* Opp. at 13:1-5 (citing Park Decl. ¶ 11 and Farah Decl. ¶ 16); Mosier Decl. 1 ¶¶ 19-35; Mosier Decl. 2 ¶¶ 5, 8. As Mr. Mosier explained: "[t]he rationale for requiring that GTO information derived from BSA Reports be kept confidential is obvious: if it were released, investigations would be immediately jeopardized, reporting financial institutions and their employees would be at risk, and both criminals and those who facilitate their activities within the global financial system would gain an invaluable advantage in knowing what is

U.S.C. § 798 as statute qualifying under Exemption 3, and concluding that agency properly protected "a document originated by . . . NSA[] which consisted of information derived exclusively from the interception of foreign electromagnetic signals" where "release . . . would expose the NSA's intelligence functions and activities"); *McRae v. U.S. Dep't of Just.*, 869 F. Supp. 2d 151, 163 (D.D.C. 2012) (noting that "[t]he Consolidated Appropriations Act of 2005 is a statute on which an agency may rely for purposes of Exemption 3" and finding that agency properly withheld in full "information derived from the Firearms Trace System Database" pursuant to Exemption 3) (internal citation omitted).

known about them and their behavior—and how it became known." Mosier Decl. 1 ¶ 28. The Declarations of Ms. Farha and Dr. Park do not consider FinCEN or the BSA specifically, and therefore fail to address the specific purpose of FinCEN and the BSA with respect to combatting money laundering. *See* Opp. at 13:3-5; *see generally* Park Decl; Farah Decl. In view of Ms. Mosier's Declarations, which are unrebutted in so far as FinCEN and the BSA are specifically concerned, Plaintiffs are incorrect — disclosure would not advance the purpose of the BSA. Mosier Decl. 2 ¶¶ 5, 8; Mosier Decl. 1 ¶¶ 19-35.

### D. The foreseeable harm standard does not require disclosure of any withheld information, and it does not apply to Exemption 3 at all

As an initial matter, the only Exemption Plaintiffs actually cite with respect to their foreseeable harm argument is Exemption 5 — Plaintiffs fail to allege any other asserted exemption does not meet the foreseeable harm standard.[14] Opp. at 9:4; *see* Opp. at 8:10-9:17. Moreover, withholdings per 31 U.S.C. § 5319 under Exemption 3 are statutorily exempt from the foreseeable harm standard. *See* 5 U.S.C. 552(a)(8)(A)(i)(II) (requiring withholding where "disclosure is prohibited by law"); *see also Rosenberg v. U.S. Dep't of Def.*, 342 F. Supp. 3d 62, 73, n.1 (D.D.C. 2018) (on reconsideration in part, 442 F. Supp. 3d 240 (D.D.C. 2020)) ("Information that is prohibited from disclosure or exempt from disclosure by law is not subject to discretionary disclosure and is therefore not subject to the foreseeable harm standard." (internal quotation marks and citation omitted)). As for the remainder of the exemptions, FinCEN has identified a foreseeable harm that will result from disclosure with respect to the interest the respective exemptions seek to protect — and Plaintiffs do not argue otherwise. *See* Mosier Del. 1 at ¶¶ ¶¶ 27, 28, 59, 60, 63-65, 74-76, 78-92, Ex. 1; Opp. at 8:10-9;17.[15]

### E. The information Plaintiffs assume exists and should be segregable would be the very information FinCEN seeks to withhold

Plaintiffs' arguments regarding segregability miss the mark. *See* Opp. at 9:18-10:16. The very "names and addresses" Plaintiffs assume exists and can be segregated — without support — would be part of very body of information FinCEN seeks to withhold as explained herein and its opening Motion — including pursuant to 31 U.S.C. § 5319. *See* Mot. at 20:4-26; *see also* Mosier Decl. 1 ¶¶ 47-92, Ex. 1.

---

[14] Foreseeable harm is discussed further with respect to Exemption 5 *infra*.
[15] Plaintiffs assertion that "FinCEN records have recently been published with no negative consequences" is unsupported by citation to authority regarding the consequences. Opp. at 9:14-17. Indeed, it is not clear how Plaintiffs could know what the "consequences" have been. Such unsupported speculation should not be considered.

Indeed, any such name and address information would be collected in GTO Reports — which Plaintiffs have stipulated are exempt — or contained in "records of reports" which would derive or extract any such information from GTO Reports.  *See* Mosier Decl. 1 ¶ 55; 31 U.S.C. § 5319.

