D. Victoria Baranetsky (Cal. Bar No. 311892)
THE CENTER FOR INVESTIGATIVE REPORTING
1400 65th St., Suite 200
Emeryville, CA 94608
vbaranetsky@revealnews.org
Telephone: (510) 982-2890

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| THE CENTER FOR INVESTIGATIVE REPORTING and AARON GLANTZ, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF TREASURY, <br><br> Defendant. | Case No. 3:19-cv-8181-JCS <br><br> **PLAINTIFFS' REPLY FOR SUMMARY JUDGMENT** <br><br> Date: January 8, 2021 <br> Time: 9:30 AM <br> Place: Courtroom F, 15th Floor |

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ....................................................................................................................... 2

    A. The Requested Beneficial Ownership Information Is Improperly Withheld Under Exemption 3, As It Is Not "Specifically Exempt" Anywhere Under 31 U.S.C. § 5319, Even As A "Record[] of Report". ........................................................................................................... 2

    B. FinCEN Improperly Withholds Information in the Public Domain and Applies the Wrong Standard Applicable Only in National Security Cases. ............................................................. 7

    C. FOIA Requires At Least Partial Disclosure Because Portions of the Records Can Be Reasonably Segregated. ............................................................................................................ 9

    D. FinCEN Has Improperly Withheld Records Under Exemption 7 Because It Has Not Met the Threshold Requirement Under Pratt. ................................................................................... 10

    E. FinCEN Has Improperly Withheld Records Under Exemption 7(A) Because It Does Not Enumerate A Single Concrete Investigation. ......................................................................... 11

    F. FinCEN Has Improperly Withheld Records Under Exemption 7(E). ................................ 13

    G. FinCEN Failed to Carry Its Burden as to Exemption 5 and Foreseeable Harm. ................ 13

    H. Exemptions 6 and 7(C) Do Not Cover Known Identities or Official Misconduct. ............. 14

III. CONCLUSION ................................................................................................................ 15

**TABLE OF AUTHORITIES**

**CASES**

*100Reporters LLC v. U.S. DOJ*, 248 F. Supp. 3d 115 (D.D.C. 2017) .......................................... 13
*ACLU N. Cal. v. U.S. DOJ*, 880 F.3d 473 (9th Cir. 2018) ............................................................. 8
*ACLU of N. Cal. v. FBI*, 881 F.3d 776 (9th Cir. 2018) ................................................................ 13
*Animal Legal Def. Fund v. FDA*, 836 F.3d 987 (9th Cir. 2016) .................................................. 18
*Berger v. IRS*, 487 F. Supp. 2d 48 (D.N.J. 2007) .................................................................. 6, 12
*Bloomer v. U.S. Dep't of Homeland Sec.*, 870 F. Supp. 2d 358 (D. Vt. 2012) .............................. 8
*California Bankers Ass'n v. Shultz*, 416 U.S. 21 (1974) ............................................................... 5
*Citizens for Responsibility & Ethics in Wash. v. U.S. DOJ,* No. 11-754 (GK), 2012 WL 45499 (D.D.C. Jan. 10, 2012) .............................................................................................................. 17
*Citizens for Responsibility & Ethics in Wash. v. U.S. DOJ*, 658 F. Supp. 2d 217 (D.D.C. 2009) .. 14, 15
*Continental Stock Transfer & Trust Co. v. SEC*, 566 F.2d 373 (2d Cir. 1977) ............................. 10
*Cottone v. Reno*, 193 F.3d 550 (D.C. Cir. 1999) ..................................................................... 8, 9
*Ctr. For Public Integrity v. Dep't of Energy*, 191 F. Supp. 2d 187 (D.D.C. 2002) ......................... 4
*Davis v. U.S. DOJ*, 968 F.2d 1276 (D.C. Cir. 1992) ..................................................................... 9
*EFF v. ODNI*, 639 F.3d 876 (9th Cir. 2010) ............................................................................... 18
*FBI v. Abramson*, 456 U.S. 615 (1982) ....................................................................................... 17

