UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE CENTER FOR INVESTIGATIVE REPORTING, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE TREASURY,<br><br>Defendant. | Case No. 19-cv-08181-JCS<br><br>**ORDER REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 29, 32 |

## I.   INTRODUCTION

In July of 2019, Plaintiffs Aaron Glantz and the Center for Investigative Reporting (collectively, "CIR") submitted a request to Defendant the Department of the Treasury's Financial Crimes Enforcement Network ("FinCEN") under the Freedom of Information Act ("FOIA") for documents indicating the "real human owners" of residential real estate purchased with cash since 2016. After FinCEN refused to produce documents, CIR filed this action, and the parties conferred, FinCEN determined that virtually all responsive documents in its possession are exempt from disclosure, primarily due to a statutory exemption for "records of reports" submitted to FinCEN under the Bank Secrecy Act ("BSA"). The parties have filed cross-motions for summary judgment, and the Court held a hearing on January 22, 2021. For the reasons discussed below, FinCEN's motion is GRANTED, and CIR's motion is DENIED.

## II.   BACKGROUND

This case turns on the extent to which individual beneficial owners of real estate may remain anonymous, and whether FOIA provides a mechanism to identify such beneficial owners. Dr. K-Sue Park, a professor at Georgetown University Law Center, states that public recording of land ownership has been a cornerstone of American property law since the founding of the United

States. Park Decl. (dkt. 32-4) ¶ 4. The proliferation of limited liability companies ("LLCs") and similar corporate entities in recent decades has undermined that tradition by allowing an LLC to be recorded as the owner of property, with individual beneficial ownership unavailable to the public, "introduc[ing] problems of corruption, landlord negligence, and obstacles to enforcement that the system of transparency was designed to prevent." *Id.* ¶¶ 7–8. In response to those problems, some states, local jurisdictions, and foreign countries require public disclosure of beneficial owners of corporate entities, particularly in the context of real estate. *See id* ¶¶ 9–10. Farha Decl. (dkt. 32-3) ¶¶ 7–15. According to Leilani Farha, an international human rights lawyer and leading expert on rights related to housing, "the registration of beneficial owners and disclosure of their corporate data is quickly becoming the new international legal standard," albeit as a fairly recent development. Farha Decl. ¶ 6.

The BSA authorizes FinCEN to issue geographic targeting order ("GTOs") requiring financial institutions and other businesses in a specified geographic area to report certain transactions. The BSA also provides that while FinCEN must share these reports with state and federal regulators and intelligence agencies upon request, "a report and records of reports are exempt from disclosure under section 552 of title 5 [i.e., FOIA], and may not be disclosed under any State, local, tribal, or territorial 'freedom of information', 'open government', or similar law." 31 U.S.C. § 5319.

In January of 2016, FinCEN issued a GTO "requir[ing] U.S. title insurance companies to identify the natural persons behind all-cash purchases of residential real estate" exceeding one million dollars in the Borough of Manhattan and Miami-Dade County, in order to combat money laundering. Mosier Decl. (dkt. 29-2) ¶ 32. FinCEN issued additional GTOs targeting similar transactions in those and other geographic areas in July of 2016, February and August of 2017, March and November of 2018, and May of 2019. *Id.* The parties refer to the reports that title companies were required to submit under the GTOs as "GTO reports."

In 2018, CIR requested under FOIA all records containing information submitted in response to the GTOs, but FinCEN denied that request. Baranetsky Decl. (dkt. 32-1) ¶ 3. CIR's general counsel Victoria Baranetsky spoke to a FinCEN officer in early 2019 "who stated that,

although the agency would not provide GTOs[1] or information contained therein, the agency might consider releasing records that are not themselves GTOs and that are not specifically exempted Bank Secrecy Act." *Id.* ¶ 5.  On July 17, 2019, CIR submitted the FOIA request that gives rise to this case, which sought:

> Any and all records -- including, data, documents, and correspondence that include information about the real human owners (in some cases known as beneficial owners) of all-cash real residential real estate transactions nationally from 2016 to the present, including but not limited to:
>
> -- Addresses of all residential real estate purchased with the cash, which FINCEN is aware of
>
> -- The amount of money transfered [sic]
>
> -- The name of the true, human owners of each residential real estate purchased with cash, including but not limited to those purchased by LLC, LLP, and LP shell companies
>
> -- The name of the individual responsible for representing the purchaser of the property
>
> -- The address of the human owners, the address of the individual responsible for representing the purchaser
>
> -- Any and all additional information FINCEN possesses about these purchases which is publicly disclosable.