### F.    Plaintiffs' reliance on superseded law and mischaracterizations do not change the fact that FinCEN has met the Exemption 7 threshold

Plaintiffs' mischaracterization of the record, as explained by Mr. Mosier in his Second Declaration, cannot change the fact that FinCEN's withholdings pass the threshold of Exemption 7.  *See* Mosier Decl. 2 at ¶¶ 35, 38-41 (explaining Plaintiffs' errors).  FinCEN does not "effectively concede that the records here do not qualify as law enforcement records."  Opp. at 13:21-22 (emphasis omitted).  Moreover, Plaintiffs' reliance on the wooden test in *Pratt v. Webster*, 673 F.2d 408 (D.C. Cir. 1982) is misplaced.  Specifically, in  *ACLU v. NSA*, No. 13-cv-9198, 2017 WL 1155910 (S.D.N.Y. Mar. 27, 2017), aff'd, 925 F.3d 576 (2d Cir. 2019) the court declined "to adopt the stringent standard set [in *Pratt*], explaining that Congress amended FOIA since the D.C. Circuit decided *Pratt*, removing a requirement that records be 'investigatory.'"  *Id*. at n.5 (internal quotation marks and citation omitted).  Accordingly, Plaintiffs' argument regarding the Exemption 7 threshold must be rejected.

In any event, FinCEN has in fact identified "particular individual[s] [and] particular incident[s] as the object of its investigations that go beyond "monitoring."  Opp. at 13:24-25; *see* Mosier Decl. 2 ¶ 41; Mot. at 10:21-11:19; Mosier Decl. 1 ¶¶ 66-69 (addressing the Exemption 7 threshold), 72 (referencing "prospective investigation into, and enforcement proceedings against, specific subjects that have been identified"), 74 (identifying "particular subjects involving particular transactions [who are] potential targets of grand jury investigation [and] the subject of a grand jury investigation"), 84 (regarding documents "compiled for law enforcement purposes" which if disclosed "would reveal techniques to support law enforcement investigations"), 85 (referencing "certain individuals").

Plaintiffs' argument that "FinCEN fails to show a rational nexus to law enforcement exists because it does not cite specific crimes or statutes that have been violated" and the cases Plaintiffs cite in support also miss the mark.  Opp. at 14:3-13.  Indeed, Plaintiffs themselves cite FinCEN's 2017 Advisory, FIN 2007-A003, which goes into great detail about the specific crimes and individuals that FinCEN has investigated, in part using GTOs.  *See* Opp. at 4:1-2 (citing "FIN 2007-A003"); Mosier Decl. 2 ¶ 32, 44,

Ex. 1.[16]  Moreover, as evidenced by the GTOs, part of FinCEN's law enforcement purpose is ensuring compliance with the GTOs themselves.  *See* Mosier Decl. 1 ¶ 32, Exs. 13-21; *see also id.*, Exs. 24-26.  In view of this extensive record, there can be no doubt that FinCEN meets the Exemption 7 threshold.

### G.    Plaintiffs ignore that the FinCEN has pointed to ongoing investigations such that Exemption 7(A) applies

Plaintiffs are incorrect that "there were no pending enforcement proceedings on ongoing investigations that would lead to such proceedings."  Opp. at 14:20-22.  As Mr. Mosier explained in his First Declaration, there are individuals who are the subject of an active grand jury investigation.  *See* Mosier Decl. 1 ¶ 74, Ex. 1 at Docs. #9, #10, #11 ("FinCEN has confirmed with the relevant law enforcement agencies that portion of these document involve . . . the subject of a grand jury investigation."); *see also* Mosier Decl. 2 ¶ 40 (further explaining Plaintiffs' error); *see* Mot. at 18:23-24.  Moreover, Plaintiffs' mischaracterization of cherry-picked quotations from Mr. Mosier's 50 page First Declaration as "conclusory" miss the mark.  Opp. at 15:14; *see* Mosier Decl. 1 ¶¶ 74, 75, 87, Exs. 24-26; *see also* Mosier Decl. 2 ¶ 41 (further explaining Plaintiffs' error).  Indeed, Mr. Mosier attached to his First Declaration three news articles detailing actual attempts at circumvention.  *See* Mosier Decl. 1 ¶¶ 87, Exs. 24-26.  Moreover, in the *Vaughn* Index (Mosier Decl. 1, Ex. 1) FinCEN explains how each document for which Exemption 7(A) is asserted could cause interference if disclosed.