*Fitzgibbon v. CIA*, 911 F.2d 755 (D.C. Cir. 1990) .................................................................... 9
*Greenberg v. FDA*, 803 F.2d 1213 (D.C. Cir. 1986) ............................................................ 9, 11
*Hamdan v. U.S. DOJ*, 797 F.3d 759 (9th Cir. 2015) ................................................................ 12
*Hodes v. U.S. Dep't of Treasury*, 967 F. Supp. 2d 369 (D.D.C. 2013) ..................................... 4
*Inner City Press/Cmty. on the Move v. Bd. of Governors of Fed. Reserve Sys.*, 463 F.3d 239 (2d Cir. 2006) .................................................................................................................................. 11
*Johnson v. Exec. Office of U.S. Attorneys*, 310 F.3d 771 (D.C. Cir. 2002) .............................. 16
*Kowack v. USFS*, 766 F.3d 113 (9th Cir. 2014) ....................................................................... 16
*Lahr v. NTSB*, 569 F.3d 964 (9th Cir. 2009) ............................................................................ 17
*Lawyers' Comm. For Civil Rights v. U.S. Dep't of Treasury*, 2008 WL 4482855 (N.D. Cal. Sept. 30, 2008) .................................................................................................................................. 17
*Lion Raisins v. U.S. Dep't of Agric.*, 354 F.3d 1072 (9th Cir. 2004) ....................................... 12
*McRae v. U.S. DOJ*, 869 F. Supp. 2d 151 (D.D.C. 2012) ......................................................... 7
*Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242 (D.C. Cir. 1977) ......................... 18
*Minier v. CIA*, 88 F.3d 796 (9th Cir. 1996) ............................................................................... 1
*NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 230 (1978) ............................................ 14
*Ortiz v. U.S. DOJ*, 67 F. Supp. 3d 109 (D.D.C. 2014) ......................................................... 6, 12
*Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143 (9th Cir. 2008) ...................................... 11
*Plumbers & Gasfitters Local Union No. 1 v. U.S. Dep't of the Interior*, No. 10-CV-4882 CBA, 2011 WL 5117577 (E.D.N.Y. Oct. 26, 2011) ........................................................................ 10
*Pratt v. Webster*, 673 F.2d 408 (D.C. Cir. 1982) ................................................... 10, 13, 14, 15
*Ratzlaf v. United States*, 510 U.S. 135 (1994) .......................................................................... 3
*Reporters Comm. for Freedom of the Press v. U.S. DOJ*, 489 U.S. 749 (1989) ....................... 3
*Reporters Comm. for Freedom of the Press v. U.S. DOJ*, 816 F.2d 730 (D.C. Cir. 1987) ....... 3
*Reporters Comm. for Freedom of the Press v. U.S. DOJ*, 831 F.2d 1124 (D.C. Cir.1987) ...... 3
*Rojas v. FAA*, 941 F.3d 392 (9th Cir. 2019) ............................................................................ 18
*Rosenberg v. U.S. Dep't of Def.*, 442 F. Supp. 3d 240 (D.D.C. 2020) .................................... 17
*Rosenfeld v. U.S. DOJ*, 57 F.3d 803 (9th Cir. 1995) ............................................................... 13
*Shapiro v. U.S. DOJ*, 893 F.3d 796 (D.C. Cir. 2018) .............................................................. 13
*Sierra Club Inc. v. USFWS*, 925 F.3d 1000 (9th Cir. 2019) .................................................... 16
*Small v. IRS*, 820 F. Supp. 163 (D.N.J. 1992) ........................................................................... 6
*Sutton v. IRS*, No. 05 C 7177, 2007 WL 30547 (N.D. Ill. Jan. 4, 2007) .................................. 12
*Tax Analysts v. IRS*, 294 F.3d 71 (D.C. Cir. 2002) .................................................................. 13
*Turner v. U.S. Dep't of Treasury*, No. 15-CV00007-DAD-SKO, 2017 WL 1106030 (E.D. Cal. Mar. 23, 2017) ..................................................................................................................... 7, 8
*United Am. Fin., Inc. v. Potter*, 531 F.Supp.2d 29 (D.D.C. 2008) .......................................... 17
*United States ex rel. Bennett v. Biotronik, Inc.*, 876 F.3d 1011 (9th Cir. 2017) ....................... 3
*United States v. Miller*, 425 U.S. 435 (1976) ................................................................. 2, 12, 18
*United Techs. Corp., Pratt & Whitney Aircraft Group v. Marshall*, 464 F. Supp. 845 (D. Mass. 1978) ...................................................................................................................................... 10
*Watkins v. U.S. Bureau of Customs & Border Prot.*, 643 F.3d 1189 (9th Cir. 2011) ........ 10, 11
*Willamette Industries, Inc. v. United States*, 689 F.2d 865 (1982) .......................................... 11
*Winter v. NSA*, 569 F. Supp. 545 (S.D. Cal. 1983) .................................................................... 7
*Wolf v. CIA*, 473 F.3d 370 (D.C. Cir. 2007) ............................................................................ 10

**FEDERAL STATUTES**

31 U.S.C. § 5312 ........................................................................................................................ 3

| | |
|---|---|
| 31 U.S.C. § 5314(a) | 3 |
| 31 U.S.C. § 5314(c) | 3 |
| 31 U.S.C. § 5318(a)(3) | 3 |
| 31 U.S.C. § 5318(a)(4) | 3 |
| 31 U.S.C. § 5318(ak) | 3 |
| 31 U.S.C. § 5318(l)(2)(B) | 3 |
| 31 U.S.C. § 5319 | 2, 4, 5 |
| 31 U.S.C. § 5326(a) | 3 |
| 5 U.S.C. § 552 | 9 |
| 5 U.S.C. § 552(a)(4)(B) | 10 |
| 5 U.S.C. § 552(b)(3) | 2, 4, 6, 7 |
| 5 U.S.C. § 552(b)(5) | 13, 14 |
| 5 U.S.C. § 552(b)(6) | 14 |
| 5 U.S.C. § 552(b)(7) | 11 |
| 5 U.S.C. § 552(b)(7)(A) | 12, 13 |
| 5 U.S.C. § 552(b)(7)(C) | 14 |
| 5 U.S.C. § 552(b)(7)(E) | 13 |
| Consolidated Appropriations Act of 2005, Pub. L. No. 108–447 (2004) | 6 |
| National Security Agency Act of 1959, Pub. L. 86–36 | 6 |

**LEGISLATIVE MATERIALS**

| | |
|---|---|
| 1970 U.S.C.C.A.N. 4394 | 4 |
| H.R. Rep. No. 91–975 | 4 |
| *House Passes Maloney Bill to Crack Down on Anonymous Shell Companies*, Rep. Carolyn B. Maloney Newsroom (Oct. 22, 2019) https://maloney.house.gov/media-center/press-releases/house-passes-maloney-bill-to-crack-down-on-anonymous-shell-companies | 5 |

## I. INTRODUCTION

This case chiefly concerns a single document—a spreadsheet[1]—which FinCEN attempts to withhold. However, FinCEN cannot and does not justify withholding under any FOIA exemptions, as its arguments disregard basic rules of statutory interpretation as well as FOIA caselaw. *See Minier v. CIA*, 88 F.3d 796, 800 (9th Cir. 1996) (government bears "burden of proving the applicability of an exemption").

*First*, the spreadsheet falls far outside the scope of Exemption 3 and the Bank Secrecy Act ("BSA"), as this document cannot fairly be described as a "report" or a "record[] of reports." After largely arguing that the requested records are properly withheld as Geographic Targeting Order Reports (Gov. Br., Dkt. 29, at 8) (which they are not),[2] the Government now makes one last attempt in its reply to shoehorn the records within the BSA's ambit by pivoting to assert that its spreadsheet qualifies as a "record[] of reports."[3] This argument is similarly flawed, as the term "records of reports" actually refers to a narrow category of documents produced by third parties, such as banks and insurance companies, and then submitted to FinCEN. The term "records of reports" simply does not, as FinCEN argues, refer to derivative records subsequently created by the agency.