Compl. (dkt. 1) ¶¶ 34–35 & Ex. A; *see* Answer (dkt. 14) ¶¶ 34–35 (admitting the authenticity of that exhibit).

FinCEN initially provided a "*Glomar* response," denying the request and stating that it could neither confirm nor deny the existence of such materials based on the confidentiality provisions of the BSA.  Compl. ¶ 38 & Ex. C; Answer ¶ 38.  CIR submitted an administrative appeal on August 1, 2019, and in response, FinCEN's deputy director remanded the request to FinCEN's FOIA office on October 17, 2019.  Compl. ¶¶ 39, 42 & Exs. D, F; Answer ¶¶ 39, 42.  CIR did not receive any further communication from FinCEN before CIR filed this action on December 16, 2019.  *See* Compl. ¶ 43; Answer ¶ 43.

---

[1] It is not clear whether this use of "GTOs" in Baranetsky's declaration is intended to mean the GTOs themselves—i.e., FinCEN's orders—or if it refers to the reports submitted in response to those orders.

3

In January and February of 2020, FinCEN sent letters to CIR indicating that it had identified around 113,871 pages[2] of documents as responsive to CIR's request, but all would be withheld in full pursuant to statutory exceptions to disclosure under FOIA for BSA records, privileged materials, personal identifying information, and certain law enforcement records. Mosier Decl. Exs. 8–10. In June of 2020, FinCEN provided a further response stating that it had discovered an additional 1,799 pages of responsive documents (consisting of earlier versions or drafts of documents identified in its initial search) that it also largely intended to withhold in full, but that it would produce eleven pages with redactions. *Id.* Ex. 11. The documents produced with redactions consist of several FinCEN "Investigative Memos" and "Intelligence Assessments" with all contents except a general summary of the GTOs at issue redacted, as well as a chart of the GTOs at issue with some fields redacted. *Id.* Ex. 2.

FinCEN also produced a *Vaughn* index describing the documents it withheld and the grounds for withholding them. *Id.* Ex. 1. The first item addressed in the index is spreadsheet summarizing the reports submitted in response to the GTOs, as well as "Suspicious Activity Reports," which "matches and cross-references information drawn from fields appearing in these reports to identify possible patterns of transactions involving potentially illicit financial activity." *Id.* Ex. 1 at 2. FinCEN asserts that the spreadsheet is exempt from disclosure in full based on the exemption for BSA reports and records thereof, that it is also exempt in full based on an exception for law enforcement documents that would reveal techniques and procedures, and that it is exempt in part based on an exemption for law enforcement documents containing personally identifying information. *Id.* Ex. 1 at 2–3. Although FinCEN has also withheld other responsive documents, CIR is "chiefly concerned with the spreadsheet," Pl.'s Reply (dkt. 36) at 1 n.1, and focuses much of its briefing on the "names and addresses" contained therein, accepting that other information describing FinCEN's investigations could be redacted, *e.g.*, Pl.'s Mot. at 10.

---

[2] FinCEN's *Vaughn* index of documents withheld only accounts for slightly under 43,000 pages. *See* Mosier Decl. Ex. 1. The source of this discrepancy is not addressed in the parties' briefs, but it likely results from the parties' stipulation that the GTO reports themselves are exempt from disclosure under FOIA, that CIR would not challenge FinCEN's withholding of the GTO reports themselves, and that FinCEN need not include the reports in the *Vaughn* index. *See* Stipulation (dkt. 23) ¶¶ 2–5.

FinCEN invokes a number of exemptions to FOIA to justify its withholdings, but relies primarily on Exemption 3, which applies to documents specifically exempted from disclosure by another statute—here, the BSA. Because the Court concludes that Exemption 3 is sufficient to grant judgment in FinCEN's favor without reaching the other grounds for withholding that FinCEN asserted, this order focuses on the parties' arguments addressing Exemption 3, and does not reach either party's arguments as to other exemptions. This order also focuses primarily on the spreadsheet listed as Document 1 in FinCEN's *Vaughn* index. When asked at the hearing, counsel for CIR identified no evidence that any other document at issue would be subject to disclosure if the Court determines that the information contained in the spreadsheet falls within Exemption 3.