The cases on which Plaintiffs rely are also inapplicable here.  *Lawyers' Comm. For Civ. Rights v. U.S. Dep't of Treasury*, No. 07-cv-2590-PJH, 2009 U.S. Dist. LEXIS 42327, at *25 (N.D. Cal. May 11, 2009) concerned the propriety of categorical assertion of Exemption 7(A) over all "Delisting Petitions," whereas in this case FinCEN has made a document by document showing.  *Id*. at 25; *see* Mosier Decl. 1, Ex. 1 (*Vaughn* Index making showing on a document-by-document basis).  The issue in *Lion Raisins, Inc. v. U.S. Dep't of Agric.*, 354 F.3d 1072 (9th Cir. 2004) is not what Plaintiffs' quotation would suggest, rather it was the use of *in camera* review.  Specifically, in that case, the District Court review a sealed

---

[16] There is no doubt Plaintiffs understand the statues at issue.  For example, Plaintiffs cite the introduction of the 2014 BSA/AML Examination Manual, https://bsaaml.ffiec.gov/docs/manual/01_Introduction /01.pdf, which provides that "[t]he 1992 Annunzio-Wylie Anti-Money Laundering Act strengthened the sanctions for BSA violations" and that "Title III of the USA PATRIOT Act is the International Money Laundering Abatement and Anti-Terrorism Financing Act of 2001 [which] criminalized the financing of terrorism and augmented the existing BSA framework."  *Id*. at 3-4; *see* Opp. at n.4.

declaration *in camera* and found that the "the law enforcement exemption was properly invoked in [that] case." *Id*. at 1082. Lion challenged the factual basis for the Court's determination. *Id*. The 9th Circuit held that the record must contain more public information, but emphasized it was "not imply[ing] that the government must disclose facts that would undermine the very purpose of the withholding" — as Plaintiffs seems to suggest FinCEN must now. *Id*. at 1084. In *ACLU v. FBI*, No. 12-cv-3728-SI, 2013 WL 3346845, at *7 (N.D. Cal. July 1, 2013) the issue was that the FBI did not state "how releasing each of the withheld documents would interfere" — which FinCEN has done here. *Id*. at *7; *see* Mosier Decl., Ex. 1. And the full quotation from *Raimondo v. FBI*, No. 13-cv-2295-JSC, 2016 U.S. Dist. LEXIS 61958, at *19 (N.D. Cal. May 10, 2016), requires only that the Defendant's "assertions must be sufficiently specific to allow Plaintiffs and the Court to evaluate the claimed exemption" — such as those provided by FinCEN here.[17]

## H. Plaintiffs' attempt to conflate GTOs with records of reports fails to rebut FinCEN's assertion of Exemption 7(E)

Plaintiffs' attempt to conflate Geographical Targeting Orders ("GTOs"), with the reports received in response to those Orders, and the records which contain, derive, or extract information from those reports, along with Plaintiffs' mischaracterization of Mr. Mosier's First Declaration, belie the argument that Exemption 7(E) does not apply. Many but not all Orders (i.e. GTOs) themselves are public — the Orders themselves are not at issue here and many have been attached as exhibits. Mosier Decl. 1 ¶ 32, Exs. 13-21. GTO Reports (which are one type of BSA Report) are not at issue here either — Plaintiffs have stipulated to that. *See* D.I. 23. The ***records*** of GTO Reports that are at issue "analyze and discuss BSA Reports." Mosier Decl. 1 ¶ 91; *se* Mosier Decl. 2 ¶¶ 38-39. FinCEN "analyz[es] [BSA Reports] using sophisticated non-public techniques." Mosier Decl. 1 ¶ 18. Notably, "the spreadsheet [in which Plaintiffs are chiefly interested] matches and cross-references information drawn from fields appearing in BSA Reports—GTO Reports and SAR reports—and specifically details FinCEN's techniques for compiling information regarding BSA Reports in connection with identifying potential criminal finance." Mosier Decl. 1 ¶ 85. "[T]he techniques that FinCEN uses to analyze that data are themselves confidential

---

[17] Plaintiffs' assertion that "BSA records (known as SARS), . . . were recently published without causing an obvious interference" is unsupported by citation to authority regarding interference. Opp. at n.13. Indeed, it is not clear how Plaintiffs could know if there was any interference. Such unsupported speculation should not be considered.