*Second*, even if the agency could wedge its justification for withholding under Exemption 3 or any other exemption, the requested information *must* be disclosed because it is information in the public domain. Although the Government tries to claim the public domain doctrine requires the information be identical and come from the same source as possessed by the Government, that exacting standard only applies in the national security context, not cases involving purportedly confidential information such as this one. Regardless, the requested information is not confidential,[4] and indeed is available in various public source materials.

---

[1] Listed as Doc. # 1 in the *Vaughn* index (Dkt. No. 29-3). The request also involves other records like emails, but Plaintiffs are chiefly concerned with the spreadsheet.

[2] "GTO Reports (which are one type of BSA Report) are not at issue here either . . . The ***records*** of GTO Reports that are at issue "analyze and discuss BSA Reports."" (Gov. Opp., Dkt. 33 at 14).

[3] In its initial response to CIR's request, FinCEN issued a *Glomar* response and asserted that the requested record could not even be acknowledged, a position it has since revoked.

[4] As the Supreme Court has explained, the "business records of the banks" do not qualify as "private papers." *United States v. Miller*, 425 U.S. 435, 440 (1976).

*Third*, even if *any* exemptions apply, the requested information must still be disclosed if it is reasonably segregable.

*Finally*, disclosure is also necessary because FinCEN relies on insufficiently generic declarations that fail to meet FOIA's specificity requirements and do not fulfill the agency's burden of showing that any of the remaining exemptions apply. Moreover, FinCEN's claims of additional exemptions remain specious at best. Its claim of Exemption 7 appears especially dubious, given that the agency still does not identify a single, concrete investigation that is ongoing. Accordingly, this Court should deny the Government's motion for summary judgment and grant CIR's cross motion.

**II. ARGUMENT**

**A. The Requested Beneficial Ownership Information Is Improperly Withheld Under Exemption 3, As It Is Not "Specifically Exempt" Anywhere Under 31 U.S.C. § 5319, Even As A "Record[] of Report".**

After principally arguing that the requested records are shielded by Exemption 3 and the Bank Secrecy Act as GTO "reports," 31 U.S.C. § 5319,[5] the Government pivots and attempts to justify withholding under the similarly inapplicable term "records of reports," *ibid.* (*See* Gov. Opp. 1, 7-11.) But as the statutory text and the legislative history show, the term "records of reports" only refers to records produced by private entities, like banks. The term does *not* refer to records generated by FinCEN itself. Because CIR does not seek third-party records but rather those produced by FinCEN, Exemption 3 does not apply. *See Reporters Comm. for Freedom of the Press v. U.S. DOJ*, 816 F.2d 730, 735 (D.C. Cir. 1987) ("[A] statute's actual words determine Exemption 3 applicability."), *modified*, 831 F.2d 1124 (D.C. Cir.1987) , *rev'd on other grounds*, 489 U.S. 749 (1989).

---

[5] This section of the BSA provides that "a report and records of reports are exempt from disclosure under section 552 of title 5, and may not be disclosed[.]" 31 U.S.C. § 5319. FinCEN first argued that derivative documents of reports were properly withheld under the BSA – an argument clearly disabused by Plaintiffs' opening brief because such records are not "specifically exempt" under the statute, as required by Exemption 3. FinCEN now turns to other statutory language.

First, the consistent language of the BSA makes clear that the term "records" refers to *primary source* records *kept by* private entities and *submitted to* FinCEN. It is a basic canon of construction that a "term appearing in several places in a statutory text is generally read the same way each time it appears." *Ratzlaf v. United States*, 510 U.S. 135, 143 (1994); *see also United States v. Castleman*, 572 U.S. 157, 174 (2014) (Scalia, J., concurring) (explaining that the "presumption of consistent usage" is "the rule of thumb that a term generally means the same thing each time it is used"); *United States ex rel. Bennett v. Biotronik, Inc.*, 876 F.3d 1011, 1018 (9th Cir. 2017) (similar). Although the BSA does not explicitly define "records," *see* 31 U.S.C. § 5312, its subchapter on "Records and Reports on Monetary Instruments Transaction" repeatedly uses the term to demarcate those documents submitted to FinCEN by private entities and individuals pursuant to the BSA's reporting requirements. For instance:

- The BSA gives the Treasury Secretary the authority to require "*records* [to be kept] when the resident, citizen, or person makes a transaction or maintains a relation for any person with a foreign financial agency," 31 U.S.C. § 5314(a) (emphasis added); to "examine any books, papers, *records*, or other data of *domestic financial institutions* or *nonfinancial trades* or *businesses* relevant to the recordkeeping or reporting requirements of this subchapter," *id.* § 5318(a)(3) (emphases added); and to "summon a financial institution or nonfinancial trade or business . . . or any person having possession, custody, or care of the reports and *records* required under this subchapter, to appear before the Secretary . . . and to produce such books, papers, *records*, or other data," *id.* § 5318(a)(4).
- Later, the BSA provides that a "*person* shall be required to disclose a *record* required to be kept under this section," *id.* § 5314(c) (emphasis added), and refers to "*Bank records* related to anti-money laundering programs," *id.* § 5318(k) (emphasis added).
- The BSA further imposes a duty on "*financial institutions* to implement . . . reasonable procedures for . . . maintaining *records* of the information used to verify a person's identity" in certain business contexts, which may then be included in reports to Treasury. *Id*. § 5318(l)(2)(B) (emphases added).
- Section 5326, titled "Records of certain domestic transactions," permits the Secretary to impose "additional recordkeeping" requirements on "any domestic financial institution or nonfinancial trade or business or group" and order such non-governmental actors to "file a report with respect to any [relevant financial] transaction" based on such records. *Id.* § 5326(a).[6]