## III. ANALYSIS

### A. Overview of FOIA

"FOIA 'was enacted to facilitate public access to Government documents.'" *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009) (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991)). Congress intended to "'ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed.'" *Id.* (quoting *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989)). Thus, FOIA "provides public access to official information 'shielded unnecessarily' from public view and establishes a 'judicially enforceable public right to secure such information from possibly unwilling official hands.'" *Id.* (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976)).

Under FOIA, "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). There is a "strong presumption in favor of disclosure." *Ray*, 502 U.S. at 173. Congress also recognized, however, that government agencies can have legitimate reasons for withholding information from the public. *Id.* Hence, FOIA "requires federal agencies to make Government records available to the public, subject to nine exemptions for specific categories of

material." *Milner v. Dep't of the Navy*, 562 U.S. 562, 564 (2011).  The nine exemptions are "explicitly made exclusive and must be narrowly construed." *Id.* at 565.  Further, under amendments to FOIA enacted in 2016, "even if information falls within the scope of a discretionary exemption, it cannot be withheld from the public unless the agency also shows that disclosure will harm the interest protected by that exemption." *Ctr. for Investigative Reporting v. U.S. Dep't of Labor*, 424 F. Supp. 3d 771, 780 (N.D. Cal. 2019) (citing 5 U.S.C. § 552(a)(8)(A)(i)), *appeals docketed sub nom. Synopsis, Inc. v. USDOL*, No. 20-16416 (9th Cir. July 23, 2020), *and Evans v. USDOL*, No. 20-16538 (9th Cir. Aug. 11, 2020).

### B. Exemption 3 and the BSA

Under 5 U.S.C. § 552(b)(3), often referenced as "Exemption 3," FOIA does not apply to material that is:

> specifically exempted from disclosure by statute (other than section 552b of this title), if that statute—
>
> (A)
>     (i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or
>
>     (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and
>
> (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph.

5 U.S.C. § 552(b)(3).

As noted above, the BSA provides that, with respect to reports submitted to the Treasury thereunder, "a report and records of reports are exempt from disclosure under section 552 of title 5, and may not be disclosed under any State, local, tribal, or territorial 'freedom of information', 'open government', or similar law." 31 U.S.C. § 5319.  CIR previously stipulated that § 5319 exempted the GTO reports themselves from disclosure, *see* Stipulation (dkt. 23) ¶¶ 1–2, but now argues that Exemption 3 does *not* apply because the BSA fails to cite Exemption 3 or the OPEN FOIA Act specifically, and because it does not specifically exempt the records at issue in this case.

Pl.'s Mot. at 10–12.³  Assuming for the sake of argument that these contentions were not waived by CIR's previous stipulation, they are not persuasive.

As a starting point, § 5319 provides for withholding material from the public in a manner that leaves no discretion—reports and records thereof are exempt, and cannot be disclosed under FOIA or similar state laws—and thus satisfies § 552(b)(3)(A)(i).  *See, e.g.*, *Berger v. IRS*, 487 F. Supp. 2d 482, 496–97 (D.N.J. 2007), *aff'd on other grounds*, 288 F. App'x 829 (3d Cir. 2008); *Linn v. U.S. Dep't of Justice*, No. 92-1406, 1995 WL 631847, at *30 (D.D.C. Aug. 22, 1995) ("The absolute language of section 5319 eliminates any possibility of agency discretion; under the provision, all of the transaction reports prepared under the listed regulations, without exception, are exempt from disclosure.  Thus, the provision satisfies the requirement of Exemption 3 that a statutorily mandated privilege must either leave no discretion to the agency or establish particular criteria for withholding.").