1   and not known to the public." Mosier Decl. 1 ¶ 22. The records of reports at issue are also unique. *See*

2   Mosier Decl. 1 ¶¶ 84-92; *see also* Mosier Decl. 2 ¶¶ 35, 43 (responding to Opp. at 19:14, "[i]n no way

3   then can . . . GTO Reports . . . reasonably be described as 'formulaic'").

4           Critically, Plaintiffs fail to address *Yunes v. U.S. Dep't of Justice*, 2016 WL 4506971, at *7 (D.D.C.

5   Aug. 26, 2016), which recognized that FinCEN's "specific methodolog[ies]—the details of which have

6   not been publicly disclosed . . . [are] sufficient to justify the use of Exemption 7(E) for the information

7   withheld to protect the non-public methodology." Nor do Plaintiffs respond to FinCEN's argument that

8   Exemption 3 applies to all the same documents and most of the same pages as 7(E) because all of the

9   record of reports take information from BSA Reports, and analyze it for law enforcement purposes using

10  FinCEN's non-public law enforcement techniques and procedures. *See* Mosier Decl. 1 ¶ 84.

11          Instead, Plaintiffs cite case law to advance arguments focused on the Orders themselves. *See* Opp.

12  at 19;12-13 (citing law to argue 7(E) does not apply to the Orders because they are "simple forms"); 19:17-

13  18 (citing law to argue 7(E) does not apply to the Orders because they are "generally known to the public").

14  But that misses that the Orders themselves are not at issue. Plaintiffs reliance on *ACLU of N. Cal.*, 880

15  F.3d 473 is also off the mark. *See* Opp. 19:7-9. In that case, the "USABook, an internal DOJ resource

16  manual," was at issue. *Id*. at 479. Accordingly, the distinction drawn there was entirely within the context

17  of a manual, and pages which might describe a "means" as opposed to an "investigation." *Id*. at 491

18  (citing *Hamdan v. U.S. Dep't of Just.*, 797 F.3d 759, 777-78 (9th Cir. 2015). As explained further in

19  *Hamdan*, 797 F.3d at 777-78, "techniques that, if known, could enable criminals to educate themselves

20  about law enforcement methods . . . impl[y] a specific means of conducting surveillance [protected under

21  Exemption 7(E), but] records . . . claiming that they reveal the satellite surveillance of a particular place

22  would be an ***application*** of a known technique" not protected under 7(E). (emphasis original) (citation

23  omitted). The records at issue here are therefore within 7(E). *See* Mosier Decl. 1 ¶¶ 87-89, Exs. 24-26.

24  **I.      Exemption 6 applies to information identifying career level FinCEN employees and**
           **Plaintiffs do not argue otherwise**

25          Plaintiffs' assumption that "[a] record that simply reveals names and addresses connected to a

26  business entity should not qualify as a 'similar record'" ignores the nature of the records of reports at

27  issue. Opp. at 16:16-17. As explained extensively in Mr. Mosier's First declaration and the *Vaughn*

28

Index, FinCEN properly asserted Exemption 6 in narrowly withholding information identifying career level FinCEN employees and other federal law enforcement personnel. *See* Mosier Decl. 1 ¶¶ 61-65, Ex. 1 at Doc. # 2-6, 11-12, 14-20; *see also* Mot. at 17:11-18:7. As explained in the First Declaration of Mr. Mosier — which Plaintiffs do not address, these "personnel have a privacy interest . . . [b]ecause of the potentially significant implications of enforcement actions taken by FinCEN . . . persons targeted for these actions could bear significant ill will toward the FinCEN personnel that participated in the investigations and enforcement proceedings . . . [and] these FinCEN personnel . . . could become targets of harassing inquiries for unauthorized access to this information." Mosier Decl. 1 ¶ 63;[18] *see also Waterman v. IRS*, 288 F. Supp. 3d 206, 211 (D.D.C. 2018) (holding that work telephone numbers and email addresses of IRS employees could be withheld because release could cause harassment or threats to employees); *Lahr v. NTSB*, 569 F.3d 964, 977 (9th Cir. 2009) (holding that FBI agents have privacy interest in withholding their names because release of identity could subject agents "to unwanted contact by the media and others . . . skeptical of the government's" investigation of TWA Flight 800). Plaintiffs' argument and cited authority is not responsive to FinCEN's basis for withholding this information. As such, Plaintiffs have failed to rebut FinCEN's bases for withholding under Exemption 6.