---

[6] The BSA's implementing regulations—including those contained in the section on "Beneficial ownership requirements for legal entity customers"—similarly use the term "records" to refer to those maintained by non-governmental actors. *See* 31 C.F.R. § 1010.230(i) ("Recordkeeping. A *covered financial institution* must establish procedures for making and maintaining a *record* of all

From these statutory provisions, it is obvious that the phrase "records of reports[,]" as used in Section 5319, exclusively refers to raw records kept by *non-governmental* actors that accompany or underlie reports submitted *to* FinCEN, not—as the Government would expand the term—to mean internal documents subsequently created *by* FinCEN. Courts often limit Exemption 3's reach when interpreting analogous provisions in other statutes. *Cf. Hodes v. U.S. Dep't of Treasury*, 967 F. Supp. 2d 369, 374 (D.D.C. 2013) (limiting Exemption 3's reach when "proposals" in a statute only includes documents "submitted *by a contractor*" not "any record related to procurement") (emphasis added); *Ctr. For Public Integrity v. Dep't of Energy*, 191 F. Supp. 2d 187, 192–93 (D.D.C. 2002) (same).

Second, Congress made clear that its intent was for the term "records of reports" to mean documents kept by private actors. As the BSA Conference Report states, Congress' purpose was to "require insured *banks* to maintain certain *records*" and "to require that certain transactions in United States currency be reported to the Department of the Treasury." H.R. Rep. No. 91–975, at 1, *reprinted in* 1970 U.S.C.C.A.N. 4394, 4394 (emphasis added). The Conference Report does not at any point use the term "records" to refer to documents created by Treasury itself—the type of documents that CIR now seeks. *See generally id*. Instead, the Report makes various references to "records" like "photocopies of checks" and "records kept by banks of the identity of persons maintaining or authorized to act with respect to accounts therein." 1970 U.S.C.C.A.N. at 4400.[7]

---

information obtained under the procedures implementing paragraph (b) of this section." (emphases added)); *id.* § 1020.315(e)(10) (referring to "*records* maintained *by a bank*" (emphases added)).

[7] Additionally, it is worth noting that *California Bankers Association v. Shultz*, 416 U.S. 21 (1974)—the first Supreme Court case interpreting the BSA—noted the legislative history of the BSA was spurred by concerns of secrecy that similarly animate the investigation fueling this case. For instance, *Shultz* explained that Congress passed the BSA because it "was concerned about a serious and widespread use of foreign financial institutions, located in jurisdictions with strict laws of secrecy as to bank activity, for the purpose of violating or evading domestic criminal, tax, and regulatory enactments." *Id*. at 27. The Court goes on to quote a House Report that discussed the:
> serious and widespread use of foreign financial facilities located in secrecy jurisdictions for the purpose of violating American law. Secret foreign bank accounts and secret foreign financial institutions have permitted proliferation of 'white collar' crime; have served as the financial underpinning of organized criminal operations in the United States; have been utilized by Americans to evade income taxes, conceal assets illegally and purchase gold; have allowed Americans and others to avoid the law and regulations governing securities and exchanges; have served as essential ingredients in frauds including schemes to defraud the United States…; and have served as the cleansing agent for 'hot' or illegally obtained monies.

Third, FinCEN's argument also depends on a thinly reasoned line of cases, all of which are inapposite and none of which are binding on this Court. (*See* Gov. Opp. at 9.) For example, the Government relies on *Ortiz v. United States Department of Justice* for the proposition that materials "derived from reports generated pursuant to the Bank Secrecy Act" are "properly withheld," because "the Act deems such [underlying] reports exempt from disclosure under the FOIA. 67 F. Supp. 3d 109, 118–19 (D.D.C. 2014). But *Ortiz* based this holding exclusively on citations to other district court cases that provide even less analysis as to the meaning and scope of the term "records of reports." *See ibid.* Additionally, *Ortiz* dealt with transaction reports from private entities for Suspicious Activity Reports and Currency Transaction Reports (CTRs), not GTOs.[8] The other cases that the Government cites are similarly distinguishable. In *Berger v. IRS*, the court simply "accept[ed] the IRS's representation" withheld records "constitute[d] Bank Secrecy Act forms or information derived or extracted from Bank Secrecy Act reports," without any legal analysis of whether such derivative material fell within the scope of § 5319. 487 F. Supp. 2d 482, 496 (D.N.J. 2007).[9] *Small v. IRS* is similar, repeating only the text of § 5319 before ruling that "[s]ince this statute explicitly restricts the release of this information, the IRS must withhold this information from Small under FOIA." 820 F. Supp. 163, 166 (D.N.J. 1992). *Turner v. United States Department of the Treasury*, No. 15-CV00007-DAD-SKO, 2017 WL 1106030 (E.D. Cal. Mar. 23, 2017), also

---

> . . .The debilitating effects of the use of these secret institutions on Americans and the American economy are vast.

*Ibid.* The Court continued that the BSA's sweeping recordkeeping requirements were in essence the panacea to this problem.

Today, the new legal innovation of shell company property ownership is similarly analogous problem as it is a "serious and widespread" legal tool used to promote secrecy, evade laws, and conceal illegal acts. *See House Passes Maloney Bill to Crack Down on Anonymous Shell Companies*, Rep. Carolyn B. Maloney Newsroom (Oct. 22, 2019) https://maloney.house.gov/media-center/press-releases/house-passes-maloney-bill-to-crack-down-on-anonymous-shell-companies ("The illicit use of anonymous shell companies is one of the most pressing national security problems we currently face[.]"). Thus, disclosure of the requested information would appear to further support the purpose of the Act which battles secrecy.