The relevant section of the BSA was enacted in 1982, decades before the OPEN FOIA Act of 2009, and thus does not require a specific citation of Exemption 3 to satisfy § 552(b)(3)(B).  Although CIR is correct that § 5319 has been amended since 2009, the relevant question under § 552(b)(3)(B) is when the statute was *enacted*, not when it was most recently *amended*.  The pre-2009 version of § 5319 included a materially identical prohibition of disclosure under FOIA, omitting only the language related to similar state laws, which are not at issue here: "However, a report and records of reports are exempt from disclosure under section 552 of title 5."  Pub L. No. 107-56 § 358(c), 115 Stat. 272, 326 (Oct. 26, 2001).  Reading the subsequent 2011 amendment— which expanded the bar against disclosure by adding references to state law while still also squarely addressing FOIA—as implicitly *authorizing* disclosure under FOIA for failure to cite by paragraph Exemption 3 would be contrary to the plain language and clear intent of the BSA.  *See* Pub. L. No. 112-74 § 119, 125 Stat. 786, 891 (Dec. 23, 2011) ("Section 5319 of title 31, United States Code (relating to availability of reports), is amended by inserting after 'title 5' the

---

³ In its reply, CIR retreats from those arguments, instead arguing primarily that "records of reports" should be read as limited to records created by financial institutions and other regulated entities, and as excluding records created by FinCEN.  *See* Pl's Reply at 2–7.  That argument is addressed separately in the following section.

following: ', and may not be disclosed under any State, local, tribal, or territorial "freedom of information", "open government", or similar law'.").[4]

A recent Ninth Circuit case addressed at the hearing, *Center for Investigative Reporting v. U.S. Department of Justice*, 982 F.3d 668 (9th Cir. 2020), does not compel a different conclusion. In that case, the Ninth Circuit held that each of a series of appropriations riders purporting to bar the use of funds to comply with certain FOIA requests impliedly repealed the equivalent preceding rider, and the Department of Justice could not rely on restrictions in a pre-2009 rider when the post-2009 riders failed to comply with the OPEN FOIA Act. *Id.* at 681–84. Here, however, the relevant statutory language of § 5319 was enacted well before 2009, and the post-2009 amendment merely supplemented it with additional language not relevant to this case. That addition does not resemble the enactment of an entirely new appropriations rider, as in the case before the Ninth Circuit.[5]

The Court therefore concludes that § 5319 is a statute specifically exempting disclosure within the meaning of Exemption 3, and both reports and "records of reports" submitted under the BSA fall within that exemption. As far as this Court is aware, every other court to consider the issue has reached the same conclusion. *E.g.*, *Davis v. Fed. Bureau of Investigation*, No. 18-CV-0086 (CRC), 2019 WL 2870729, at *6 (D.D.C. July 3, 2019) ("'[I]t is firmly established in this Circuit that the BSA is a proper basis for invoking an Exemption 3 withholding.'" (alteration in original; citation omitted)); *Turner v. U.S. Dep't of the Treasury*, No. 15-CV00007-DAD-SKO,

---

[4] CIR's motion uses a misleading partial quotation to suggest that § 5319's FOIA exemption originated in the 2011 amendment. *See* Pl.'s Mot. (dkt. 32) at 11 ("In 2011, the BSA was, admittedly amended to provide that covered reports "may not be disclosed under any . . .'freedom of information' [act]," 31 U.S.C. § 5319 . . . ." (brackets and first ellipsis in original)). The added language refers to "*State, local, tribal, or territorial* 'freedom of information'" acts. 31 U.S.C. § 5319 (emphasis added). The exemption from the *federal* FOIA already existed as a reference to "section 552 of title 5." *See id.*

[5] The Second Circuit has since declined to follow the Ninth Circuit's *Center for Investigative Reporting* decision, addressing arguments that the Ninth Circuit found to be waived and declined to consider, and holding that the OPEN FOIA Act of 2009 cannot constrain subsequent legislation reflecting clear Congressional intent to exempt documents from disclosure. *Everytown for Gun Safety Support Fund v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 984 F.3d 30, 37 & n.3 (2d Cir. 2020). Because the relevant statute here was enacted before 2009, this Court does not reach that issue, and need not address whether a similar argument—which, in any event, FinCEN has not presented—remains viable in the Ninth Circuit after *Center for Investigative Reporting*.