### J. Plaintiffs' arguments regarding Exemption 7(C) are not responsive to FinCEN's reasons for withholding, such that FinCEN's application of 7(C) is unrebutted

Plaintiffs' argument that "beneficial ownership information" has been withheld under Exemption 7(C) ignores the two reasons why FinCEN withheld this information. Opp. at 17:11; Mot. at 15:10-17:10; Mosier Decl. 1 ¶¶ 77-83, Ex. 1. First, FinCEN has withheld the names of federal law enforcement officers as under Exemption 6. *See* Mosier Decl. 1 ¶¶ 79-81. Plaintiffs do not appear to take issue with this withholding. Second, FinCEN has withheld the personally identifying information of third party individuals only in so far as they are listed in records compiled for law enforcement purposes that would associate those third parties with the investigation of criminal financial activity. *See* Mosier Decl. 1 ¶¶ 82-83. The issue is not whether "beneficial ownership" is "intimate information" as Plaintiffs suggest. Opp. at 17:7-8. Nor is there an issue with "***possible*** corruption or undue influence." Opp. at 18:2 (emphasis original). Indeed, Plaintiffs' argument and cited authority fails to respond to FinCEN's reasons

---

[18] "The relevant personnel from other . . . agencies have similar privacy interests." Mosier Decl. 1 ¶ 64.

1    for applying 7(C) or distinguish any of the law on which FinCEN relies.  *See* Opp. at 17:7-18:19.  As such,

2    Plaintiffs have failed to rebut FinCEN's bases for withholding under Exemption 7(C).

3         **K.**     **FinCEN has identified foreseeable harms that would result if the Exemption 5 documents were disclosed, and sufficiently explained the decision making processes at issue to justify withholding under Exemption 5**

5         The only exemption Plaintiffs specifically cite with respect to their argument FinCEN has failed

6    to identify a foreseeable harm caused by disclosure is Exemption 5.  Opp. at 9:4; *see* Opp. at 8:10-9:17.

7    FinCEN, however, provided detailed explanations of the harms expected if the Exemption 5 documents

8    were released in the *Vaughn* Index, including that the ["r]elease of the[] [withheld] drafts would injure the

9    decision making process by having a chilling effect on frank discussions involving staff and/or agency

10   decision makers."  *See* Mosier Decl. 1, Ex. 1 (identifying additional harms, generally related to

11   discouraging candid discussion); *see also id.* at ¶¶ 56-60 (identifying harms if documents withheld under

12   Exemption 5 were released).  Indeed, the harms identified by FinCEN all fall within the ambit of the

13   deliberative process privilege under Exemption 5 as required by this Circuit, which "applies [Exemption

14   5] only if disclosure of the materials would expose an agency's decision-making process in such a way as

15   to discourage candid discussion within the agency."  *Sierra Club, Inc. v. U.S. Fish & Wildlife Serv.*, 925

16   F.3d 1000, 1011 (9th Cir. 2019), cert. granted, 140 S. Ct. 1262 (2020); *see* Opp. at 20:5-6 (citing same).

17        Moreover, where FinCEN has applied Exemption 5, it has provided explanation about the

18   underlying decision making process.  *See* Mosier Decl. 1. ¶¶ 56-60; Ex. 1 at Doc. # 6-8, 14-61.  And where

19   summaries containing factual material are also withheld, FinCEN has explained that the "factual

20   summaries of aggregate and individual BSA reports . . . are intertwined with FinCEN's expert opinion on

21   the significance of the data, such as trends and patterns."  Mosier Decl. 1, ¶¶ 59 (explaining this factual

22   information would be "so fragmented as to be meaningless" if segregated), Ex. 1 at Doc. # 7, 8.

23   Accordingly, the very law Plaintiffs cite supports a finding that if the "factual portions of the documents

24   are 'so interwoven with the deliberative material that they are not segregable'" they are properly withheld.

25   *Kowack v. USFS*, 766 F.3d 1130, 1135 (9th Cir. 2014).

26   **III.**    **CONCLUSION**

27        For the foregoing reasons, and the reasons provided in FinCEN's Opening Motion for Summary

28   Judgment, FinCEN's Motion should be granted, and Plaintiffs' Cross Motion should be denied.

DATED: November 5, 2020                    Respectfully submitted,

                                           DAVID L. ANDERSON
                                           United States Attorney

                                           */s/ J. Wesley Samples*
                                           J. WESLEY SAMPLES
                                           Assistant United States Attorneys

                                           Attorneys for Defendants