[8] *Ortiz* and the other cases FinCEN cites for Exemption 3 are also meaningfully distinguishable, insofar as the requested information was not in the public domain. *Ortiz*, 67 F. Supp. 3d at 118 (stating "neither a financial institution nor the government may reveal to anyone involved in a transaction that a SAR has been filed").

[9] Regardless, those documents are distinguishable as they contained records of "cash transactions" submitted by private actors to Treasury in response to CTRs. *Ibid*.

fails to help the Government. There, the court acknowledged that "is certainly true that under the BSA, CTRs and other 'financial institution reports and records of reports of transactions involving the payment, receipt or transfer of United States coins and currency' are exempt from FOIA disclosure[,"] in its ruling withholding *bank statements from Bank of America*. *Id.* at \*7. *However*, *Turner* had nothing to say on whether subsequent materials created *by the Government*, too, are exempt. Beyond citations to these cases,[10] the Government provides no other reason to believe that the BSA properly covers FinCEN-created documents, like spreadsheets and emails, as "records of reports."

Finally, even if the Court were to accept the Government's improper reading of the phrase "records of reports" to encompass agency-produced materials, its Exemption 3 claim would still fail because its reading introduces impermissible "discretion" as to the disclosure of FinCEN records without "establish[ing] particular criteria for withholding," 5 U.S.C. § 552(b)(3). Such a reading would allow the agency to choose to which FinCEN-generated document that contained any reference, no matter how vague, to a BSA-mandated report submitted by a private actor,[11] a proposition which has already been rejected by this Court's sister-court. *See Turner*, 2017 WL 1106030, at \*7 (stating that the agency must have BSA and non-BSA records).

---

[10] The Government also relies on two cases—*Winter v. National Security Agency*, 569 F. Supp. 545 (S.D. Cal. 1983), and *McRae v. U.S. Department of Justice*, 869 F. Supp. 2d 151 (D.D.C. 2012)—for support for the observation that courts "have found that withholding derived information is appropriate under Exemption 3 in cases not related to the BSA." Gov. Br. at 9–10 n.13. However, those cases are inapposite as the cited withholding statutes are clearly distinct from the BSA, as they concern national security, and are absolute in their withholding language, and directed at the *content* of the exempted information. *Winter* explained that the National Security Agency Act of 1959 provided that "no law shall be construed to require the disclosure of the organization or '*any* function' of the NSA," 569 F. Supp. at 548 (quoting Pub. L. 86–36 (emphasis added)). *McRae* addressed the Consolidated Appropriations Act of 2005, Pub. L. No. 108–447 (2004), which prohibited "disclos[ur]e [of] *all of the contents* of the Firearms Trace System database . . . or *any* information[,]" 869 F. Supp. 2d at 163 (emphases added). In contrast, the BSA is not written so broadly, as it is an Act created to combat corporate secrecy and promote disclosure.

[11] Quixotically, the Government's interpretation would seem to permit disclosure of BSA-mandated records, like photocopies of checks and beneficial ownership forms. That is because the term "record" cannot hold two meanings at once, particularly given that "exemptions are to be construed narrowly." *Gov't Accountability Project v. FDA*, 206 F. Supp. 3d 420, 428 (D.D.C. 2016).

In conclusion, this Court should reject the Government's attempt to reinvent the phrase "records of reports," especially as the Government fails to engage with the consistent text of the statute, Congress's purpose in enacting it, and Exemption 3's stringent requirements. Here, the spreadsheet and other records, simply fall outside the BSA's scope. *See Bloomer v. U.S. Dep't of Homeland Sec.*, 870 F. Supp. 2d 358, 365 (D. Vt. 2012) ("Exemption 3…depends less on the detailed factual contents of specific documents; the sole issue [is] the inclusion of the withheld material within the statute's coverage") (internal quotation marks omitted)).

### B. FinCEN Improperly Withholds Information in the Public Domain and Applies the Wrong Standard Applicable Only in National Security Cases.

Even if information is exempt, as long as the specific type or category of information is in the "public domain," the material must be disclosed. *See, e.g.*, *ACLU N. Cal. v. U.S. DOJ*, 880 F.3d 473, 491 (9th Cir. 2018) (quoting *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999)). Here, the Government argues that the public domain doctrine does not apply because the publicly available names of beneficial owners are not "the *exact duplicate* of the information withheld by FinCEN[.]" (Gov. Opp. at 1–2 (emphasis added). In addition to being factually incorrect, the Government applies the wrong legal standard, one used exclusively in the national security context.

First, this Circuit and others regularly apply the public domain doctrine without requiring an exact facsimile of the record to be publicly available. *See Cottone*, 193 F.3d at 555 ("Yet by no means did [the D.C. Circuit in *Davis*] purport to establish a uniform, inflexible rule requiring every public-domain claim to be substantiated with a hard copy simulacrum of the sought-after material."); *Davis v. U.S. DOJ*, 968 F.2d 1276, 1280 (D.C. Cir. 1992) (explaining that courts have not adopted a "uniform, inflexible rule requiring every public-domain claim to be substantiated with a hard copy . . . of the sought-after material.") Instead, the public domain doctrine requires only that the same *type of information* and level of specificity be disclosed if already publicly available. *See Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990) ("[T]he information requested must be *as specific* as the information previously released."). Courts also do not require the public domain information to be derived from the same source. *See Greenberg v. FDA*, 803 F.2d 1213, 1217-1218 (D.C. Cir. 1986); *cf.* Gov. Opp. at 9 (arguing FinCEN's "sources of data collected" are different).

For instance, in *Greenberg*, the D.C. Circuit held that information generally available by cross-referencing sources (as is the case here) must be disclosed under the public domain doctrine. *Id*. at 1218. The disputed information in *Greenberg* was a CAT scan manufacturer's list of customers, *id*. at 1217, and the D.C. Circuit reversed the grant of summary judgment to the agency because of the availability of the information elsewhere, even though it was dispersed in other sources and not yet collected nor enumerated, *ibid*. In fact, the D.C. Circuit reasoned that because plaintiffs had shown that "a customer list could be reconstructed through one of several methods," the public domain doctrine was implicated as "such a list might well provide a close facsimile" of the requested records. *Id*. at 1218.