8

2017 WL 1106030, at *7 (E.D. Cal. Mar. 23, 2017); *Ortiz v. U.S. Dep't of Justice*, 67 F. Supp. 3d 109, 118 (D.D.C. 2014) (concluding that "a '21–page teletype' that included 'information obtained from systems maintained by [FinCEN] and information derived from records filed pursuant to the Bank Secrecy Act'" fell within Exemption 3); *Council on Am.-Islamic Relations, Cal. v. FBI*, 749 F. Supp. 2d 1104, 1117 (S.D. Cal. 2010).  CIR cites no decision to the contrary.

### C. The Spreadsheet Is a "Record of Reports"

Black's Law Dictionary includes several definitions of the term "record," but the most relevant in this context is as follows, mirroring a definition included in the Uniform Commercial Code: "Information that is inscribed on a tangible medium or that, having been stored in an electronic or other medium, is retrievable in perceivable form."  RECORD, Black's Law Dictionary (11th ed. 2019) (definition 2).

The spreadsheet at issue here plainly meets that definition, consisting of "[i]nformation . . . that, having been stored in an electronic or other medium, is retrievable in a perceivable form."  *See id.*  There is also no question that it is a record "of reports" submitted in response to FinCEN's GTOs.  FinCEN's *Vaughn* index describes this document as a "[s]preadsheet prepared by FinCEN employees compiling data exclusively regarding [BSA] reports, specifically GTO Reports and [Suspicious Activity] Reports," which "matches and cross-references information drawn from fields appearing in these reports."  Mosier Decl. Ex. 1 at 2 (footnote omitted).

CIR does not dispute that the spreadsheet meets any common definition of a "record of reports."  Instead, CIR contends that the BSA uses the term "record" exclusively to refer "to *primary source* records *kept by* private entities and *submitted to* FinCEN."  Pl.'s Reply at 3. While CIR cites a number of instances where the statute refers to "records" kept or created by private entities, none of those instances address "records *of reports*," nor could they reasonably be interpreted as such.  *See id.* at 3–4.  To the contrary, several of them specifically refer to records of different subjects—for example, "records of the information used to verify a person's identity," or "records of certain domestic transactions."  *Id.* at 3 (quoting 31 U.S.C. §§ 5318(*l*)(2)(B), 5326). CIR suggests that "records of reports" should be read to mean "records kept by non-governmental actors that *accompany* or *underlie* reports submitted to FinCEN," *id.* at 4 (emphasis added;

9

original emphasis omitted), but as a matter of normal language, it is a far greater stretch to describe a record underlying or accompanying a report as a record "of" the report than to accept that the statute might be using a common word in its usual sense. If Congress had intended to exempt only records *underlying* or *accompanying* reports, or only records created by non-governmental entities, it could have written the law to so state. Contrary to the arguments of CIR's reply brief, declining to impose an unstated, esoteric restriction on whose records are "records" does not require allowing that term to "hold two meanings at once." *Cf.* Reply at 6 n.11.

Even if the language of the statute were amenable to CIR's proposed interpretation, which it is not, accepting that reading would lead to an absurd outcome. The BSA specifically exempts reports submitted thereunder from disclosure under FOIA, reflecting a considered judgment that such materials should not be available to the public upon request. 31 U.S.C. § 5319. Under CIR's reading, however, the moment FinCEN or any other agency authorized to possess the report created its own notes of information stated therein or, as here, a document compiling the contents of many reports, the very same information—potentially in its entirety—would be available under FOIA. The *merits* of Congress's decision to exempt BSA reports from FOIA are not at issue. That decision is clearly expressed in § 5319, and the Court will "not lightly conclude that Congress enacted a self-defeating statute." *See Quarles v. United States*, 139 S. Ct. 1872 (2019).

The Court concludes that information gathered from a BSA report and incorporated in a new document created by FinCEN is a record of the report within the meaning of § 5319, and exempt from disclosure under FOIA.[6] Once again, this conclusion accords with all other decisions on the subject of which this Court is aware. *See, e.g.*, *Ortiz*, 67 F. Supp. 3d at 118 (concluding that a "teletype is properly withheld under Exemption 3 because it is derived from reports generated pursuant to the Bank Secrecy Act"); *Berger*, 487 F. Supp. 2d at 496 (allowing the IRS to withhold "information derived or extracted from Bank Secrecy Act reports"). Again, CIR cites

---

[6] There may be circumstances where a record of a report included within a given document is reasonably segregable from other material subject to FOIA. *See* 5 U.S.C. § 552(a)(8)(A)(ii)(II) (providing that an agency must "take reasonable steps necessary to segregate and release nonexempt information"). In this case, however, CIR is only interested in the records of reports—i.e., beneficial ownership information that FinCEN obtained from GTO reports. Segregating out the "records of reports" would exclude all responsive material.