This more flexible standard for the doctrine has been employed by many courts, particularly in cases where the information is withheld for reasons of confidentiality, rather than national security. *See Continental Stock Transfer & Trust Co. v. SEC*, 566 F.2d 373, 375 (2d Cir. 1977) (disclosing information under the doctrine because "almost all" of the confidential information sought was publicly available); *United Techs. Corp., Pratt & Whitney Aircraft Group v. Marshall*, 464 F. Supp. 845, 854 (D. Mass. 1978) (disclosing information under the doctrine because "much of the [confidential] information" was already available to competitors); *Plumbers & Gasfitters Local Union No. 1 v. U.S. Dep't of the Interior*, No. 10-CV-4882 CBA, 2011 WL 5117577, at *3 (E.D.N.Y. Oct. 26, 2011) ("[T]he information they claim is confidential has already been disclosed, at least insofar as it could cause competitive harm.").

In contrast, in cases of national security, courts require an exacting standard of precise duplication for national safety reasons. But even in those cases, circuit courts around the country acknowledge the more stringent standard is uniquely applied in that context only. *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007) ("The insistence on exactitude recognizes . . . the Government's vital interest in information relating to *national security and foreign affairs*."); *see also Watkins v. U.S. Bureau of Customs & Border Prot*., 643 F.3d 1189, 1197–98 (9th Cir. 2011) (same). As the Ninth Circuit noted in *Watkins*, in cases outside the national security context, a requester need not demonstrate that the information be "preserved in a 'permanent public record.'" *Id*. at 1197. The

Ninth Circuit further elaborated that this requirement of exactitude has only been applied in cases "grappl[ing] with requests for sensitive information involving high-level criminal investigations or matters of national security." *Ibid.* Thus, for example, the standard may be satisfied by newspaper accounts containing quotes from tapes played during trial, constituting a "permanent public record" of those specific portions of the tapes. *Ibid.* Indeed, the Second Circuit has explained that a requester meets this element by identifying a regulation that requires the information to be made publicly available, as was done here. *See Inner City Press/Cmty. on the Move v. Bd. of Governors of Fed. Reserve Sys.*, 463 F.3d 239, 249 (2d Cir. 2006).

In this case, the public domain doctrine squarely applies because much of the *exact* information is public under the local and international regulations[12] previously cited. And to the extent that a discrete subset of the requested information is not already public, reporters could compile that information from a multitude of sources—as Plaintiffs have previously shown through published newspaper accounts identifying beneficial owners—which is sufficient for requiring disclosure under the doctrine. *See Greenberg*, 803 F.2d at 1217. Thus, by identifying laws requiring disclosure of this *type of information* and by showing that such information could be reconstructed into a "close facsimile," Plaintiffs have more than sufficiently invoked the public domain doctrine.

### C. FOIA Requires At Least Partial Disclosure Because Portions of the Records Can Be Reasonably Segregated.

Under FOIA, "the agency cannot justify withholding an entire document simply by showing that it contains *some* exempt material." *Willamette Industries, Inc. v. United States*, 689 F.2d 865, 867 (1982). "The burden is on the agency to show that all reasonably segregable portions have been disclosed," *Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1148 (9th Cir. 2008), and it is reversible error for the district court "to simply approve" the government's bare assertions without "entering a finding on segregability," *Hamdan v. U.S. DOJ*, 797 F.3d 759, 779 (9th Cir. 2015).

---

[12] The Government states that these laws have no impact but cites no cases for this proposition. (Dkt. 33–1 at 2, n.1 (stating "the reporting obligations of foreign jurisdictions are irrelevant to the arguments that Plaintiffs make regarding the applicability of the Freedom of Information Act, 5 U.S.C. § 552").) In any event, there is no legal justification provided for why this public information would be limited simply because it was made public through international laws.

Here, FinCEN offers a conclusory argument as to why it failed to segregate the publicly available names and addresses of beneficial owners, merely stating that this data is "part of very body of information FinCEN seeks to withhold." (Gov. Opp. at 11.) In its reply, the Government has not cited to a single case to explain how it has met its segregability requirement nor has it specifically addressed the segregability of already public information. *Cf. Ortiz*, 67 F. Supp. 3d at 125 ("So important is this [segregability] requirement that before approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld.") (cleaned up). While the Government points to *Berger* and other cases to assert that the names of beneficial owners are confidential—and therefore presumably not segregable—the Supreme Court has previously denied that assertion to be true. *Compare Miller*, 425 U.S. at 442 (stating the lack of "legitimate expectation of privacy concerning the information kept in bank records was assumed by Congress in enacting the Bank Secrecy Act") *with Berger*, 487 F. Supp. 2d at 495 ("Section 6103 provides that "Returns and return information shall be confidential").