1  no case to the contrary, instead arguing that this Court should disregard the relatively few cases

2  addressing the issue because they lack detailed reasoning addressing the meaning of "records of

3  reports."  The lack of detailed analysis of this issue can likely be attributed to its straightforward

4  answer, as addressed above.

### D. 2016 Amendments and Showing of Harm

CIR contends that the 2016 amendment to FOIA, codified as 5 U.S.C. § 552(a)(8)(A), requires FinCEN to show foreseeable harm before withholding documents.  Pl.'s Mot. at 8–9.  But as FinCEN notes in its opposition brief, that provision still requires "withholding where 'disclosure is prohibited by law,'" and courts have interpreted it as requiring an agency to show foreseeable harm only with respect to discretionary exemptions.  Def.'s Opp'n at 11 (quoting 5 U.S.C. § 552(a)(8)(A)(i)(II)).  As discussed above, "'[t]he absolute language of section 5319 eliminates any possibility of agency discretion.'"  *Berger*, 487 F. Supp. 2d at 497 (D.N.J. 2007) (quoting *Linn*, 1995 WL 631847, at *30).  CIR's reply brief does not address whether § 552(a)(8)'s foreseeable harm standard applies to withholding under Exemption 3, instead touching on the issue only with respect to Exemption 5, which this order does not reach.  *See* Pl.'s Reply at 13–14.

Even more clearly, albeit not addressed by either party, § 552(a)(8) explicitly does not require "disclosure of information that is . . . otherwise exempted from disclosure under subsection (b)(3)"—in other words, Exemption 3.  5 U.S.C. § 552(a)(8)(B).  The Court therefore concludes that FinCEN need not show foreseeable harm to withhold documents under Exemption 3.

### E. Public Domain Doctrine

Finally, CIR contends that FinCEN must produce beneficial ownership data even if an exemption would otherwise apply, because that information is already in the public domain.  Pl.'s Mot. at 6–8.  "'[M]aterials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record.'"  *Am. Civil Liberties Union of N. Cal. v. U.S. Dep't of Justice*, 880 F.3d 473, 491 (9th Cir. 2018) (quoting *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999)).  In *Cottone*, the D.C. Circuit held that while there was no "uniform, inflexible rule requiring every public-domain claim to be substantiated with a hard copy

11


simulacrum of the sought-after material," a court "must be confident that the information sought is truly public and that the requester receive no more than what is publicly available before we find a waiver." *Cottone*, 193 F.3d at 555. To satisfy its burden, a plaintiff "must 'point[] to specific information in the public domain that appears to duplicate that being withheld.'" *Id.* at 554 (quoting *Afshar v. Dep't of State*, 702 F.2d 1125, 1130–34 (D.C. Cir. 1983)).

        CIR cites state and local laws in Philadelphia, New York, and the District of Columbia, as well as foreign laws in the United Kingdom, Ireland, and Ukraine, requiring disclosure of beneficial ownership in at least some circumstances, and argues that "[a]ny LLCs from these jurisdictions that have purchased property in the United States have necessary disclosed their beneficial ownership, rendering much of the requested FinCEN records public." *Id.* at 7–8. CIR also notes that other laws can require similar disclosures in specific circumstances, as in the case of certain federal officials, who must disclose their ownership of real property even through business entities. *Id.* at 8.