Moreover, unlike cases where no segregability is done because confidential information could be deduced by the disclosure of segregable information, here the Government has not in any way shown that a similar result could occur through the disclosure of basic information concerning beneficial owners. *Cf. Sutton v. IRS*, No. 05 C 7177, 2007 WL 30547, at *4 (N.D. Ill. Jan. 4, 2007) ("[N]one of the information on these pages can be segregated out because disclosure of the IDRS information in its entirety would necessarily disclose the DIF scores.").[13]

**D.    FinCEN Has Improperly Withheld Records Under Exemption 7 Because It Has Not Met the Threshold Requirement Under *Pratt*.**

As a threshold issue of Exemption 7, the withheld records must be investigatory. At the outset of briefing, the Government asserted that it met the Exemption 7 threshold requirement because the "responsive records were compiled in the course of FinCEN's fulfillment of its statutory

---

[13] To the extent it would assist the Court in its segregability determination, FOIA specifically authorizes *in camera* inspection, *see* 5 U.S.C. § 552(a)(4)(B), and district courts have broad discretion exercising this power, *see Lion Raisins v. U.S. Dep't of Agric.*, 354 F.3d 1072, 1079 (9th Cir. 2004), particularly in cases such as this one, where there are few records at issue and the agency previously withheld the records incorrectly under an abandoned *Glomar* justification.

duties to support FinCEN's own *investigations* . . . including *facilitating investigations* of financial or other crimes by other law enforcement of agencies[.]" (Gov. Br. at 11.) Now, in its reply brief, the Government ostensibly concedes that it has not met this threshold requirement by claiming that it need not satisfy the "wooden test in *Pratt v. Webster*, 673 F.2d 408 (D.C. Cir. 1982)," (Gov. Opp. at 17), because that case has been superseded by statute. But, unfortunately for FinCEN, the *Pratt* test applies and FinCEN simply cannot meet that test.

As "the D.C. Circuit itself made clear," the *Pratt* test applies "'when an agency seeks to invoke Exemption 7'" in the context of an ongoing law enforcement investigation. *100Reporters LLC v. U.S. DOJ*, 248 F. Supp. 3d 115, 160 (D.D.C. 2017) (quoting *Tax Analysts v. IRS*, 294 F.3d 71, 77-78 (D.C. Cir. 2002)). It is only when the Exemption 7 claim concerns "techniques, and procedures . . . outside of the context of a specific investigation'" that the *Pratt* test does not apply. *Ibid*. (quoting *Tax Analysts*, 294 F.3d at 78). Indeed, both the D.C. Circuit and the Ninth Circuit have routinely cited *Pratt* in the Exemption 7 cases subsequent to the 1986 amendment. *See, e.g.*, *Shapiro v. U.S. DOJ*, 893 F.3d 796, 800 (D.C. Cir. 2018); *ACLU of N. Cal. v. FBI*, 881 F.3d 776, 778 n.2 (9th Cir. 2018); *Rosenfeld v. U.S. DOJ*, 57 F.3d 803, 808 n.5 (9th Cir. 1995) ("The District of Columbia Circuit's [*Pratt*] test for a law enforcement agency's showing of law enforcement purpose resembles ours closely").

Because the Government rests its Exemption 7 claim on ongoing investigations, it is obligated to show a rational nexus between the investigation at issue and its law enforcement duties by identifying "a particular individual or a particular incident" as the object of its investigation and establishing the connection to "violation of federal law." *Pratt*, 673 F.2d at 420. FinCEN's supporting declaration simply has not done so here.

**E. FinCEN Has Improperly Withheld Records Under Exemption 7(A) Because It Does Not Enumerate A Single Concrete Investigation.**

Relatedly, under Exemption 7(A), records may only be withheld if they "could reasonably be expected to interfere with enforcement proceedings," 5 U.S.C. § 552(b)(7)(A), meaning (1) "a law enforcement proceeding is pending or prospective; and (2) []release of information about it could

-11-
PLS. REPLY FOR SUMMARY JUDGMENT

reasonably be expected to cause some articulable harm." *Citizens for Responsibility & Ethics in Wash. v. U.S. DOJ*, 658 F. Supp. 2d 217, 225–26 (D.D.C. 2009) (internal citation omitted).

Such investigations must go beyond monitoring, a point with which the Government agrees. (*See* Gov. Opp. at 17.) And as courts have repeatedly held, the investigation must concern "a concrete prospective law enforcement proceeding," for the government "cannot rely on hypothetical future proceedings" for Exemption 7(A). *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 230, 235 (1978) (internal citation omitted) (stating Exemption 7 does not "endlessly protect material simply because it was in an investigatory file").

Here, the Government does not explain how the requested materials show that FinCEN is doing anything more than routine monitoring. The Government states that it "in fact identified 'particular individuals and particular incidents as the object of its investigations,'" by referencing "prospective investigation," "potential targets," and a grand jury proceeding. (Gov. Opp. at 17 (citing Mosier Decl. 2 ¶ 41; Mot. at 10:21-11:19; Mosier Decl. 1 ¶¶ 66-69) (alterations omitted).) That is not enough to amount to more than monitoring. But even if it were, these statements about *prospective* and *potential* investigations and a grand jury proceeding still do not satisfy the Government's burden to show that any prosecution in the United States is actually ongoing or concrete. *See, e.g.*, *Citizens for Responsibility & Ethics in Wash.*, 658 F. Supp. 2d at 228–29 (determining that DOJ did not meet its 7(A) burden when it failed to "describe with any reasonable degree of particularity . . . *when* such [hypothetical] proceedings might occur" (emphasis added)). That is because FinCEN has not, with "a reasonable degree of particularity," identified (1) "the subject matter of the hypothetical proceedings," (2) "the parties involved," (3) "when such proceedings might occur," or (4) "how the information withheld here might be used." *Pratt*, 673 F.2d at 420. Such specificity is required when asserting Exemption 7(A) to show concreteness.

In any event, even if FinCEN could show that a future proceeding is somehow "concrete" or reasonably possible, it still is simply unable to show a rational nexus between the disclosure of the requested information and interference of law enforcement, *cf. ibid.* (requiring a showing of a "violation of federal law"), especially where that information simply reveals the names and addresses

of LLC owners contained in FinCEN's monitoring database, and not any information that would interfere with an investigation. As such, Exemption 7(A) is inapplicable.

### F. FinCEN Has Improperly Withheld Records Under Exemption 7(E).

While apparently abandoning its argument that the requested emails are not supported by Exemption 7(E) , the Government admits that "the spreadsheet…[only] cross-references information drawn from fields appearing in BSA Reports" and then somehow logically leapfrogs to the claim that disclosure of the spreadsheet would "specifically detail[] FinCEN's techniques for compiling information regarding BSA Reports." (Gov. Opp. at 14.)