        Neither party's briefs address the specifics of these laws or when they were enacted, but there are at least some significant discrepancies between them and the information FinCEN required in its GTOs.[7] The D.C. ordinance, for example, requires disclosure of beneficial ownership only with respect to "entity registration filings made on or after January 1, 2020," D.C. Code § 29-102.01(6), and thus would not capture beneficial ownership at any time before CIR submitted its request in 2019, much less going back to 2016. The Philadelphia ordinance applies only where a license is required for a property, is limited to property in Philadelphia (which was not included in any GTO at issue), and requires disclosure only of beneficial owners whose equity interest in a property exceeds either "(a) forty-nine percent (49%) of the value of the property or (b) forty-nine percent (49%) of the value of the owner of the property," or if no person has such an interest, "the name and preferred mailing address of the two natural persons who have the largest

---

[7] FinCEN's opposition brief includes a cursory reference to Michael Mosier's second declaration, which includes a lengthy discussion of many of the laws at issue. *See* Def.'s Opp'n at 4; Mosier 2d Decl. (dkt. 33-1) ¶¶ 11–30. A witness's declaration is not the appropriate vehicle for what is essentially legal argument addressing statutory law. The Court disregards that portion of Mosier's declaration as an improper end run around the page limits for briefing. The analysis below is based instead on the Court's own review of some of the laws at issue.

equity interest in the property." Phila. Code § 9-3901(2)(a)(.1)(.a).  FinCEN's different threshold to disclose beneficial owners holding "25% or more of the equity interests of the Purchaser," *see e.g.,* Mosier Decl. Ex. 13 at 3, would capture individuals who were not required to disclose their ownership under the Philadelphia law, even assuming the same entities that purchased property in regions governed by the GTOs also purchased property in Philadelphia and filed for a license. While some courts have found a plaintiff's "pointing to a regulation that requires the disclosure of the specific information sought" sufficient to invoke the public domain exception, CIR has not shown that any of these laws require disclosure of the *specific* information CIR seeks from FinCEN.  *Cf. Inner City Press/Cmty. on the Move v. Bd. of Governors of Fed. Reserve Sys.*, 463 F.3d 239, 249 (2d Cir. 2006).

CIR has submitted no evidence to show that *any* information actually collected by FinCEN overlaps with information actually placed in the public domain under any of the laws cited.  Nor—in the absence of any discussion of the laws' requirements, much less particular purchasers who disclosed information under them—has CIR shown how FinCEN might reasonably segregate any public information that *might* be in its records from nonpublic information that cannot be disclosed under the BSA.  CIR has thus not met its burden to identify "*specific* information in the public domain that appears to duplicate that being withheld," showing that CIR would "receive *no more* than what is publicly available" if FinCEN honored its request.  *Cottone*, 193 F.3d at 554, 555 (emphasis added).

CIR argues that a more lenient standard is appropriate in cases not involving national security—although that would not distinguish *Cottone*, which involved a criminal prosecution of drug crimes.  But even the cases CIR cites require more than it has shown here.  *Cf. Watkins v. U.S. Bureau of Customs & Border Protection*, 643 F.3d 1189, 1197–98 (9th Cir. 2011) (finding waiver of an agency's right to assert an exemption where the agency "had already provided a no-strings-attached disclosure of the confidential information to a private third party . . . without limiting the third-party's ability to further disseminate the information"); *Cont'l Stock Transfer & Tr. Co. v. SEC*, 566 F.2d 373, 375 (2d Cir. 1977) (finding that information was not exempt from disclosure as a trade secret where "almost all of the information . . . already [was] available to the

13

public"); *United Techs. Corp., Pratt & Whitney Aircraft Grp. v. Marshall*, 464 F. Supp. 845, 854 (D. Conn. 1979) (finding no exemption as a trade secret where a "witness testified that much of the information [was] already available to competitors from a variety of other sources"). CIR presents no evidence that FinCEN has *disseminated* the information at issue to other private third parties, that *almost all* of the information is publicly available, or even that *much* of it is.[8] CIR's argument that the same "*type* of information" must be disclosed in some circumstances does not meet its burden. *See* Reply at 9 (some emphasis omitted)

## IV.   CONCLUSION

All of the information sought by CIR and withheld by FinCEN is exempt from disclosure under Exemption 3 and the BSA. FinCEN's motion for summary judgment is therefore GRANTED, and CIR's motion is DENIED. The Clerk shall enter judgment in favor of FinCEN and close the case.

**IT IS SO ORDERED.**

Dated: January 22, 2021

JOSEPH C. SPERO
Chief Magistrate Judge

---

[8] Moreover, *Continental Stock* and *United Technologies* both concerned whether information was a trade secret under Exemption 4, not whether it was sufficiently public to set aside specific statutory language categorically exempting it from disclosure, as is the case here with the BSA.