But it is unclear and logically implausible, that a column of names in a spreadsheet can divulge "techniques or procedures." In fact, such an expansive argument would make *any* agency database spreadsheet off-limits under Exemption 7(E). And while the Government highlights *Yunes v. U.S. Department of Justice*, that case actually supports Plaintiffs' position, as it raised serious doubts that *all* information within a report would be properly withheld under Exemption 7(E). 2016 WL 4506971, at *7 (D.D.C. Aug. 26, 2016) ("Indeed, the Court has a hard time imagining how the full page—as opposed to the to say, a header or footer—could communicate the electronic methodology used by the agencies . . . to justify full withholding . . . under Exemption 7(E)").

### G. FinCEN Failed to Carry Its Burden as to Exemption 5 and Foreseeable Harm.

FinCEN once again attempts to justify withholding under Exemption 5 through circular logic without meeting the specificity requirements. *See Johnson v. Exec. Office of U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002). In its reply, it simply restates that "factual summaries of aggregate and individual BSA reports . . . are intertwined with FinCEN's expert opinion on the significance of the data, such as trends and patterns." (Gov. Opp. at 17 (citing Mosier Decl. 1 ¶¶ 59).)

Moreover, data, statistics, and trends, are squarely factual *not* deliberative or involving any "decision-making." The Ninth Circuit has repeatedly explained that Exemption 5 must apply "narrowly" and that this exemption covers only information that would only "expose an agency's decision-making process." *Sierra Club Inc. v. USFWS*, 925 F.3d 1000, 1011 (9th Cir. 2019). "[F]actual material" is not protected. *Kowack v. USFS*, 766 F.3d 1130, 1135 (9th Cir. 2014).

The Government also goes on to claim, without explaining why or how, that the factual information would be "so fragmented as to be meaningless" if segregated. (Gov. Opp. at 17.) But if this is true, it is not clear why FinCEN does not just disclose such "meaningless" information.

In any event, the Government still fails to articulate what foreseeable harm might result from disclosure, which seems impossible, given that the information is intrinsically public. *See Ctr. for Investigative Reporting, Dep't of Labor*, 424 F. Supp. 3d 771, 780 (N.D. Cal. 2019) (finding no foreseeable harm where information was *mostly* public); *Rosenberg v. U.S. Dep't of Def.*, 442 F. Supp. 3d 240, 259 (D.D.C. 2020).

**H.     Exemptions 6 and 7(C) Do Not Cover Known Identities or Official Misconduct.**

FinCEN's justification for the application of Exemptions 6 and 7(C) to government employee names is also inadequate and boilerplate, as FinCEN only conclusorily states that these employees may face some vague harassment. But "an agency's burden under Exemption 6 . . . is an 'onerous' one." *Lawyers' Comm. For Civil Rights v. U.S. Dep't of Treasury*, 2008 WL 4482855, at *19 (N.D. Cal. Sept. 30, 2008) (quoting *FBI v. Abramson*, 456 U.S. 615, 629 (1982)), and it is unclear why or how (without contact information) that would occur. For support, FinCEN cites a case where FBI agents' names were withheld, but FBI agents are meaningfully different from FinCEN employees. *Compare Lahr v. NTSB*, 569 F.3d 964, 977 (9th Cir. 2009) (withholding FBI agents' names) *with United Am. Fin., Inc. v. Potter*, 531 F.Supp.2d 29, 46–47 (D.D.C. 2008) (disclosing names of USPS workers where agency failed to show likely harassment).[14] In any event, to the extent FinCEN is able to show harassment is likely, CIR does not object to that narrow withholding through redaction.

As to the names of beneficial owners withheld under Exemption 7(C), FinCEN has given even less reasoning for its withholding. *See Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977) (agency declarations should provide a "relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant," absent which "the agency statement is not accorded deference"). Regardless, it is especially unlikely that the disclosure

---

[14] Additionally, government officials have lower privacy interests under Exemption 7(C) for government accountability purposes. *Citizens for Responsibility & Ethics in Wash. v. U.S. DOJ,* No. 11-754(GK), 2012 WL 45499 at *4 (D.D.C. Jan. 10, 2012).

of the names and addresses of third-party individuals in this case would create a personal privacy violation under Exemption 7(C), given that there is no "legitimate expectation of privacy concerning the information kept in bank records." *Miller*, 425 U.S. at 442.

Regardless, even if the Government could properly allege any privacy interest in the requested information, it is greatly outweighed by the public interest in favor of disclosure. As explained by Professor K-Sue Park and U.N. Special Rapporteur Leilani Farha, disclosure of beneficial ownership stabilizes and secures the marketplace, benefitting individuals and businesses alike by discouraging "corruption [and] abuse." (Park Decl. ¶ 11; *see also* Farha Decl. ¶ 16 ("The public disclosure of beneficial ownership is in the public interest.").) Indeed, the Government conveniently ignores other Ninth Circuit precedent where the "public interest in an informed citizenry" nonetheless "weigh[ed] in favor of disclosure." *EFF v. ODNI*, 639 F.3d 876, 886 (9th Cir. 2010), *abrogated on other grounds by Animal Legal Def. Fund v. FDA*, 836 F.3d 987 (9th Cir. 2016); *see also Rojas v. FAA*, 941 F.3d 392, 406 (9th Cir. 2019).

## III. CONCLUSION

For the foregoing reasons, the Government's motion for summary judgment should be denied, and CIR's cross motion for summary judgment should be granted.

Respectfully submitted,

DATED: December 3, 2020

/s/ *D. Victoria Baranetsky*
D. Victoria Baranetsky
THE CENTER FOR INVESTIGATIVE REPORTING
1400 65th St., Suite 200
Emeryville, CA 94608
vbaranetsky@revealnews.org
Telephone: (510) 982-2890